ALLIANCE DEFENSE FUND LAW CENTER
BENJAMIN W. BULL
Arizona State Bar No. 009940
JOSHUA W. CARDEN*
Arizona State Bar No. 021698
ELIZABETH A. MURRAY*
Arizona State Bar No. 022954
Alliance Defense Fund Law Center
15333 N. Pima Rd., Suite 165
Scottsdale, AZ 85260
Phone: (480) 444-0020
Fax: (480) 444-0028

ROBERT H. TYLER
California State Bar No. 179572
38760 Sky Canyon Drive, Suite B
Murietta, CA 92563
Phone: (909) 461-7860
Fax: (909) 461-9056

LAW OFFICES OF TERRY L. THOMPSON
TERRY L. THOMPSON
California State Bar No. 199870
P.O. Box 1346
Alamo, CA 94507
Phone (925) 855-1507
Fax: (925) 820-6034
(designated local counsel)

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| FAITH CENTER CHURCH EVANGELISTIC MINISTRIES, et al., | CASE NO. C-04-3111 JSW |
| Plaintiffs, | |
| v. | **AMENDED VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |
| FEDERAL D. GLOVER, et al., | |
| Defendants. | |

Come now the plaintiffs, Faith Center Church Evangelistic Ministries and Hattie Mae Hopkins (collectively "Faith Center"), by and through counsel, pursuant to the Federal Rules of Civil Procedure and against the Defendants aver the following:

## I.

## INTRODUCTION

1. This case is about the Defendants' refusal to allow a religious group to use a public library meeting room for religious purposes. By written policy, Defendants have excluded the Plaintiffs solely because of their religious viewpoint and the religious content of their speech. This is a flagrant violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs seek declaratory relief, injunctive relief, nominal damages, costs and attorneys' fees.

## II.

## JURISDICTION AND VENUE

2. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments; and under federal law, particularly 28 U.S.C. §§ 2201, 2202 and 42 U.S.C. §§ 1983 and 1988.

3. This Court has original jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 1343.

4. This Court has authority to issue the requested declaratory relief under 28 U.S.C. § 2201.

5. This Court has authority to issue the requested injunctive relief under 28 U.S.C. § 1343(3).

6. This Court is authorized to award the requested damages under 28 U.S.C. § 1343(3).

7. This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988.

8. Venue is proper under 28 U.S.C. § 1391 in the Northern District of California because this claim arose there, and most of the parties reside within the District.

## III.

## INTRADISTRICT ASSIGNMENT

9.    Pursuant to L.R. 3-2(c)-(d) & 3-5, this case is a civil rights case, in a non-excepted category, suitable for assignment to the San Francisco or Oakland divisions because the civil action arose in Contra Costa County.

## IV.

## IDENTIFICATION OF PLAINTIFFS

10.    Plaintiff Faith Center Church Evangelistic Ministries, a.k.a. Faith Center Evangelistic Ministries, is a non-profit religious corporation in the State of California and may sue and be sued in its own name.

11.    Plaintiff Hattie Mae Hopkins is the leader and registered agent of Faith Center Church Evangelistic Ministries and a resident of Sacramento, California.

## V.

## IDENTIFICATION OF DEFENDANTS

12.    Defendant Federal D. Glover is a member and the chair of the Contra Costa County Board of Supervisors, maintaining an office in Pittsburg, California. Among other things, this Defendant is responsible for establishing general policies and plans for the operation of Contra Costa County government, including the county library system. This Defendant is sued in his official and individual capacities.

13.    Defendant Mark DeSaulnier is a member of the Contra Costa County Board of Supervisors, maintaining an office in Concord, California. Among other things, this Defendant is responsible for establishing general policies and plans for the operation of Contra Costa County government, including the county library system. This Defendant is sued in his official and individual capacities.

14.    Defendant John M. Gioia is a member of the Contra Costa County Board of Supervisors, maintaining an office in El Cerrito, California. Among other things, this Defendant is responsible for establishing general policies and plans for the operation of Contra Costa

County government, including the county library system. This Defendant is sued in his official and individual capacities.

