1   SILVANO B. MARCHESI (State Bar No. 42965)
    County Counsel
2   KELLY M. FLANAGAN (State Bar No. 145018)
    Deputy County Counsel
3   DANIELLE R. MERIDA (State Bar No. 217465)
    Deputy County Counsel
4   COUNTY OF CONTRA COSTA
    651 Pine Street, 9th Floor
5   Martinez, California  94553-1288
    Telephone:      (925) 335-1800
6   Facsimile:      (925) 646-1078

7   Attorneys for Defendants

8

9                   IN THE UNITED STATES DISTRICT COURT

10              FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13  FAITH CENTER CHURCH EVANGELISTIC          )   Civil Action No. C 04-3111 JSW
    MINISTRIES, a California nonprofit religious   )
14  corporation, and HATTIE HOPKINS, an individual, )
                                                  )   **DEFENDANTS' OPPOSITION TO**
15                                                )   **MOTION FOR PRELIMINARY**
                              Plaintiffs,         )   **INJUNCTION**
16                                                )
17         v.                                     )   Hearing Date: January 28, 2005
                                                  )   Hearing Time: 9:00 a.m.
18  FEDERAL GLOVER, et al.                        )   Dept.: Courtroom 2
                                                  )
19                            Defendants.         )
                                                  )
20  _____  )

21

22

23

24

25

26

27

28

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     A Preliminary Injunction is Not Warranted Because Plaintiffs Cannot Show that They are Likely to Succeed on the Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           A.    The County Library Meeting Rooms are Limited Public Forums. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           B.    The County's Policy and Practice Does Not Unconstitutionally Discriminate Based on Viewpoint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                 1.    Religious Services are Not the Equivalent of Secular Activities From a Religious "Viewpoint." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                 2.    Even if Religious Services Can Properly be Considered the Expression of a "Viewpoint" the County's Policy and Practice Does Not Unconstitutionally Discriminate. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                        a.    The County's Policy has a Secular Purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                        b.    The County's Policy and Practice Does Not Endorse or Inhibit Religion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                        c.    The County's Policy and Practice Does Not Foster an Excessive Entanglement of Government With Religion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           C.    The County's Policy and Practice on the Use of Library Meeting Rooms Does Not Unconstitutionally Discriminate Based on Content. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

           D.    The County's Policy and Practice Does Not Violate, But Rather is Necessary in Light of, the Establishment Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           E.    The County's Policy and Practice Does Not Violate the 14th Amendment's Right to Equal Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    II.    Plaintiffs Have Not Suffered Irreparable Harm. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    III.    Serious Legal Questions Do Exist and the Balance of the Equities, Including the Public Interest, Weighs in Favor of the County. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**TABLE OF AUTHORITIES**

**CASES**

*Agostini v. Felton*, 521 U.S. 203 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

Aguilar v. Felton, 473 U.S. 402 (1984).................................................................16-17

*American Civil Liberties Union of Louisiana v. Foster*, 2002 U.S. Dist. LEXIS 13778 (E.D. La. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Associated Gen. Contractors of Calif. v. Coalition for Economic Equity*, 950 F.2d 1401 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bowen v. Kendrick*, 487 U.S. 589 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Buono v. Norton*, 371 F.3d 543 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753 (1995) . . . . . . . . . . . . . . 16

*Chalk v. United States Dist. Ct. Cent. Dist. of Calif.*, 840 F.2d 701 (9th Cir. 1988) . . . . . . . . . 3

*City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789 (1984) . . . . . . . . . . . . . . 6

*Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . 14

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788 (1985) . . . . . . . . . . . . . . . . . . 4, 5

*County of Allegheny v. ACLU,* 492 U.S. 573 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*DiLoreto v. Downey United Sch. Dist. Bd. of Educ.*, 196 F.3d 958 (9th Cir. 1999).....................4-6

*Everson v. Bd. of Educ.,* 330 U.S. 1 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Good News Club v. Milford Central School Dist.*, 533 U.S. 98 (2001)..... . . . . . . . . 4, 6-8, 15, 16

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044 (9th Cir. 2003) . . . . . . . . . . . . . . . . . 8-10

*Kikumura v. Hurley*, 242 F.3d 950 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242 (3rd Cir. 1992)............ 5

*Kreisner v. City of San Diego*, 1 F.3d 775, 785 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 12, 13

*Lamb's Chapel v. Center of Moriches Union Free School Dist.*, 508 U.S. 384 (1993) 4-7, 10, 15, ........................................................................................................................16

*Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979 (9th Cir. 2003) . . . . . . . . . . . . . . 10, 14

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lynch v. Donnelly*, 465 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 17

*Madrid v. Lopez*, 21 F.Supp.2d 1151 (N.D. Ca. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 18

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) . . . . . . . . . . . . . . . 4, 5

*Prince v. Jacoby*, 303 F.3d 1074 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rosenberger v. Rector & Visitors of the Univ. of Virginia,* 515 U.S. 819 (1995) . . . . . . . . . . 4, 6

*Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Southwest Voter Registration Ed. Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003) . . . . . . . . . 3

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832 (9th Cir. 2001) . . . . 3

