1 BENJAMIN W. BULL
Arizona State Bar No. 009940
2 JOSHUA W. CARDEN (appearing PHV)
Arizona State Bar No. 021698
3 ELIZABETH A. MURRAY (appearing PHV)
Arizona State Bar No. 022954
4 Alliance Defense Fund
5 15333 N. Pima Rd., Suite 165
Scottsdale, AZ 85260
6 Phone: (480) 444-0020
7 Fax: (480) 444-0028

8 ROBERT H. TYLER
California State Bar No. 179572
9 Alliance Defense Fund
38760 Sky Canyon Drive, Suite B
10 Murietta, CA 92563
11 Phone: (951) 461-7860
Fax: (951) 461-9056

12
TERRY L. THOMPSON
13 California State Bar No. 199870
Law Offices of Terry L. Thompson
14 P.O. Box 1346
15 Alamo, CA 94507
Phone (925) 855-1507
16 Fax: (925) 820-6034
(designated local counsel)

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FAITH CENTER CHURCH EVANGELISTIC MINISTRIES, et al., | CASE NO. C-04-3111 JSW |
| Plaintiffs, | **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| FEDERAL D. GLOVER, et al., | **Hearing Date: January 28, 2005** |
| Defendants. | **Hearing Time: 9:00 a.m.** |

Pls' Reply to Dfs' Opp. to MPI--i

**TABLE OF CONTENTS**

Table of Authorities ........................................................................................................... iii

Statement of Issue ..............................................................................................................1

Statement of Additional Facts............................................................................................1

Argument ............................................................................................................................1

I.  THERE IS NO CONSTITUTIONAL DISTINCTION BETWEEN RELIGIOUS SPEECH AND RELIGIOUS WORSHIP ...............................................................................................1

    A.  The Supreme Court Has Not Recognized a Distinction....................................1

    B.  The Ninth Circuit Has Not Recognized a Distinction........................................5

    C.  Federal Funding Statutes Are Irrelevant to This Case .......................................6

II. DEFENDANTS ARE ENGAGING IN UNCONSTITUTIONAL VIEWPOINT DISCRIMINATION .........7

III. THE ESTABLISHMENT CLAUSE IS NO DEFENSE TO DEFENDANTS' UNCONSTIUTIONAL POLICY ..................................................................................................................9

IV. DEFENDANTS' ATTEMPT TO CHARACTERIZE LIBRARY MEETING ROOMS AS A LIMITED PUBLIC FORUM FAILED .......................................................................................12

V.  EVEN IF LIBRARY MEETING ROOMS ARE A LIMITED PUBLIC FORUM, DEFENDANTS CANNOT LIMIT THE FORUM IN A MANNER THAT VIOLATES THE FREE EXERCISE CLAUSE................................................................................................................13

VI. DEFENDANTS' POLICY VIOLATES PLAINTIFFS' RIGHT TO EQUAL PROTECTION...............14

VII. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF .........................................................14

Conclusion ........................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Boyd Co. High Sch. Gay Straight Alliance v. Bd. of Educ. of Boyd County*, 258 F. Supp. 2d 667 (E.D. Ky. 2003) ................................................................................................................ 15

*Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 331 F.3d 342 (2d Cir. 2003) 11

*Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217 (9th Cir. 2003) ................................................. 15

*Campbell v. St. Tammany Parish Sch. Bd.*, No. Civ.A.98-2605., 2003 WL 21783317 (E.D. La. July 30, 2003) ........................................................................................................................ 8, 9

*Capitol Square Review and Advisory Bd. v. Pinette,* 515 U.S. 753 (1995) .............................. 2, 10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ....................... 14

*Church on the Rock v. City of Albuquerque*, 84 F.3d 1273 (10th Cir. 1996) .............................. 11

*Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135 (C.D. Cal. 2000) ................................ 15

*Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788 (1985) .................................. 14

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958 (9th Cir. 1999) ................... 13

*Employment Div., Dep't of Human Res. of Ore. v. Smith,* 494 U.S. 872 (1990) ................... 13, 14