15.     Defendant Millie Greenberg is a member of the Contra Costa County Board of Supervisors, maintaining an office in Danville, California. Among other things, this Defendant is responsible for establishing general policies and plans for the operation of Contra Costa County government, including the county library system. This Defendant is sued in her official and individual capacities.

16.     Defendant Gayle B. Uilkema is a member of the Contra Costa County Board of Supervisors, maintaining an office in Lafayette, California. Among other things, this Defendant is responsible for establishing general policies and plans for the operation of Contra Costa County government, including the county library system. This Defendant is sued in her official and individual capacities.

17.     Defendant John Sweeten is the Contra Costa County Administrator, maintaining an office in Martinez, California. Among other things, this Defendant is responsible for implementing Contra Costa County Board of Supervisors policies, including those governing the county library system. This Defendant is sued in his official and individual capacities.

18.     Defendant Anne Cain is the Contra Costa County Librarian, maintaining an office in Pleasant Hill, California. Among other things, this Defendant is responsible for overseeing all county libraries and enforcement of Contra Costa County policies governing the county library system. This Defendant is sued in her official and individual capacities.

19.     Defendant Patty Chan is the Senior Branch Librarian of the Antioch Branch of the Contra Costa County Public Library system, maintaining an office in Antioch, California. Among other things, this Defendant is responsible for implementing Contra Costa Board of Supervisors policies governing the country library system, particularly the Antioch Branch. She is also responsible for overseeing the use of library facilities by outside groups and individuals like the Plaintiffs. This Defendant is sued in her official and individual capacities.

20.     Upon information and belief, based upon telephone conferences with Ms. Hopkins, Defendant Laura O'Donahue is the Administrative Deputy Director of the Antioch

VERIFIED COMPLAINT - 4

Branch of the Contra Costa Public Library system, maintaining an office in Antioch California. Among other things, this Defendant is responsible for implementing Contra Costa Board of Supervisors policies governing the country library system, particularly the Antioch Branch. She is also responsible for overseeing the use of library facilities by outside groups and individuals like the plaintiffs. This Defendant is sued in her official and individual capacities.

## VI.

## STATEMENT OF FACTS

**Background**

21. Plaintiff Faith Center Church Evangelistic Ministries ("Faith Center") is led by Plaintiff Hattie Mae Hopkins.

22. Ms. Hopkins believes that, as a Christian, she is called to share her faith with others.

23. Ms. Hopkins believes that there are many individuals who need to hear about the gospel of Jesus Christ, but may never set foot inside a church building.

24. Ms. Hopkins holds organized meetings under the auspices of Faith Center, that, pursuant to the foregoing beliefs, are not held inside a traditional church building.

25. Faith Center currently holds meetings in Sacramento, California and Woodland, California.

26. Participants at Faith Center's meetings:

    a.  discuss educational, cultural, and community issues from a religious perspective;

    b.  engage in religious speech and religious worship; and

    c.  engage in discussing the Bible and other religious books, teaching, praying, singing, sharing testimonies, sharing meals, and discussing social and political issues.

27. Early in 2004, after praying about it, Ms. Hopkins believed that God was leading her to begin holding Faith Center meetings in Antioch, California.

**Antioch Library**

28.  The Contra Costa County Library has a branch in Antioch, California.

29.  The Antioch Branch of the Library ("Library") has a meeting room that is available for use by outside individuals and organizations.

30.  This meeting room is located on the Library premises and is available during Library business hours on a first-come, first-served basis.

31.  The Contra Costa County Board of Supervisors encourages the use of library meeting rooms for educational, cultural and community related meetings, programs, and activities.

32.  Upon information and belief, based on written Library policies, Defendants allow a variety of nonprofit organizations to use library meeting rooms.

33.  Non-profit and civic organizations may use the meeting rooms free of charge for meetings open to the general public.

34.  An individual or organization seeking to reserve the meeting room need only submit to the Library a completed application that discloses the name of the individual or organization, the date and time requested, and the activity taking place.

35.  If the room is not otherwise scheduled for the requested date and time, the application is to be approved, assuming that the requested time is within regular business hours.

**Plaintiffs' applications**

36.  In May 2004, Faith Center participant and Area Coordinator Mary Ward obtained an application to use the Antioch Library meeting room.