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . 3

*Wallace v. Jaffree*, 472 U.S. 38 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Widmar v. Vincent,* 454 U.S. 263 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATUTES

20 U.S.C. Sections 471-474 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 604(a)(j) (Supp. V 1999) (Temporary Assistance to Need Families) . . . . . . . . . 9, 15

42 U.S.C. § 9920(c) (Supp. V. 1999) (Community Services Block Grants) . . . . . . . . . . . 9, 14-15

42 U.S.C.A. § 300x-65(i) (West Supp. 2002)
(Substance Abuse and Mental Health Services Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

## OTHER AUTHORITIES

Webster's Third New International Dictionary Unabridged (1993) . . . . . . . . . . . . . . . . . . . . . . . 7

1  SILVANO B. MARCHESI (State Bar No. 42965)
   County Counsel
2  KELLY M. FLANAGAN (State Bar No. 145018)
   Deputy County Counsel
3  DANIELLE R. MERIDA (State Bar No. 217465)
   Deputy County Counsel
4  COUNTY OF CONTRA COSTA
   651 Pine Street, 9th Floor
5  Martinez, California  94553-1288
   Telephone:    (925) 335-1800
6  Facsimile:    (925) 646-1078

7  Attorneys for Defendants

8

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  FAITH CENTER CHURCH EVANGELISTIC        )  Civil Action No. C 04-3111 JSW
    MINISTRIES, a California nonprofit religious  )
14  corporation, and HATTIE HOPKINS, an individual,  )
                                            )  **DEFENDANTS' OPPOSITION TO**
15                                          )  **MOTION FOR PRELIMINARY**
                  Plaintiffs,              )  **INJUNCTION**
16                                          )
           v.                               )  Hearing Date: January 28, 2005
17                                          )  Hearing Time: 9:00 a.m.
                                            )  Dept.: Courtroom 2
18  FEDERAL GLOVER, et al.                  )
                                            )
19                Defendants.               )
                                            )
20                                          )
                                            )
21  _____ )

22         Defendants Federal Glover, Mark De Saulnier, John M. Goia, Millie Greenberg,

23  Gayle B. Uilkema, John Sweeten, Anne Cain, Patty Chan, and Laura O'Donoghue,

24  (hereafter, collectively, "Defendants" or the "County") hereby submit their Opposition to

25  the Motion for Preliminary Injunction ("Motion") filed by Plaintiffs Faith Center Church

26  Evangelistic Ministries and Hattie Mae Hopkins ("Plaintiffs").

27

28

# INTRODUCTION

Plaintiffs seek to use the limited public forum of a County library meeting room to hold religious worship services. They ask this Court to issue a preliminary injunction prohibiting the County from implementing its current policy which prohibits religious services in library meeting rooms. Plaintiffs are not likely to succeed on the merits and have made no showing that they will be irreparably harmed without the issuance of a Preliminary Injunction. Plaintiffs will not succeed on the merits here because prohibiting religious worship services from County library meeting rooms does not violate the First or 14th Amendments. Plaintiffs ask this Court to give religion preferred status, in effect maintaining that all religious activity, including pure religious worship, is a viewpoint. Supreme Court precedent on viewpoint discrimination and the Establishment Clause do not permit such a distortion. The County's policy does not discriminate based on viewpoint nor content and does not violate the 14th Amendment. Even if it did so, such discrimination is justified, and in fact mandated by, the Establishment Clause. A preliminary injunction altering the current County policy should not be issued in this case.

# ISSUE PRESENTED

Is the County's Library Meeting Room Use Policy Prohibiting Religious Services constitutional?

# STATEMENT OF RELEVANT FACTS

Plaintiffs correctly stated in their moving papers that, at the time Faith Center applied to use the Antioch Library Meeting Room for "prayer, praise and worship," the County Library Meeting Room Use Policy prohibited "religious services or activities." Plaintiffs' Motion for Preliminary Injunction (hereinafter "Plaintiffs' Motion") at vi. The Contra Costa County Board of Supervisors, however, voted to clarify the policy on December 14, 2004 to prohibit only "religious services." *See* Declaration of Anne Cain (hereinafter "Cain Dec."), paragraph 9, Exhibit A. This formal change in policy, however, does not change the analysis in this case because plaintiffs applied to use the library

meeting room for "prayer, praise and worship" and library staff denied their application because "prayer, praise and worship" constitute prohibited religious services under both the old and new policies. *See* Cain Dec., para. 13.

## LEGAL STANDARD

Plaintiffs have chosen to apply the "alternative test" for obtaining preliminary injunctions which requires they show "(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of the hardships tip sharply in favor of the moving party." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839-840 (9th Cir. 2001). Under either the traditional or alternative tests, the analysis "creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tips in their favor." *Southwest Voter Registration Ed. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003).