*Everson v. Bd. of Educ.*, 330 U.S. 1 (1947) ................................................................................... 9

*Fairfax Covenant Church v. Fairfax County Sch. Bd.*, 17 F.3d 703 (4th Cir. 1994) .................... 11

*Good News Club v. Milford Cent. Sch.,* 533 U.S. 98 (2001) ........................................ 5, 9, 10, 13

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ..................................................................... 15

*Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366 (3d Cir. 1990) ............................................... 11

*Hills v. Scottsdale Unified School District*, 329 F.3d 1044 (9th Cir. 2003) .................................. 6

*K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087 (9th Cir. 1972) ........................................................ 1

*Kaplan v. County of Los Angeles*, 894 F.2d 1076 (9th Cir. 1990) .............................................. 12

*Kreisner v. City of San Diego*, 1 F.3d 775 (9th Cir. 1993) ......................................................... 13

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* 508 U.S. 384 (1993) ................... 4, 10

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ............................... 7, 12

*Prince v. Jacoby,* 303 F.3d 1074 (9th Cir. 2002) ........................................................................ 5

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) .................................. 14

*Schneider v. State*, 308 U.S. 147 (1939) ................................................................................... 15

*Serrano v. Francis*, 345 F.3d 1071 (9th Cir. 2003) ................................................................... 14

*U.S. v. Barrows*, 404 F.2d 749 (9th Cir. 1968) ......................................................................... 15

*Wallace v. Washoe County Sch. Dist*., 818 F. Supp. 1346 (D. Nev. 1991) ................................ 11

*West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1942) ............................................ 3

*Widmar v. Vincent*, 454 U.S. 263 (1981) ............................................................. 1, 2, 3, 4, 7, 8, 10

**STATEMENT OF RELIEF REQUESTED**

Plaintiffs seek to preliminarily enjoin Defendants from enforcing the "Policy for the Use of Meeting Rooms in Libraries" that expressly prohibits the use of Contra Costa County Library meeting rooms for "religious services."

**STATEMENT OF ISSUE**

Whether Defendants' policy and practice of denying access to library meeting rooms for religious services and activities is unconstitutional when Defendants, by policy, encourage educational, cultural, and community-related meetings, programs, and activities in those meeting rooms.

**STATEMENT OF ADDITIONAL FACTS**

The Statement of Facts from the Amended Verified Complaint is hereby incorporated by reference as though set forth in full, *see* Amended Verified Complaint, ¶¶ 21-81, and is properly considered by this Court as evidence in deciding this motion. *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972). While counsel for both parties stipulated that Resolution No. 93/525 is Defendants' current policy, *see* Stipulation, signed by Judge White, October 6, 2004, Defendants rescinded this policy and adopted Resolution No. 2004/655. Cain Declaration, Exhibit A. Resolution No. 2004/655 states, *inter alia*, that "[l]ibrary meeting rooms shall not be used for religious services." Cain Declaration, Exhibit A. Both versions of the policy are unconstitutional.

**ARGUMENT**

**I. THERE IS NO CONSTITUTIONAL DISTINCTION BETWEEN RELIGIOUS SPEECH AND RELIGIOUS WORSHIP**

**A. The Supreme Court Has Not Recognized a Distinction.**

The First Amendment protects religious prayer, praise, and worship to the same extent as other religious speech. *Widmar v. Vincent*, 454 U.S. 263 (1981). Plaintiffs' religious speech of prayer, praise, and worship cannot be constitutionally excluded from Defendants' library

meeting rooms, which are generally open to the public. Defendants' policy draws a constitutionally untenable distinction between religious speech, which it permits in its forum, and religious services, which it prohibits. Defendants' Opposition at 2-3, 13; Cain Declaration, ¶ 9.

The Supreme Court has repeatedly rejected the argument that the Constitution permits religious <u>speech</u>, but prohibits religious <u>worship</u>, in a forum generally open to community groups for expressive activities. The Supreme Court rejected this distinction in *Capitol Square Review and Advisory Board v. Pinette*:

> Indeed, in Anglo-American history, at least, government suppression of speech has so commonly been directed *precisely* at religious speech that a free-speech clause without religion would be *Hamlet* without the prince. Accordingly, we have not excluded from free-speech protections religious proselytizing, **or even acts of worship**.