37.  Mary Ward is a resident of Antioch, California.

38.  Mary Ward faxed the application to Ms. Hopkins in Sacramento, California.

39.  Ms. Hopkins filled out and signed the application, requesting the meeting room for two dates: May 29, 2004, and July 31, 2004.

40.  Library personnel informed Ms. Hopkins that she needed to fill out a separate application for each date requested.

41. Ms. Hopkins complied by faxing two applications to the Library – one for May 29, 2004, and the other for July 31, 2004. True and correct copies of these applications are attached as Exhibits A & B.

42. Ms. Hopkins then telephoned the Library in May 2004 and spoke to two separate Library employees to confirm that Faith Center's dates were on the Library calendar.

43. Both Library employees confirmed that the dates were on the official Library calendar.

44. During one of these confirmation conversations, Ms. Hopkins asked if the room was soundproof.

45. The Library employee said no, and expressed concern that noise from high school students in the area would bother Faith Center's meeting.

46. Ms. Hopkins replied that the noise would not be a bother to Faith Center's meeting.

47. Ms. Hopkins asked if the sound from Faith Center's meeting would be a bother to Library patrons.

48. The Library employee said no.

**May 29, 2004 Meeting**

49. On May 29, 2004, Ms. Hopkins, Ms. Ward, and approximately 12-15 persons intending to participate in the planned Faith Center meeting arrived at the Library.

50. The meeting took place as planned and as described in Paragraphs 26.

51. Out of consideration for the library's patrons, the meeting participants did not use musical instruments or amplified sound.

52. Toward the end of the meeting, Library employees "Jenna" and "Lisa" informed Ms. Hopkins and Ms. Ward that groups were not permitted to use Library meeting rooms for religious activities.

53. Ms. Hopkins asked if the reason for the prohibition was because of any excessive noise resulting from the Faith Center meeting.

54. The employees said that there was no noise problem with Faith Center -- the problem was that Faith Center was conducting religious activities.

55. The employees showed Ms. Hopkins a written policy entitled "Resolution 92/793 – Contra Costa County Library – Policy for Use of Meeting Rooms in Libraries" ("policy"), which forbade religious groups to use Library facilities. A true and correct copy of that policy is attached as Exhibit C.

56. The policy states that "[l]ibrary meeting rooms shall not be used for religious purposes." *See* Ex. C.

57. The employees further stated to Ms. Hopkins that they didn't have a copy of her application.

58. Ms. Hopkins promptly presented a copy of her application.

59. The employees responded that the group should have never gained access and that the Library volunteer who had admitted the group was not fully familiar with Library policies.

60. Ms. Ward stated that a librarian had given permission for the group to use the room after finding out the group had the room reserved.

61. Ms. Hopkins expressed her concerns that such a policy might be unconstitutional.

62. The Library employees informed her that her July 31, 2004 reservation would be removed from the calendar, which would prohibit Faith Center from assembling in the library meeting room on that date.

63. Ms. Hopkins recommended that the Library employees consult with legal counsel because Faith Center's permit for July 31, 2004, had already been granted back in May.

64. The employees then stated that they would keep the July 31, 2004 meeting on the calendar, but that they would need to ask a Library manager about that reservation and have the manager call Ms. Hopkins.

65. In early June 2004, Defendant Laura O'Donahue telephoned Ms. Hopkins.

66. Ms. O'Donahue stated that Faith Center needed to find another location for the July 31, 2004 meeting because she had already removed the date from the Library calendar.

67. Ms. O'Donahue further stated that their policy was a long-standing policy, approved by Library directors and the Contra Costa Board of Supervisors.

68. Ms. Hopkins recommended that Ms. O'Donahue check with legal counsel because such a policy was unconstitutional and noted that she had made the same recommendation to Jenna and Lisa.

69. Ms. O'Donahue reiterated that Faith Center could not use the Library meeting room.

70. Later in June 2004, Ms. Hopkins contacted legal counsel who prepared a letter with legal analysis and authorities for Ms. Hopkins to send to Ms. O'Donahue.

71. On July 5, 2004, Ms. Hopkins forwarded counsel's letter along with one of her own, asking Ms. O'Donahue to please expedite a response from Library legal counsel. A true and correct copy of Ms. Hopkins' letter is attached as Exhibit D.