Plaintiffs' Motion in this case is subject to a higher standard, requiring them to show that the requirements for injunctive relief weigh "heavily and compellingly" in their favor. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir 2001). Motions for preliminary injunction are primarily sought to *preserve* the status quo pending a determination of the action on its merits. *Chalk v. United States Dist. Ct. Cent. Dist. of Calif.*, 840 F.2d 701, 704 (9th Cir. 1988). Requests for injunctive relief that *alter* the status quo are subject to higher scrutiny and carry a heavier burden of persuasion. *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2nd Cir. 1995). Here, the status quo is the current County library meeting room use policy which prohibits groups from holding "religious services" in library meeting rooms. If plaintiffs are granted a preliminary injunction in this case it will alter the status quo, thus their motion should be subjected to higher scrutiny.

**ARGUMENT**

**I.      A Preliminary Injunction is Not Warranted Because Plaintiffs Cannot Show that They are Likely to Succeed on the Merits.**

A.      **The County Library Meeting Rooms are Limited Public Forums.**

The nature of the forum at issue is typically determined at the outset because "the existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).   Plaintiffs claim that the concept of a limited public forum as a separate category is "suspect" after *Perry*.  Plaintiffs' Motion at 4, fn.1.  Not so.

The County library meeting rooms are limited public forums and as such, the reasonable review standard applies.  In the two most recent Supreme Court cases on the matter, *Lamb's Chapel* and *Good News Club*, the Supreme Court assumed, without deciding, that the public schools at issue were limited public forums and based their analysis accordingly.  *Lamb's Chapel   v. Center of Moriches Union Free School Dist.*, 508 U.S. 384, 391-392 (1993); *Good News Club v. Milford Central School Dist.*, 533 U.S. 98, 106 (2001).  "[W]ith  respect to public property that is not a designated public forum open for indiscriminate public use for communicative purposes we have said that control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."  *Lamb's Chapel,* 508 U.S. at 392-393 citing *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 806 (1985).  The Ninth Circuit consistently applies a reasonable review standard to limited public forums.  *See DiLoreto v. Downey United Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965-967 (9th Cir. 1999) *citing Rosenberger v. Rector & Visitors of the Univ. of Virginia,* 515 U.S. 819, 829 (1995) and *Lamb's Chapel*, 508 U.S. at 392-93.

1    In conducting a forum analysis, a court will look at "the nature of the property and
2    its compatibility with expressive activity, as well as the policy and practices of the
3    government" and "the government's intent" in creating the forum. *DiLoreto*, 196 F.3d at
4    965-966. Although not dispositive, the fact that a government entity employs a screening
5    process to determine on a case by case basis the suitability of a particular speaker, "is
6    evidence that the [government entity] intended to create a limited public forum closed to
7    certain subjects." *Id.* at 967 *citing Cornelius*, 473 U.S. at 805 (1985) ("The decision of the
8    Government to limit access to the [forum] is not dispositive in itself; instead, it is relevant
9    for what it suggests about the Government's intent in creating the forum.") and *Perry*, 460
10   U.S. at 47 ("This type of selective access does not transform government property into a
11   public forum.").

12       Contra Costa County created a limited public forum when it opened up its library
13   meeting rooms for "educational, cultural and community related meetings, programs and
14   activities." The County library's principal purpose is to "aid in the acquisition of
15   knowledge through reading, writing and quiet contemplation." *Kreimer v. Bureau of Police*
16   *for the Town of Morristown*, 958 F.2d 1242, 1261 (3rd Cir. 1992); *see also Madrid v. Lopez*,
17   21 F.Supp.2d 1151 (N.D. Ca. 1997) (restrictions on talking and other disruptive behavior
18   need only be reasonable given the primary purpose of a library). The County's intent to
19   permit community members to use meeting rooms for "educational, cultural and
20   community related" meetings and activities is consistent with its principal purpose and does
21   not automatically turn it into a "designated public forum open for indiscriminate public use
22   for communicative purposes." *Lamb's Chapel*, 508 U.S. at 392-393. Moreover, the
23   County's application process which requires organizations wishing to use a meeting room
24   to fill out an application with detailed information about the organization's mission and the
25   purpose of the meeting to be held is evidence that the County did not intend to open up the
26   meeting rooms for indiscriminate use.

27       As a limited forum, the County's library meeting room use policy must be

28

"reasonable in light of the purpose served by the forum and viewpoint neutral to be permissible." *DiLoreto*, 196 F.3d at 967 *citing Rosenberger*, 515 U.S. at 829 and *Lamb's Chapel*, 508 U.S. at 392-93. Even if this Court decides, however, that County library meeting rooms are designated public forums instead of limited forums, the outcome remains unchanged because the policy does not unconstitutionally discriminate based on content under either strict scrutiny, applied in designated public forums or reasonable review, applied in limited forums, nor does it discriminate based on viewpoint.

**B.    The County's Policy and Practice Does Not Unconstitutionally Discriminate Based on Viewpoint.**

**1.    Religious Services are Not the Equivalent of Secular Activities From a Religious "Viewpoint."**

The underlying principle of the viewpoint-neutrality doctrine "is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Lamb's Chapel*, 508 U.S. at 394 *citing City Council of Los Angeles v. Taxpayers for Vincent* 466 U.S. 789, 804 (1984). It is clear that "speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." *Good News Club*, 533 U.S. at 111-112. Yet, the characterization that "excluding religion as a subject or category from a forum always constitutes viewpoint discrimination ... mischaracterizes" Supreme Court precedent. *DiLoreto*, 196 F.3d at 969-970 *citing Rosenberger,* 515 U.S. at 831 and *Lamb's Chapel*, 508 U.S. at 393-394.