515 U.S. 753, 760 (1995) (emphasis added) (citations omitted).

The *Pinette* Court cited with approval *Widmar*, which rejected the "religious speech v. religious worship" distinction that Defendants attempt to resurrect here. *Id*. The *Widmar* Court held that the government could not ban religious worship from a public forum for students at a state university, and stated that there was no constitutional difference between religious speech and religious worship. 454 U.S. at 269-271. In *Widmar*, the University of Missouri-Kansas City allowed student groups to meet in campus facilities, but excluded a student evangelical Christian group (Cornerstone) from meeting for a worship service on campus. *Id*. at 265. There is no doubt that the meetings at issue in *Widmar* were worship services: meetings included "prayer, hymns, Bible commentary, and discussion of religious views and experiences." *Id*. at 265 n.2. The *Widmar* Court concluded that religious worship is protected by the First Amendment:

> Here the UMKC has discriminated against student groups and speakers based on their desire to use a generally open forum to engage in **religious worship** and discussion. These are forms of speech and association protected by the First Amendment.

Pls' Reply to Dfs' Opp. to MPI--2

*Id*. at 269 (emphasis added).

The University (and the lone Supreme Court dissenter in *Widmar*) argued that the Constitution protected "religious speech" under the Free Speech Clause, but not "religious worship." *Id*. at 270 n.6. The eight justice majority rejected this argument for three reasons. First, the Supreme Court stated that there is no intelligible way to distinguish between "religious speech" and "religious worship":

> There is no indication when "singing hymns, reading scripture, and teaching biblical principles," cease to be "singing, teaching, and reading" – all apparently forms of "speech," despite their religious subject matter – and become unprotected "worship."

*Id*. (citation omitted).

The second reason the *Widmar* majority gave is that the government and courts are not competent to determine whether certain expressive activity is protected "religious speech," or less protected "religious worship." *Id*. The Court noted that it would likely violate the Establishment Clause for the government to sit as a theology board that scrutinizes each group's expression to determine whether it is forbidden "religious worship," or permitted "religious speech." *Id*. The *Widmar* Court explained:

> Second, even if the distinction drew an arguably principled line, it is highly doubtful that it would lie within the judicial competence to administer. Merely to draw the distinction would require the university – and ultimately the courts – to inquire into the significance of words and practices to different religious faiths, and in varying circumstances by the same faith. Such inquiries would tend inevitably to entangle the State with religion in a manner forbidden by our cases.

*Id*. (citations omitted). Long before *Widmar*, the Supreme Court recognized, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in . . . religion." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1942). Under Defendants' policy, the only question that a library official should consider when reviewing an application is whether the stated purpose is for an "educational,

cultural and community related" meeting, program, or activity. Cain Declaration, Exhibit A. Religious worship is unequivocally related to American culture and community, so the lawful inquiry ends there.

The third reason the *Widmar* majority gave was that there is no good reason to fully protect "religious speech," while subjugating "religious worship" to an inferior, less protected status under the Constitution:

> The dissent apparently wishes to preserve the vitality of the Establishment Clause. But it gives no reason why the Establishment Clause, or any other provision of the Constitution, would require different treatment for religious speech designed to win religious converts, than for religious worship by persons already converted. It is far from clear that the State gives greater support in the latter case than in the former.

454 U.S. at 270 n.6.

Defendants wrongly argue from *Lamb's Chapel* and *Good News Club* that equal access principles apply to religious perspectives regarding secular topics, but not to religious "worship." Defendants' Opposition at 7-8, 13. Defendants' argument is the very distinction that the Supreme Court rejected in *Widmar*, 454 U.S. at 270 n.6. Nothing within *Lamb's Chapel* or *Good News Club* may be properly understood to mandate lesser First Amendment protection for religious "worship."