72. Ms. Hopkins received no response from the Library to her letter.

73. Ms. Hopkins called Ms. O'Donahue on or about July 23, 2004, to find out if Faith Center's reservation would be reinstated on the Library calendar.

74. Ms. O'Donahue stated that she had asked legal counsel to take a general look at the Library facilities use policies, but that "it might take quite some time" to hear back from counsel.

75. Ms. O'Donahue stated that Faith Center would definitely not be allowed to use the Antioch Library meeting room for their July 31, 2004 meeting.

76. Ms. Hopkins requested to speak to someone in authority, but Ms. Donahue said no one was available at that time.

77. On or about July 24, 2004, Administrative Operations Officer Susan Caldwell telephoned Ms. Hopkins and admitted that they had forwarded Ms. Hopkins' letter to their legal counsel on or about July 24, 2004.

78. Ms. Caldwell added that Faith Center would definitely not be allowed to use the room for their July 31, 2004 meeting.

79.     Ms. Hopkins desires to reserve the meeting room for future Faith Center meetings.

80.     Ms. Hopkins desires to hold those meetings approximately one Saturday every other month, from 11 a.m. to 3 p.m.

81.     Ms. Hopkins cannot hold those meetings in the Antioch Library meeting room under Defendants' current policy, Resolution No. 93/525, which forbids the use of library meeting rooms for "religious services or activities. A true and correct copy of Resolution No. 93/525 is attached as Exhibit E.

## VII.

## STATEMENTS OF LAW

82.     Each and all of the acts alleged herein were done by Defendants under the color and pretense of state law, statutes, ordinances, regulations, customs, usages, and policies of Contra Costa County and the State of California.

83.     Plaintiffs' speech, association, religious worship and religious expression are fully protected by the First Amendment to the United States Constitution.

84.     Granting religious groups equal access to government facilities under neutral criteria does not violate the Establishment Clause.

85.     Unless and until the enforcement of the Defendants' religiously discriminatory policy is enjoined, the Plaintiffs will suffer and continue to suffer irreparable harm to their federal constitutional rights.

## VIII.

## FIRST CAUSE OF ACTION - VIOLATION OF THE RIGHT TO FREEDOM OF SPEECH UNDER THE UNITED STATES CONSTITUTION

86.     The allegations contained in all preceding paragraphs are incorporated herein by reference.

87.     Religious speech and worship are protected by the First and Fourteenth Amendments to the United States Constitution.

88. The Defendants created a designated public forum by allowing individuals and organizations to reserve the Library facilities for a wide variety of free speech activities.

89. Within a designated public forum, express discrimination against religious speech is presumptively unconstitutional.

90. Within a designated public forum, the government may not discriminate on the basis of the content of the speaker's speech absent a compelling governmental interest.

91. Regardless of the type of forum (traditional, designated or limited, or nonpublic fora), the government may not discriminate based upon the viewpoint expressed by the speaker.

92. The Defendants discriminated against Plaintiffs because of the religious speech and religious viewpoint that would be expressed at Plaintiffs' meetings.

93. The Defendants have no compelling government interest to justify their discriminatory treatment of the Plaintiffs.

94. The Defendants' actions therefore violate the Free Speech Clause of the First Amendment to the United States Constitution as incorporated and applied to the states under the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

## IX.

### SECOND CAUSE OF ACTION - VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE UNITED STATES CONSTITUTION

95. The allegations contained in all preceding paragraphs are incorporated herein by reference.

96. The Plaintiffs' desire to meet for worship and fellowship with others outside of a traditional church building is motivated by their sincerely held religious beliefs.

97. Plaintiffs sought to, and continue to seek to, discuss educational, cultural, and community issues from a religious perspective.

98. The Defendants' policy expressly excludes "religious purposes" from the Library meeting rooms.

99.     The Defendants' policy expressly bars access to public facilities based upon the religious or non-religious nature of the applicant and the applicant's speech.

100.    Defendants' policy substantially burdens Plaintiffs' sincerely-held religious beliefs.

101.    The Defendants have no compelling reason that would justify discrimination based upon the Plaintiffs' religious expression and nature.