Plaintiffs make this precise mischaracterization in their Motion. Plaintiffs claim that their "prayer, praise and worship" differs from the speech that the County permits in library meeting rooms "only in that Plaintiffs' meetings espouse a religious viewpoint." Plaintiffs' Motion at 3. Not so. Plaintiffs' "prayer, praise and worship" contains all the

elements of a religious service.[1]   Plaintiffs cite *Lamb's Chapel* and *Good News Club* for the proposition that speech discussing otherwise permissible subjects can not be excluded just because it is being discussed from a religious perspective.  Plaintiffs' Motion at 2-3. No court has ever held that a government entity is required to permit religious worship services as a "viewpoint".   The two most recent Supreme Court decisions on point acknowledge the distinction and in those cases the Court declined to extend their holding to include "religious services" or "mere religious worship." *Lamb's Chapel*, 508 U.S. at 389, n.2; *Good News Club*, 533 U.S. at 112, n.4.

In *Lamb's Chapel*, a public school opened up school property to outside groups and proscribed a list of rules regulating the use.  The regulation at issue stated "school premises shall not be used by any group for religious purposes." *Lamb's Chapel*, 508 U.S. at 387.  A church applied to use the school premises to show "for public viewing and for assertedly religious purposes, a film series dealing with family and child-rearing issues faced by parents today." *Id*.  The Court held that "permit[ting] school property to be used for the presentation of all views about family issues and child rearing except those dealing with the subject matter from a religious standpoint" unconstitutionally discriminates based on viewpoint.  *Id*. at 393.  Justice White explicitly stated, however,  that the issue of whether a policy prohibiting "religious services" was constitutional was not at issue. The  Court noted that the petitioner did not challenge the school's denial of its earlier application for permission to hold "Sunday morning services and for Sunday School" and therefore "the validity of the denial is not before us." *Lamb's Chapel*, 508 U.S. at 389, n.2.

In *Good News Club,* a public school again opened up school property to outside groups and prohibited use "for religious purposes." *Good News Club*, 533 U.S. at 103.

---

[1] The definition of "worship" indicates that it is a part of, or is synonymous with, a religious service.  "Worship" is defined as "the reverence or veneration tendered a divine being or supernatural power; an act, process or instance of expressing such veneration by performing or taking part in religious exercises or ritual." Webster's Third New International Dictionary Unabridged (1993).

The Good News Club was a private Christian organization for children ages six to twelve and the Club proposed to use the school property for "a fun time of singing songs, hearing a Bible lesson and memorizing scripture." *Id.* The Court characterized these activities as "the teaching of morals and character, from a religious standpoint." *Id.* at 109. The Supreme Court held that the case fit squarely within the holding of *Lamb's Chapel* stating that

> [t]he only apparent difference between the activity of Lamb's Chapel and the activities of the Good News Club is that the Club chooses to teach moral lessons from a Christian perspective through live storytelling and prayer, whereas Lamb's Chapel taught lessons through films.

*Id.* at 109-110. The Court went to great pains to simply "reaffirm [its] holdings in *Lamb's Chapel* and *Rosenberger* that speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." *Id.* at 111-112. Justice Thomas, writing for the majority in *Good News Club* stated that "Despite Milford's insistence that the Club's activities constitute 'religious worship' the Court of Appeals made no such determination." *Id.* at 112, fn. 4. He then went on to explicitly state that "the Club's activities <u>do not constitute mere religious worship</u>." *Id*. (emphasis added). The Supreme Court once again distinguished between religious worship on the one hand and speech with a religious viewpoint on the other. That distinction has constitutional implications and can not be ignored.

Post *Good News Club*, the Ninth Circuit has acknowledged the Supreme Court's distinction between permissible topics with a religious viewpoint and proselytization. In *Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044 (9th Cir. 2003), a school permitted non-profit organizations to distribute brochures with topics that might be of interest to students but denied materials of a "commercial, political or religious nature." *Id.* at 1046. Plaintiff sought to distribute brochures to students about a religious summer camp. *Id.* The Ninth Circuit held that under *Good News Club*,

the District cannot refuse to distribute literature advertising a program with underlying religious content where it distributes quite similar literature for secular summer camps, but it can refuse to distribute literature that *itself* contains proselytizing language. <u>The difference is subtle but important</u>.

*Id.* at 1053 (emphasis added).

Similarly, in *Prince v. Jacoby*, the Ninth Circuit held that a religious student group had a right under the Equal Access Act[2] and the First Amendment to the same access to the school's public announcement system as other student groups, but stated "this is not to say that [the group] has the right to pray or proselytize in any manner through the school's public dissemination system." *Prince v. Jacoby*, 303 F.3d 1074, 1087 (9th Cir. 2002). The Ninth Circuit thus recognizes, following Supreme Court precedent, that religious worship is different than a meeting or discussion on otherwise permissible topics from a religious viewpoint.