Defendants rely on dicta in *Lamb's Chapel* to incorrectly argue that there is a distinction between "religious speech" and "religious worship." Defendants' Opposition at 7. In *Lamb's Chapel v. Center Moriches Union Free School District*, the Supreme Court noted that "the Church had applied for permission to use school rooms for its Sunday morning services and for Sunday School." 508 U.S. 384, 388 n.2 (1993). The Court went on to state that the "validity of this denial is not before us" because the "Church did not challenge this denial in the courts." *Id*. Defendants' use of dicta to justify a facially discriminatory policy is unpersuasive. Under *Lamb's Chapel*, Defendants' policy is unconstitutional because it bars Plaintiffs from engaging

Pls' Reply to Dfs' Opp. to MPI--4

in speech on an otherwise permissible topic (religion) because of Plaintiffs' religious viewpoint. *See* Plaintiffs' Motion for Preliminary Injunction at 2-3.

Defendants' use of *Good News Club* is to no avail. In *Good News Club v. Milford Central School*, the Supreme Court held that the school engaged in impermissible viewpoint discrimination when it excluded a children's club from its facilities because the club's activities were religious in nature. 533 U.S. 98, 107 (2001). The Good News Club's program included songs, games, a lesson, and an invitation "calling children to commit themselves in an act of Christian conversion." *Id*. at 137-38 (Souter, J., dissenting). The Supreme Court noted that it did not see a "reason to treat the Club's use of religion as something other than a viewpoint merely because of any evangelical message it conveys." *Id*. at 112 n.4. While dissenting Justice Souter described the Club's activities as "an evangelical service of worship," the Court concluded that "what matters is the substance of the Club's activities," not the label. *Id*. The substance of the Good News Club – and Faith Center – is protected religious speech.

Neither *Lamb's Chapel* nor *Good News Club* limited or overruled *Widmar*. Because *Widmar* explicitly rejected the argument that there is a distinction between religious speech and religious worship, Defendants' exclusionary policy violates the First Amendment.

**B.    The Ninth Circuit Has Not Recognized a Distinction.**

Contrary to Defendants' assertion, *see* Defendants' Opposition at 8-9, *Prince v. Jacoby* did not recognize a distinction between religious speech and religious worship. 303 F.3d 1074 (9th Cir. 2002). The *Prince* Court held that a school district must give the World Changers club equal access to the same benefits as other student clubs. *Id*. at 1094. Importantly, the court required access to meeting rooms even though the club's constitution encouraged members to evangelize the campus for Jesus Christ and conduct praise, prayer, and worship at meetings. *Id*. at 1097 n.1 (Berzon, J., dissenting).

Pls' Reply to Dfs' Opp. to MPI--5

Defendants wrongly focus on one benefit that World Changers sought – the use of the public address system. *Id*. at 1086-87. Because that forum was limited to announcements, rather than open to all speech, the court stated that its holding did not establish that the group had the "right to pray or proselytize in any manner through the school's public dissemination systems." *Id*. at 1087. This statement does not have the effect that Defendants claim. The rule would have been the same for a poetry club, for example, that could announce meetings, but not read poetry selections over the public address system.

Defendants also mistakenly use *Hills v. Scottsdale Unified School District*, 329 F.3d 1044 (9th Cir. 2003), to argue that there is a distinction between "religious speech v. worship or proselytization." Similar to *Prince*, the *Hills* Court held that the school district engaged in "impermissible viewpoint discrimination" when it excluded Hills' "summer camp brochure because it offered Bible classes from a Christian perspective." *Id*. at 1052. In *Hills*, the forum was limited to literature that promoted "events and activities of interest to students." *Id*. at 1046. The court noted that the District could "validly exclude a 'religious tract' aimed at converting students to a particular belief, <u>because the school's forum was never opened for pure discourse</u>." *Id*. at 1052.

In this case, Defendants did not limit library meeting rooms to specific topics like announcements or the promotion of events and activities. Instead, Defendants opened the forum for the broad purpose of holding "educational, cultural and community related meetings, programs, and activities." Cain Declaration, Exhibit A. Therefore, Defendants cannot rely on *Hills'* forum to suppress speech in library meeting rooms.