102.    The Defendants' policy therefore violates the Free Exercise Clause of the First Amendment to the United States Constitution as incorporated and applied to the states under the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

## X.

## THIRD CAUSE OF ACTION - VIOLATION OF THE ESTABLISHMENT CLAUSE UNDER THE UNITED STATES CONSTITUTION

103.    The allegations contained in all preceding paragraphs are incorporated herein by reference.

104.    The Defendants' policy expressly prohibits "religious purposes" for exclusion from Library facilities.

105.    The Defendants' policy requires that government officials scrutinize private speech and determine whether private speech or a private purpose is "religious," thus impermissibly entangling government with religion.

106.    The Defendants' policy demonstrates impermissible hostility towards religion.

107.    Defendants have no compelling interest that would justify their hostility towards religion.

108.    The Defendants' policy therefore violates the Establishment Clause of the First Amendment to the United States Constitution as incorporated and applied to the states under the Fourteenth Amendment.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

## XI.

## FOURTH CAUSE OF ACTION - VIOLATION OF THE EQUAL PROTECTION CLAUSE UNDER THE UNITED STATES CONSTITUTION

109. The allegations contained in all preceding paragraphs are incorporated herein by reference.

110. The Equal Protection Clause requires that the government treat similarly-situated persons equally.

111. The Defendants allowed similarly-situated organizations to use the Library facilities and engage in a wide variety of speech and expression in the reserved facilities.

112. Based on their policy excluding "religious purposes," Defendants have refused to allow Plaintiffs the same access to Library facilities.

113. Defendants have no compelling interest to justify their exclusion of the Plaintiffs.

114. The Defendants' policy therefore violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A. That this Court preserve the relative position of the parties by preliminarily enjoining the Defendants from ceasing their practice of allowing use of the Library meeting rooms by nonprofit organizations;

B. That this Court preliminarily and permanently enjoin the Defendants from enforcing their policy that expressly discriminates on the basis of religion;

C. That this Court enter declaratory judgment stating that the Defendants' policy is facially unconstitutional and violates the Plaintiffs' rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D. If the policy is not declared facially unconstitutional, that this Court enter a declaratory judgment stating that the policy is unconstitutional as applied to the Plaintiffs and violates the Plaintiffs' rights guaranteed under the First and Fourteenth Amendments to the United States Constitution;

E. That this Court award Plaintiffs nominal damages arising from the acts of the Defendants as an important vindication of the constitutional rights at stake;

F. That this Court award Plaintiffs their costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law;

G. That this Court grant such other and further relief as the Court deems equitable, just, and proper;

H. That this Court adjudge, decree and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment; and

I. That this Court retain jurisdiction of this matter as necessary to enforce the Court's orders.

Respectfully submitted on this, the 6th day of October, 2004,

Attorneys for Plaintiffs,

By: _____

Joshua W. Carden
Attorney of Record

## FRCP 7.1 CORPORATE DISCLOSURE STATEMENT

This Corporate Disclosure Statement is filed on behalf of Faith Center Church Evangelistic Ministries in compliance with Federal Rule of Civil Procedure 7.1.

Faith Center Church Evangelistic Ministries is a California non-profit religious corporation; it has no parent corporation and has not issued, nor will it issue, publicly held stock. Thus, no other corporation holds any stock in Faith Center Church Evangelistic Ministries.

A supplemental disclosure statement will be filed upon any change in the information provided herein.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Respectfully submitted on this, the 6th day of October, 2004.

By: _____
    Joshua W. Carden
    Attorney of Record

**VERIFICATION**

I, Hattie Mae Hopkins, am a citizen of the United States and a resident of the State of California. I am the registered agent for Faith Center Church Evangelistic Ministries and authorized to speak for that organization. I have read the foregoing Amended Verified Complaint for Declaratory and Injunctive Relief and Damages and declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 5th day of October, 2004.