Like the courts, the federal government routinely makes a distinction between religious viewpoints and religious activity with provisions commonly referred to as "charitable choice provisions" in federal grant programs. These provisions allow religious organizations to apply, along with other non-profit and private organizations, for federal funds to administer various community services but prohibit the religious organizations from using the federal funds to engage in "sectarian worship, instruction or proselytization." *See e.g.* 42 U.S.C.A. § 300x-65(i) (West Supp. 2002) (Substance Abuse and Mental Health Services Act); 42 U.S.C. § 9920(c) (Supp. V. 1999) (Community Services Block Grants); 42 U.S.C. § 604(a)(j) (Supp. V 1999) (Temporary Assistance to Need Families).

Plaintiffs' attempt to categorize the "prayer, praise and worship" at issue in this case

---

[2]The Federal Equal Access Act prohibits discrimination against students who wish to organize student meetings in the public schools that have opened themselves up as limited public forums. *See* 20 U.S.C. Sections 471-474. This law applies only to public school settings.

as an otherwise permissible activity from a religious viewpoint ignores this important distinction.   Unlike the film on child rearing issues in *Lamb's Chapel* and the teaching of morals and character development in *Good News Club*, there is no secular equivalent to "prayer, praise and worship."

**2.     Even if Religious Services Can Properly be Considered the Expression of a "Viewpoint" the County's Policy and Practice Does Not Unconstitutionally Discriminate.**

Plaintiffs incorrectly assert that "[v]iewpoint discrimination is always impermissible."  Plaintiff's Motion at 2.  Assuming arguendo that "prayer, praise and worship" is a viewpoint, the County's exclusion may be justified by a compelling governmental interest.  *See e.g.  Lamb's Chapel* 508 U.S. at 394-95 (finding viewpoint discrimination and going on to conduct an Establishment Clause analysis; *Widmar v. Vincent,* 454 U.S. 263, 271 (1981) (same); *Hills,* 329 F.3d at 1053, fn. 7.  Permitting use of County Library meeting rooms for "prayer, praise and worship" would create an unconstitutional establishment of religion which is a compelling governmental interest. *Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979, 983 (9th Cir. 2003).

Other than boldly stating that the County's policy is based "on the usual misconceptions regarding the 'separation of church and state' gloss on the Establishment Clause," plaintiffs do not address whether or not a policy permitting religious worship would constitute an Establishment Clause violation.  Plaintiffs' Motion at 5.[3]  Rather, plaintiffs make the overreaching claim that prohibiting religious worship services violates the Establishment Clause because such a policy is hostile towards religion.  Plaintiffs'

---

[3]Plaintiffs' attempt to bolster its claim that government may disapprove of religion based on the "Founding Father's [sic] view of religious liberty" is misguided, at best.  Plaintiffs' Motion 5, fn. 2.  That "[t]he American people is entirely Christian" and that "with such a people" it would be "strange" if government institutions did not "presuppose Christianity ... and exhibit relations with it" was not true in 1833 and is certainly not true now.

This is not an "entirely Christian" nation and governmental "presupposition" of Christianity is certainly not constitutionally required.

Motion at 7. Plaintiff argue that the County must be "neutral in its relations with groups of religious believers and nonbelievers." *Id. quoting Everson v. Bd. of Educ.,* 330 U.S. 1 at 18 (1947). The neutrality plaintiffs seek is an impossibility with respect to religious worship services in which "non-believers" by definition do not participate. Nonetheless, in prohibiting religious worship services, the County's policy does not violate the Establishment Clause.

Where, as here, government conduct (1) has a secular purpose; (2) does not have the principal or primary effect of advancing or inhibiting religion and (3) does not foster an excessive government entanglement with religion, it does not run afoul of the Establishment Clause. *Lemon v. Kurtzman,* 403 U.S. 602, 612-13 (1971).

      a.      The County's Policy has a Secular Purpose.

Plaintiffs concede that the County's policy encouraging "the use of library meeting rooms for educational, cultural and community related meetings, programs and activities" is secular in purpose and therefore satisfies the first prong of the *Lemon* test. Plaintiffs' Motion at 8.

      b.      The County's Policy and Practice Does Not Endorse or Inhibit Religion.

As to the second prong of the Establishment Clause test, the Ninth Circuit recently evaluated this prong considering both the "effects prong" of *Lemon v. Kurtzman* and the "endorsement test" from Justice O'Conner's concurrence in *Lynch v. Donnelly*, 465 U.S. 668, 687 (1984). *Buono v. Norton*, 371 F.3d 543, 548 (9th Cir. 2004); s*ee also Agostini v. Felton*, 521 U.S. 203, 235 (1997). A government policy violates the effects/endorsement prong if a reasonable observer would perceive it to endorse religion. *County of Allegheny v. ACLU,* 492 U.S.573 at 592 (1989). The "prohibition against government endorsement precludes the government from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred." *Id.* at 593 *quoting Wallace v. Jaffree*, 472 U.S. 38, 70 (1985) (O'Connor, J. concurring). Courts consider both perceived

and actual endorsement of religious speech when making this determination. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 296 (2000).