### C. Federal Funding Statutes Are Irrelevant to This Case.

The Supreme Court has held that providing a religious organization with equal access to an open forum is an "incidental benefit" that does not violate the Establishment Clause.

Pls' Reply to Dfs' Opp. to MPI--6

*Widmar*, 454 U.S. at 273. Defendants' reliance on statutes incorporating a prohibition on using federal funding intended for social services on "sectarian worship, instruction or proselytization" is simply inapposite. Defendants' Opposition at 9. This case is about equal access – not government funding. Defendants' argument is frivolous.

## II. DEFENDANTS ARE ENGAGING IN UNCONSTITUTIONAL VIEWPOINT DISCRIMINATION

The Supreme Court has held that viewpoint discrimination is impermissible in any forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 61-62 (1983). "Once the government permits discussion of certain subject matter, it may not impose restrictions that discriminate among viewpoints on those subjects whether a nonpublic forum is involved or not." *Id*. at 61. In this case, Defendants opened library meeting rooms to the public for "educational, cultural and community related meetings, programs, and activities." Cain Declaration, Exhibit A. Defendants permit a broad range of speech in library meeting rooms including speech by homeowners associations, Boy Scouts, Girl Scouts, the Sierra Club, Narcotics Anonymous, Moraga Historical Society, Bucks & Ducks, Inc., East Contra Costa Democratic Club, Jewish Family and Children's Services of the East Bay, Moragans for Housing Options, IPMS Plastic Modelers, and the Concord Art Association. *See* Affidavit of Robert H. Leach, Exhibits A-L. Defendants <u>admit</u> that religion, as a topic, may be discussed in library meeting rooms. Defendants' Opposition at 13.

Plaintiffs' speech clearly falls within the purpose of the forum. Participants at Faith Center's meetings discuss educational, cultural, and community issues from a religious perspective; engage in religious speech, including religious worship; and engage in discussing the Bible and other religious books, teaching, praying, singing, sharing testimonies, sharing meals, and discussing social and political issues. Amended Verified Complaint, ¶ 26. Even though the Supreme Court has held that there is <u>not</u> a distinction between religious speech and

Pls' Reply to Dfs' Opp. to MPI--7

worship, *Widmar*, 454 U.S. at 270 n.6, Defendants prohibit Plaintiffs from using public meeting rooms because Plaintiffs intended to pray, praise, and worship. Defendants' Opposition at 2-3. Defendants argue that the United States Constitution would allow Plaintiff Hattie Hopkins ("Pastor Hopkins") to enter a library meeting room and say, "Christians worship the Lord Jesus Christ." But if Pastor Hopkins changes her statement from the third person to the first person and says, "I worship the Lord Jesus Christ," Defendants argue that library officials have an affirmative duty to squelch her speech. Grammar does not dictate constitutional rights.

Even if we assume that the court should distinguish "worship" from "religious perspective," Plaintiffs must prevail. Recently, a district court considered almost identical facts to this case where a school district prohibited access to its facilities for "religious services or religious instruction," but had opened its facilities for "civic and recreational meetings . . . and other uses pertaining to the welfare of the community." *Campbell v. St. Tammany Parish Sch. Bd.*, No. Civ.A.98-2605., 2003 WL 21783317, at *1 (E.D. La. July 30, 2003). St. Tammany Parish denied the request of the Louisiana Christian Coalition to hold a prayer meeting:

> At our prayer meeting, we plan to worship the Lord in prayer and music. We also plan to discuss family and political issues, pray about those issues, and seek to engage in religious and Biblical instruction with regard to those issues.

*Id*.; *cf*. Amended Verified Complaint, ¶ 26. The Court held that the school district could not preclude the religious organization from the forum because even though the "proposed prayer meeting was 'quintessentially religious,' . . . it was not only worship; it included a discussion of family and political issues." *Id*. at *10. The Court noted the format of religious services:

> It is difficult to imagine any religious service, no matter how traditional or nontraditional that does not include sermons, homilies or lessons directed at moral and ethical conduct or how one should live one's life.