Hattie Mae Hopkins

**EXHIBIT A**

*THE Dates Reserved Were MAY 29TH 2004, AND ALSO JULY 31st*
**Attn:** *OUR COORDINATOR, MARY WARD, ANTIOCH CA, FOR 11:00 AM*
**Librarian** *For These Events, ON* Contra Costa County Library *YOUR CALENDAR,*

## APPLICATION AND PERMIT FOR USE OF MEETING ROOM

Name of Library *Antioch*
Date of Meeting *MAY 29, 2004*
Time of Meeting: From *11:00* To *3:00* Total time *4 ¼ HRs*
Name of Applicant *Pastor Hattie Hopkins*
Name of Organization *Faith Ctr ministries W. m E C Fellowship*
Purpose of Organization *Workshop (Ministry)*
Purpose of Meeting *PRAYER, PRASE, AND WORSHIP OPEN TO PUBLIC, PURPOSE TO TEACH AND ENCOURAGE SALVATION THRU JESUS CHRIST AND BUILD UP Commun.*

I have read and agree to abide by and uphold all rules and policies of the Contra Costa County Library and the branch library governing the use of library premises or equipment, and I understand that failure to do so will result in loss of future privileges in the use of library meeting rooms. I understand that there is a no refund policy on the fee-based use of meeting rooms.

I agree that *FAITH. CTR. Evg. Min. /H. Hopkins Pastor.* shall defend, indemnify, save, and hold harmless Contra
(name of person)

Costa County and its officers and employees from any and all claims, costs, and liability for any damages, sickness, death, or injury to person(s) or property, including without limitation all consequential damages, from any cause whatsoever arising directly or indirectly from or connected with the operations or services of *FAITH Ctr. Evg./H. Hopkins* its agents, servants, employees, or subcontractors hereunder, save and except claims *MIN,* (name of person)
or litigation arising through the sole negligence or sole willful misconduct of Contra Costa County or its officers or employees *FAITH CTR. E.MIN. /H. Hopkins* will reimburse Contra Costa County for any expenditures, including (name of person)
reasonable attorneys' fees, Contra Costa County may make by reason of the matters that are the subject of this indemnification, and if requested by Contra Costa County, will defend any claims or litigation to which this indemnification provision applies at the sole cost and expense of *FAITH CTR. E-MIN, HATTIE HOPKINS*
(name of person)
Signature *Hattie Hopkins* Date *MAY 5, 2004*
Position in organization *PASTOR.*
*MAILING→* Home address *5260 49TH St, Sacramento* Phone *(916) 454-3450*
Business address *801 BROADWAY, Sacramento* Phone *(916) 454-3450*

## -- For Library Use Only --

Non Fee Use
Approved ☐
Not Approved ☐ Reason:_____

Fee Based Use
Approved ☐
Not Approved ☐ Reason:_____
Amount of Fee Received:_____ Received by:_____

Librarian in charge_____ Date_____

Form 3-12 (revised 8/92) *MAIL BOXES FAX# 5° Denise Slaughte*
*boanx 754 9224 925 754 5396 706-7984*



**EXHIBIT B**

```
********************
***   TX REPORT   ***
********************

TRANSMISSION OK

TX/RX NO                2448
CONNECTION TEL                  19257545396
SUBADDRESS
CONNECTION ID
ST. TIME                05/18 17:39
USAGE T                 00'35
PGS. SENT               1
RESULT                  OK
```

*THE DATES RESERVED WERE MAY 24th 2004 AND ALSO July 31st 2004 BY*
*TTN: OUR COORDINATOR, MARY WARD, ANTIOCH, CA, FOR 11:00 AM - 3:30 PM;*
*ibrarian FOR THESE EVENTS, ON* Contra Costa County Library *YOUR CALENDAR,*

# APPLICATION AND PERMIT FOR USE OF MEETING ROOM

Name of Library _Antioch_

Date of Meeting: _July 31, 2004_

Time of Meeting: From _11:00_ To _3:00_ Total time _4 4HRS_

Name of Applicant _Foster Hattie Hopkins_

Name of Organization _Faith Ctr Ministries     Warf.C Fellowship_

Purpose of Organization _Workshop (Ministry)_

Purpose of Meeting _PRAYER, PRAISE AND WORSHIP OPEN TO PUBLIC, PURPOSE TO TEACH AND ENCOURAGE SALVATION THRU JESUS CHRIST AND BUILD UP Community_

I have read and agree to abide by and uphold all rules and policies of the Contra Costa County Library and the branch library governing the use of library premises or equipment, and I understand that failure to do so will result in loss of future privileges in the use of library meeting rooms. I understand that there is a no refund policy on the fee-based use of meeting rooms.