The Supreme Court has noted that "[t]he endorsement test depends on a sensitivity to the unique circumstances and context of a particular challenged practice." *County of Allegheny*, 492 U.S. at 629 (O'Connor, J., concurring). In the context of County library meeting rooms, permitting "prayer, praise and worship" would violate the Establishment Clause if a reasonable observer would perceive such a religious service as being endorsed by the library.

A reasonable observer here is a Contra Costa County library patron which is a population diverse in age, ethnicity, gender and religious faith. *See* Cain Dec., para.3. Unlike in *Lamb's Chapel* and *Good News Club*, plaintiffs here seek to use the limited public forum of a library meeting room between 10:30 and 3:00 p.m. on Saturdays, during normal library hours. Cain Dec., para. 10; *See also* Declaration of Danielle R. Merida ("Merida Dec."), para.2, Ex. A. Both adults and children will be present at the library during the time that Plaintiffs wish to conduct "prayer, praise and worship." The Antioch library meeting room is situated directly off the main entrance to the Library and shares a wall the library staff break room. Cain Dec., para. 5. The library meeting room is not sound proofed and Plaintiffs' "prayer, praise and worship" could be heard outside of the library meeting room on the day they used the room. *Id.*, para.5, 12. Plaintiffs' "prayer, praise and worship" would most certainly inform library patrons that church services are being held in the County library which would give rise to a perception that the County is endorsing those religious services, particularly since the space for those services is provided to plaintiffs for free.

Plaintiffs cite *Kreisner v. City of San Diego* for the proposition that a religious organization "has the right to express its views publicly in areas traditionally held open for all manner of speech." Plaintiff's Motion at 8 *citing Kreisner v. City of San Diego*, 1 F.3d 775, 785 (9th Cir. 1993). *Kreisner* is distinguishable because prohibiting "prayer, praise

and worship" in library meeting rooms is very different from prohibiting Plaintiffs or any other organization from discussing their <u>views</u>.  Moreover, unlike in *Kreisner*, the library meeting rooms here are not forums "traditionally held open for all manner of speech." *Id.* As discussed above, library meeting rooms are limited public forums open only for a limited purpose.

Plaintiffs and other community members are welcome to use County Library meeting rooms to discuss their religious beliefs. For example, they can have seminars or meetings at which they discuss their beliefs, or opinion on virtually any topic they choose. They can discuss abortion, gay marriage, the war in Iraq or any other subject and may express their religious beliefs on those topics.  They can have an educational program in which they teach parents child-rearing from a religious perspective.  They could even quote Bible verses to illustrate their lessons or to bolster their opinions.[4]  What they cannot do is hold religious worship services in a free meeting room in an open library.  The distinction may be subtle, but it is critical in assessing the constitutionality of the library's policy.

c.    The County's Policy and Practice Does Not Foster an Excessive Entanglement of Government With Religion.

When a traditionally non public forum is opened up as a limited public forum for discussion by certain topics or certain speakers, the forum host must necessarily inquire about each group's proposed use of the forum to determine whether the use is consistent with the uses set forth for the limited forum.  Plaintiffs argue that the act of inquiry itself

---

[4]In fact, according to a flyer Plaintiffs' provided in their initial disclosures, a portion of the activities they sought to conduct in the Antioch library meeting room may not have violated the County's policy.  The flyer states that a "Schedule of Wordshop" was to take place from 11:00 am to 12:00 noon. *See* Merida Dec., para. 2, Ex. A.  The bulk of Plaintiffs' time in the meeting room, however, would be used for a "Praise and Worship" service which was to be held from 1:00 p.m. to 3:00 p.m. *Id.*  The County did not receive this flyer when it denied Plaintiffs' application for use.  It made its determination on Plaintiffs' application which stated plaintiffs sought to use the meeting room for "prayer, praise and worship." *See* Exhibit A to First Amended Complaint. This does not change the analysis, however, because the County would not have permitted the Plaintiffs' worship service from 1:00 p.m. to 3:00 p.m.

excessively entangles the County with religion. Plaintiffs' Motion at 11. This cannot be reconciled with Establishment Clause jurisprudence. The general rule is that "Not all entanglements ... have the effect of advancing or inhibiting religion ... Entanglement must be "excessive before it runs afoul of the Establishment Clause." *Agostini*, 521 U.S. at 233.

In *Bowen v. Kendrick*, plaintiff challenged a provision in the Adolescent Family Life Act (AFLA) which offered federal grants to public and private organizations providing services related to adolescent sexual relations and pregnancy. *Bowen v. Kendrick*, 487 U.S. 589 (1988). The AFLA required that the government "review[] the adolescent counseling program set up by religious institutions that are grantees, review[] the materials used by such grantees, and monitor[] the program by periodic visits." *Bowen*, 487 U.S. at 615-17. The Supreme Court held that this government review did not constitute excessive entanglement. *Id.*

Moreover, a recent Ninth Circuit case cautions that a failure to prevent religious proselytization in a limited public forum may <u>cause</u> the government to become unduly entangled in religion. *Lassonde,* 320 F.3d 979. In *Lassonde*, a high school permitted a graduating high school senior to deliver a commencement speech with references to his personal religious beliefs but required him to remove language from the speech that contained proselytization. *Id.* at 981. The Court held that unlike in *Good News Club* where the school facility would be used after hours, permitting proselytization during a graduation ceremony carried the "imprimatur of the school" and thus would excessively entangle the school in religion. *Id.* at 985; *see also Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092 (9th Cir. 2000).