Pls' Reply to Dfs' Opp. to MPI--8

*Id*. at *9. The *St. Tammany* Court noted the *Widmar* discussion of not distinguishing between "religious speech v. worship":

> By effectively including religious worship as protected viewpoint speech, the Supreme Court does avoid the admittedly difficult problems of distinguishing worship from other types of religious speech and the propriety of a government agent making those distinctions.

*Id*. at *9 n.15.

Defendants' policies have targeted religious speech since at least 1992. First, Defendants' Resolution No. 92/793 went so far as to state that "[l]ibrary meeting rooms shall not be used for religious purposes." Verified Complaint, Exhibit C. Next, Defendants' Resolution No. 93/525 forbade the use of library meeting rooms for "religious services or activities." Amended Verified Complaint, Exhibit E. Last, Defendants' Resolution No. 2004/655 prohibits library meeting rooms from being used for "religious services." Cain Declaration, Exhibit A. This consistent second-class treatment of religious speech is a blatant violation of Plaintiffs' civil rights.

*St. Tammany* illustrates that even parsing the activities of a religious organization to determine what is "worship" and what is not is no basis for discrimination. Yet Defendants do just that and now argue that a portion of Plaintiffs' activities *may* have been permissible. Defendants' Opposition at 13 n.4. The Constitution does not require – or even permit – this treatment. At the least, Plaintiffs merit equal access to library meeting rooms because "the proposed meeting was not 'mere religious worship,' but included a component within the permissible scope of the . . . forum." *St. Tammany Parish Sch. Bd.*, 2003 WL 21783317, at *9.

### III. THE ESTABLISHMENT CLAUSE IS NO DEFENSE TO DEFENDANTS' UNCONSTITUTIONAL POLICY

The Establishment Clause "requires the state to be a neutral in its relations with groups of religious believers and non-believers." *Everson v. Bd. of Educ.*, 330 U.S. 1, 18 (1947). The Supreme Court has repeatedly rejected the argument that the Establishment Clause requires the government to exclude a religious group from a public forum. *Good News Club,* 533 U.S. at

113; *Lamb's Chapel*, 508 U.S. at 395; *Widmar*, 454 U.S. at 271. In fact, the Supreme Court has held that it "defies logic" to argue that granting access to a Christian group in a public forum "would do damage to the neutrality principle." *Good News Club*, 533 U.S. at 114. Ignoring the "fluorescent flare" of precedent in the road, Defendants blithely claim that the Establishment Clause mandates their policy. Defendants' Opposition at 2.

Defendants argue that they are justified in excluding Plaintiffs' speech to prevent the "perception that the County is endorsing those religious services, particularly since the space for those services is provided to plaintiffs for free." Defendants' Opposition at 12. But compare Defendants' far-fetched notion of what a "reasonable observer" is with what the Supreme Court told us in *Good News Club*:

> We decline to employ Establishment Clause jurisprudence using a modified heckler's veto, in which a group's religious activity can be proscribed on the basis of what the youngest members of the audience might misperceive. . . . "[T]he endorsement inquiry is *not about the perceptions of particular individuals* or saving isolated nonadherents from . . . discomfort. . . . It is for this reason that the reasonable observer in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious [speech takes place]."

533 U.S. at 119 (quoting *Pinette*, 515 U.S. at 779-80) (O'Connor, J., concurring in part and concurring in judgment)).

In this case, library patrons are deemed aware that library meeting rooms are open to the general public "for educational, cultural and community related meetings, programs, and activities." Cain Declaration, Exhibit A. Moreover, library patrons are charged with the knowledge that library meeting rooms are "free of charge for meetings that are open to the general public, for which no admission fee is charged, <u>and</u> at which no soliciting or selling is done." *Id*. What the truly reasonable observer would conclude if they ever heard "prayer,

praise, and worship" was that a community group was using a library meeting room for its own purposes.¹

Defendants outrageously argue that allowing Plaintiffs to have equal access to library meeting rooms will somehow open "all public schools and government buildings" to "churches, synagogues and the like." Defendants' Opposition at 17. This is nonsense. First, in almost every case, the government as landlord is free to decide whether to grant public access to meeting rooms. Second, any determination that Defendants must cease discriminating is not a "magic key" to compel other governmental entities to initiate public access programs.