I agree that _FAITH CTR, EVg. MIN./H. Hopkins_ _Pastor_ shall defend, indemnify, save, and hold harmless Contra
_(name of person)_

Costa County and its officers and employees from any and all claims, costs, and liability for any damages, sickness, death, or injury to person(s) or property, including without limitation all consequential damages, from any cause whatsoever arising directly or indirectly from or connected with the operations or services of _FAITH CTR, EVg /H. Hopkins_ its agents, servants, employees, or subcontractors hereunder, save and except claims _MIN_, _(name of person)_

or litigation arising through the sole negligence or sole willful misconduct of Contra Costa County or its officers or employees _FAITH CTR, E.MIN. / H. Hopkins_ will reimburse Contra Costa County for any expenditures, including
_(name of person)_

reasonable attorneys' fees, Contra Costa County may make by reason of the matters that are the subject of this indemnification, and if requested by Contra Costa County, will defend any claims or litigation to which this indemnification provision applies at the sole cost and expense of _FAITH CTR. E-MIN HATTIE HOPKINS_
_(name of person)_ _GLY._

Signature _Hattie Hopkins_     Date _MAY 5, 2004_ 5/18/04

Position in organization _PASTOR_

LINE → Home address _5260 49TH St. Sacramento_ Phone _(916) 454-3450_

Business address _801 BROADWAY, Sacramento_ Phone _(916) 454-3450_

---

-- For Library Use Only --

Non Fee Use



**EXHIBIT C**

**OPERATIONS**

THE BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY, CALIFORNIA

Adopted this Order on _____November 17, 1992_____ by the following vote:

AYES:      Supervisors Powers, Fahden, Schroder, Torlakson, McPeak
NOES:      None
ABSENT:    None
ABSTAIN:   None

I-101

---

RESOLUTION NO. 92/ 793

SUBJECT:  IN THE MATTER OF ADOPTING A POLICY FOR THE USE OF MEETING
ROOMS IN LIBRARIES

Upon recommendation of the County Librarian, this Board adopts the
following policy and rescinds all previously adopted policies and rules and regulations
(including Resolution No 78/322 in its entirety) for the use of meeting rooms in libraries:

Contra Costa County Library
POLICY FOR USE OF MEETING ROOMS IN LIBRARIES

It is the policy of the Contra Costa County Library to encourage the use of library meeting
rooms for educational, cultural and community related meetings, programs, and activities.

NO-FEE USAGE
Non-profit and civic organizations, for-profit organizations, schools and governmental
organizations offering meetings, programs, or activities of educational, cultural or
community interest may use the meeting room free of charge for meetings that are open
to the general public, for which no admission fee is charged, and at which no soliciting
or selling is done.

FEE-BASED USAGE
Non-profit and civic organizations, for-profit organizations, schools and governmental
organizations may use the meeting room for a fee for meetings that are closed to the
general public, for which an admission fee is charged, or at which soliciting or selling
takes place.

EDUCATIONAL USE
Library meeting rooms are available to schools only for special meetings, programs, or
activities   They may not be used for instructional purposes as a regular part of the
curriculum.

RELIGIOUS USE
Library meeting rooms shall not be used for religious purposes.

APPLICATION FOR USE
All groups requesting use of a library meeting room must fully complete an application
form for each use.

RULES FOR USE
The County Librarian shall promulgate Rules for the implementation of this Policy. Such
Rules may contain branch specific rules. The County Librarian may deny application or
revoke permission previously granted when such application or permission is for a use
not permitted by this Policy, when the applicant has violated the Rules promulgated by
the County Librarian, or when the meeting room is needed for library purposes.

cc:        County Library
           County Administrator
           County Auditor

I hereby certify that this is a true and correct ... of
an action taken and ordered on the minutes of the
Board of Supervisors on the date shown.
ATTESTED: _March 17, 1992_
Phil BATCHELOR, Clerk of the Board
of Supervisors and County Administrator

RESOLUTION NO. 92/ 793.

by _C. Matthews_ , Deputy

*Contra Costa County Library Policy and Procedure Manual*

# EXHIBIT D

July 5, 2004

Mrs. Laura O'Donuhue, Director
Antioch Library
501 W. 18th St.,
Antioch, Ca., 94509

Re: Faith Center Evg. Ministries

Dear Mrs. O'Donuhue:

As per our most recent phone conversation of July 2, 2004 regarding the
use of your library room to conduct Church related services, please review
The attached facsimile transmission, from Attorney Barbara Weller, of
Gibbs Law Firm of Florida, outlining our Legal Rights to use the Facility
as a Religious Organization, the same as any other Organization, without
any discrimination.