As discussed above, federal grant programs contain provisions permitting religious organizations to apply for funds but prohibiting those organizations from engaging in certain types of religious activities, most often "sectarian worship, instruction or proselytization." *See e.g.* 42 U.S.C.A. § 300x-65(i) (West Supp. 2002); 42 U.S.C. §

9920(c) (Supp. V. 1999);  42 U.S.C. § 604(a)(j) (Supp. V 1999).  At least one federal district court has held that government entities distributing federal funds are <u>required</u> to monitor the activities of these religious organizations so as to ensure the programs do not violate the Establishment Clause by appearing to endorse religion.  *See American Civil Liberties Union of Louisiana v. Foster*, 2002 U.S. Dist. LEXIS 13778, *13-14 (E.D. La. 2002).

Simply inquiring into the purpose for which an organization wishes to use the library meeting room is necessary to maintain the library meeting rooms as a limited public forum and maintain the library as a place for reading, writing and quiet contemplation. Such inquiry does not excessively entangle the County in religion.  Moreover, the County is required by Supreme Court precedent on First Amendment and Establishment Clause jurisprudence to draw a line between discussion of topics from a religious viewpoint on the one hand and religious services and worship on the other.  *See Lamb's Chapel*, 508 U.S. at 289, n.2; *Good News Club*, 533 U.S. at 112, n.4.

In fact, requiring the County to permit religious services in library meeting rooms would <u>cause</u> excessive government entanglement with religion.  Followed to its logical conclusion, such a rule would open up all limited public forums for religious worship services.  Religious groups would no longer have to worry about fundraising for a building – every county library would become a free house of worship.

**C.      The County's Policy and Practice on the Use of Library Meeting Rooms Does Not Unconstitutionally Discriminate Based on Content.**

As discussed above, the County created a limited public forum when it opened up library meeting rooms for "educational, cultural and community related meetings, programs and activities."  *See* Cain Dec., para. 7 at Ex. A.   The County has the authority to open a forum of limited uses, provided access is both reasonable in light of the purpose of the form and viewpoint neutral.  The County clearly did not open up the library meeting rooms for

1    indiscriminate use.

2        Even if it is determined that the County opened up a designated public forum as

3    opposed to a limited one, restricting Plaintiffs from conducting "prayer, praise and

4    worship" is consistent with the County's constitutional responsibilities under the

5    Establishment Clause. "There is no doubt that compliance with the Establishment Clause

6    is a state interest sufficiently compelling to justify content-based restrictions on speech."

7    *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 761-762 (1995). The

8    County determined that in order to comply with the Establishment Clause "religious

9    services" are not permitted in library meeting rooms. As discussed in detail above, the

10   County's concern that permitting religious services would violate the Establishment Clause

11   qualifies as a reasonable restriction and a compelling governmental interest.

12       **D.    The County's Policy and Practice Does Not Violate, But Rather is**

13            **Necessary in Light of, the Establishment Clause.**

14
15       As discussed in more detail above, the County's policy prohibiting religious

     services generally and "prayer, praise and worship" specifically does not violate the
16
     Establishment Clause. Quite the contrary. The policy is required by Supreme Court
17
     jurisprudence as well as the practical application of that precedent recognizing that there is
18
     a distinction between religious services and worship on the one hand and religious
19
     viewpoints on the other. *Lamb's Chapel and Good News Club* upheld religious
20
     organizations' rights to discuss otherwise permissible topics from a religious viewpoint but
21
     explicitly refrained from extending their holding to say that the host of a limited public
22
     forum must permit religious worship and religious services. *Lamb's Chapel*, 508 U.S. at
23
     289, n.2; *Good News Club* 533 U.S. at 112, n.4.
24
         The County has drawn a line which properly navigates the contours of the Free
25
     Speech Clause on the one hand and the Establishment Clause on the other. The Supreme
26
     Court has acknowledged that "in each case, the inquiry calls for line-drawing; no fixed *per*
27
     *se* rule can be framed." *Lynch v. Donnelly*, 465 U.S. at 668; *see also Aguilar*, 473 U.S. at
28

1  421. (interaction of effects and entanglement tests requires government hosts to "tread an

2  extremely narrow line.").  The County's policy draws this line in the same way that the

3  federal government regulates various federal grant programs which on the one hand

4  welcome participation by religious organizations but on the other acknowledge that there is

5  a limit to the type of religious activity that the government may endorse.