Defendants' claim that no court has ever required the government to allow churches or synagogues to meet in facilities that the government opened for community use is patently false. Defendants' Opposition at 17. Appellate and district courts have repeatedly upheld the right of churches to access public facilities. *See, e.g.*, *Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 331 F.3d 342, 345 (2d Cir. 2003) (affirming preliminary injunction enjoining school district from denying church's application to rent public school building for Sunday worship services); *Church on the Rock v. City of Albuquerque*, 84 F.3d 1273, 1281 (10th Cir. 1996) (City violated First Amendment when it prohibited sectarian instruction and religious worship at its Senior Centers); *Fairfax Covenant Church v. Fairfax County Sch. Bd.*, 17 F.3d 703 (4th Cir. 1994) (public school board may not charge churches higher rental rate to engage in religious worship in school facilities than it charges non-religious community groups); *Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1382 (3d Cir. 1990) (affirming permanent injunction enjoining school district from refusing to rent public school facilities for religious services); *Wallace v. Washoe County Sch. Dist.*, 818 F. Supp. 1346, 1352 (D. Nev. 1991) (school district

---

¹ Plaintiffs were not excluded from library meeting rooms due to noise concerns. Amended Complaint, ¶ 54. Such concerns may be regulated through time, place, and manner restrictions.

Pls' Reply to Dfs' Opp. to MPI--11

may not prohibit a church from meeting in school for Sunday morning worship services where school is generally open for use by community groups).

## IV. DEFENDANTS' ATTEMPT TO CHARACTERIZE LIBRARY MEETING ROOMS AS A LIMITED PUBLIC FORUM FAILED

If Defendants have attempted to establish a limited public forum, they have not done so in the proper way. In order to create a limited public forum, the government must limit the forum to a clear category of *groups* or a clear category of *subject matter*. For example, a forum could be limited to student groups or limited to the topic of school board business. *Perry*, 460 U.S. at 45 n.7. The crucial characteristics of a limited public forum is that it is limited and specific; a limited public forum excludes most speakers and/or excludes the discussion of most topics.

The Ninth Circuit provided a clear example of a limited public forum in *Kaplan v. County of Los Angeles*, 894 F.2d 1076 (9th Cir. 1990). The *Kaplan* Court held that California voters' pamphlets were a limited public forum because "California created the pamphlets for the specific purpose of allowing a limited class of speakers, the candidates, to address a particular class of topics, statements concerning the personal background and qualifications of each candidate." *Id*. at 1080. This principle can be easily applied to a forum such as a meeting room where candidates are invited to speak about their personal background and qualifications. In either case, the forum is limited and specific.

In sharp contrast, Defendants' policy has virtually no limitation on who may speak and which topics may be discussed (except the prohibition on religious services). Defendants expressly opened their library meeting rooms to "[n]on-profit and civic organizations, for-profit organizations, schools and governmental organizations" for "educational, cultural and community related meetings, programs, and activities." Cain Declaration, Exhibit A. A forum that allows all speakers and the discussion of most topics cannot by definition be a "limited

Pls' Reply to Dfs' Opp. to MPI--12

public forum." Instead, Defendants created a designated public forum by opening library meeting rooms for use by the public for expressive activity.[2] *See* Plaintiffs' Motion for Preliminary Injunction at 4-6.

## V. EVEN IF LIBRARY MEETING ROOMS ARE A LIMITED PUBLIC FORUM, DEFENDANTS CANNOT LIMIT THE FORUM IN A MANNER THAT VIOLATES THE FREE EXERCISE CLAUSE

Whatever the parameters on the government's power to limit access to a forum, Defendants cannot limit the forum in a way that expressly violates the Free Exercise Clause. Even if this Court finds that library meeting rooms are a limited public forum, Defendants' "power to restrict speech . . . is not without limits." *Good News Club*, 533 U.S. at 106. "The restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be 'reasonable in light of the purpose served by the forum.'" *Id*. at 106-107 (citations omitted). It is blatantly unreasonable for the government to deny access to the forum based on religion – a standard that the Supreme Court has ruled expressly violates the Free Exercise Clause.