Initially, on May 29, 2004, we had our first Church Fellowship meeting
there at your Library, as had been previously requested by us several
weeks prior when we submitted our applications. At that time a request
was submitted for the use of the Facility also for July 31, 2004.

The meetings were scheduled between 11:00 am – 3:00 pm.; Both
applications were accepted and scheduled accordingly by your Staff,
without any mentioning of your current Policy, that Religious Groups
cannot use the Facility for Services, or any Activities, whatsoever.
The first time I was informed of such a Policy, was at the end of our
Service, May 29th, when two members of your Staff called me into the
Kitchen Area to explain. I asked our Antioch Area Coordinator, Sis. Ward,
to join us. I told them the Law, and asked them to seek Legal Counsel.

Prior to July 2, 2004, when you and I first talked, I suggested the same
thing; you indicated the Policy has been around for years, and your
Board, and other Officials, and not likely to change it, but I hope that this
information will shed some light on this issue, and I pray that expediency
is given unto this matter. I announced the planned meeting for July 31st,
2004, right after we submitted our applications. I thank you very much for
your kindness. Your quick response is appreciated. My Ph. (916) 454-3450.

(SIGNED)
    Dr. Hattie Hopkins, Pastor

**EXHIBIT E**

THE BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY, CALIFORNIA

Adopted this Order on ____August 17, 1993____, by the following vote:

AYES: Supervisors Powers, Smith, Bishop, McPeak and Torlakson
NOES: None
ABSENT: None
ABSTAIN: None

RESOLUTION NO. 93/ 525

SUBJECT: IN THE MATTER OF ADOPTING A POLICY FOR THE USE OF MEETING
ROOMS IN LIBRARIES

Upon recommendation of the County Librarian, this Board adopts the
following policy and rescinds all previously adopted policies and rules and regulations
(including Resolution No. 92/793 in its entirety) for the use of meeting rooms in libraries:

Contra Costa County Library
POLICY FOR USE OF MEETING ROOMS IN LIBRARIES

It is the policy of the Contra Costa County Library to encourage the use of library meeting
rooms for educational, cultural and community related meetings, programs, and activities.

NO-FEE USAGE
Non-profit and civic organizations, for-profit organizations, schools and governmental
organizations offering meetings, programs, or activities of educational, cultural or
community interest may use the meeting room free of charge for meetings that are open
to the general public, for which no admission fee is charged, and at which no soliciting
or selling is done.

FEE-BASED USAGE
Non-profit and civic organizations, for-profit organizations, schools and governmental
organizations may use the meeting room for a fee for meetings that are closed to the
general public, for which an admission fee is charged, or at which soliciting or selling
takes place.

EDUCATIONAL USE
Library meeting rooms are available to schools only for special meetings, programs, or
activities. They may not be used for instructional purposes as a regular part of the
curriculum.

RELIGIOUS USE
Library meeting rooms shall not be used for religious services or activities.

APPLICATION FOR USE
All groups requesting use of a library meeting room must fully complete an application
form for each use.

RULES FOR USE
The County Librarian shall promulgate Rules for the implementation of this Policy. Such
Rules may contain branch specific rules. The County Librarian may deny application or
revoke permission previously granted when such application or permission is for a use
not permitted by this Policy, when the applicant has violated the Rules promulgated by
the County Librarian, or when the meeting room is needed for library purposes.

cc: County Library
County Administrator
County Counsel

I hereby certify that this is a true and correct copy of
an action taken and entered on the minutes of the
Board of Supervisors on the date shown.
ATTESTED: _August 17, 1993_
PHIL BATCHELOR, Clerk of the Board
of Supervisors and County Administrator

RESOLUTION NO. 93/ 525  By _____, Deputy