6  Permitting religious worship and services to be held in library meeting rooms while

7  the library is open to all patrons will cause a reasonable library patron to conclude that the

8  County endorses religion by hosting it for free in its meeting rooms.  Followed to its logical

9  conclusion, all public schools and government buildings which permit community members

10  to use their facilities for limited purposes will be required to open themselves as churches,

11  synagogues and the like.  No court has ever held such an activity is permitted, let alone

12  required in a limited or designated public forum.

13  The Supreme Court has cautioned "that we keep in mind 'the myriad subtle ways in

14  which the Establishment Clause can be eroded.'" *Santa Fe Independent School Dist.* v.

15  Doe, 530 U.S. 290, 314 (2000) *citing Lynch*, 465 U.S. at 694.  Permitting religious services

16  and religious worship in limited public forums is not a subtle, but rather, a blatant way

17  which the Establishment Clause can be eroded.  Moreover, adopting a rule that would

18  foreclose the host of a limited public forum from regulating speech and activities regardless

19  of the nature of the activity, once a speaker alleges it is presenting a "religious viewpoint"

20  would elevate religion to a preferred status which the Establishment Clause will not

21  tolerate.

22  **E.**    **The County's Policy and Practice Does Not Violate the 14th**

23  **Amendment's Right to Equal Protection.**

24  The county's policy is permissible under the 14th amendment's right to equal

25  protection because the county treats all organizations the same – plaintiffs may use library

26  meeting rooms for educational, cultural or community" meetings and activities just the

27  same as any organization.  The county's policy prohibiting religious services is permissible

28

under a strict scrutiny analysis because it is required by the Establishment Clause.  The

policy is narrowly drawn because it permits religious viewpoints but, prohibits religious

worship services, which have never been held to be constitutionally required or permissible.

**II.      Plaintiffs Have Not Suffered Irreparable Harm.**

Plaintiffs state simply that they are suffering an irreparable harm because "they have

suffered the loss of First Amendment freedoms."  Plaintiffs' Motion at 14.  In fact,

Plaintiffs have not suffered irreparable harm.  As discussed above, they are not suffering

from the loss of a First Amendment freedom.  The First Amendment does not provide them

the right to hold "prayer, praise and worship" in a limited public forum.  As in *Lamb's

Chapel* and *Good News Club*, Plaintiffs are welcome to use the County library meeting

rooms to discuss viewpoints on an otherwise permissible topic from a religious viewpoint.

They have not yet applied to do so.  The Supreme Court recognizes this distinction and so

must the County.

Moreover, the Ninth Circuit has held that in order to show "irreparable injury" and

thereby obtain injunctive relief, the moving party must show "that it will be exposed to

some significant risk of irreparable injury."  *Associated Gen. Contractors of Calif. v.

Coalition for Economic Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).  "Significant risk"

means that a "plaintiff must do more than merely allege imminent harm sufficient to

establish standing, he or she must demonstrate immediate threatened injury as a

prerequisite to preliminary injunctive relief.  *Id. citing Los Angeles Memorial Coliseum

Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  Moreover, whereas

here, the injunctive relief is sought against actions by a government agency for an alleged

violation of law, "the injury or threat of injury must be both 'real and immediate' not

'conjectural or hypothetical.'"  *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 557 (9th

Cir. 1990).

Plaintiffs have alleged no facts indicating that their inability to hold religious

worship services in a County library meeting room irreparably harms them. They have made no further applications to use the library meeting rooms even though they are free to do so for discussion on permissible topics from a religious viewpoint. Moreover, there is no significant risk that, now unable to hold religious worship services they are unable to have religious worship services at all. They may hold worship services in other venues such as traditionally public forums, like parks, or venues which are privately owned.

### III. Serious Legal Questions Do Exist and the Balance of the Equities, Including the Public Interest, Weighs in Favor of the County.

Plaintiffs claim that the County will suffer "no legally cognizable harm" by requiring the County to permit religious services in its library meeting rooms. Plaintiffs' Motion at 14. Quite the opposite is true. Should the County be required to open its library meeting rooms for religious services, every limited public forum in the County (which may include but not be limited to schools, civic centers, government buildings, etc.) is then open to be used as a house of worship. This in turn, will open the County up to lawsuits alleging a violation of separation of church and state under the Establishment Clause.

The public interest weighs in favor of permitting the County to maintain its policy prohibiting religious services until this case can be fully adjudicated. The County's interest in upholding the separation of church and state and avoiding a violation of the Establishment Clause is both legally cognizable and of great public interest.

### CONCLUSION

Plaintiffs claim that their constitutional right to use County library meeting rooms is quite clear. and defendants agree that government actors must permit all speakers wishing to speak on an otherwise permissible topic to access limited and designated forums, regardless of the speaker's viewpoint. That is not, however, what this case is about. A religious worship service is fundamentally different from a discussion of a permissible topic from a religious viewpoint. For the reasons discussed above, the distinction between

religious viewpoints and religious worship services has been made by the Supreme Court and the County's policy properly follows that distinction.

Dated:   January 6, 2005

SILVANO B. MARCHESI

County Counsel


  /s/ Danielle R. Merida

Danielle R. Merida
Deputy County Counsel

J:\DMERI\Library\FCEM v. Glover\Opp to PI 13. ver.wpd