In *Employment Division, Department of Human Resources of Oregon v. Smith*, the Supreme Court held that government actions violate the Free Exercise Clause if they "impose special disabilities on the basis of religious views or religious status." 494 U.S. 872, 877 (1990). The Supreme Court has emphasized the importance of facial neutrality in government policy:

> To determine the object of a law, we must begin with its text, **for the minimum requirement of neutrality is that a law not discriminate on its face**. A law

---

[2] Restrictions on expressive speech in both traditional and designated public fora are permissible only if narrowly drawn to achieve a compelling state interest. *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 964-65 (9th Cir. 1999); *see also Kreisner v. City of San Diego*, 1 F.3d 775 (9th Cir. 1993) (exclusion of "religious groups from a forum otherwise open to all would demonstrate government hostility to religion rather than neutrality contemplated by the Establishment Clause").

Pls' Reply to Dfs' Opp. to MPI--13

lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context.

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) (emphasis added). The Supreme Court has held that content-based classifications must be "strictly scrutinize[d]." *Smith*, 494 U.S. at 886 n.3. This means that the classification must be narrowly drawn to serve a compelling state interest. *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985).

Defendants' policy expressly prohibits use for "religious services." Cain Declaration, Exhibit A. Defendants' power to decide who may access library meeting rooms must be construed in a way that is consistent with the Free Exercise Clause. Defendants violate the Free Exercise Clause by using religion-specific standards to exclude Plaintiffs from library meeting rooms without a compelling interest. Therefore, Defendants err in asking this Court to uphold a policy under the Free Speech Clause that clearly violates the Free Exercise Clause.

## VI. DEFENDANTS' POLICY VIOLATES PLAINTIFFS' RIGHT TO EQUAL PROTECTION

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons equally. *Serrano v. Francis*, 345 F.3d 1071, 1081 (9th Cir. 2003). After opening library meeting rooms to a broad spectrum of the public, *see* Affidavit of Robert H. Leach, Exhibits A-L, Defendants treat Plaintiffs differently by excluding them from the forum based on the content and viewpoint of Plaintiffs' speech. Defendants' Opposition at 2-3. This is a blatant violation of Plaintiffs' right to equal protection.

## VII. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

Injunctive relief is proper where the government has caused irreparable harm by impermissibly restricting access to government buildings. *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) (access to county courthouse by bikers); *Colin v.*

Pls' Reply to Dfs' Opp. to MPI--14

*Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135 (C.D. Cal. 2000) (access to school facilities by student gay rights group); *Boyd County High Sch. Gay Straight Alliance v. Bd. of Educ. of Boyd County*, 258 F. Supp. 2d 667 (E.D. Ky. 2003) (same). In addition, the Supreme Court has held that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Grayned v. City of Rockford*, 408 U.S. 104, 119 n.40 (1972) (citing *Schneider v. State*, 308 U.S. 147, 163 (1939)). Plaintiffs do not have to locate a park to engage in religious speech because this is Defendants' preferred location for them. Defendants' Opposition at 19. Due to the important constitutional rights at stake, it is entirely appropriate for this Court to alter the *status quo* to protect Plaintiffs from further irreparable harm. *See Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217 (9th Cir. 2003) (*status quo* altered where plaintiffs' First Amendment rights were violated); *U.S. v. Barrows*, 404 F.2d 749, 752 (9th Cir. 1968) (threat of irreparable harm justified altering *status quo*).

## CONCLUSION

Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction is grossly inadequate to explain or justify their facially discriminatory policy. Supreme Court precedent rejects the very arguments that Defendants raise in defense of their policy. In spite of this, Defendants go so far as to claim that the Constitution <u>mandates</u> their discriminatory policy. Therefore, Plaintiffs respectfully request that this Court grant their Motion for Preliminary Injunction.

By:   /s/ Elizabeth A. Murray
       Attorney for Plaintiffs