| | |
|---|---|
| 1 | BENJAMIN W. BULL |
| | Arizona State Bar No. 009940 |
| 2 | GARY S. McCALEB (PHV) |
| 3 | Arizona State Bar No. 018848 |
| | ELIZABETH A. MURRAY (PHV) |
| 4 | Arizona State Bar No. 022954 |
| | Alliance Defense Fund Law Center |
| 5 | 15333 N. Pima Rd., Suite 165 |
| | Scottsdale, AZ 85260 |
| 6 | Phone: (480) 444-0020 |
| 7 | Fax: (480) 444-0028 |
| 8 | ROBERT H. TYLER |
| | California State Bar No. 179572 |
| 9 | Alliance Defense Fund Law Center |
| | 38760 Sky Canyon Drive, Suite B |
| 10 | Murietta, CA 92563 |
| 11 | Phone: (951) 461-7860 |
| | Fax: (951) 461-9056 |
| 12 | |
| 13 | TERRY L. THOMPSON |
| | California State Bar No. 199870 |
| 14 | Law Offices of Terry L. Thompson |
| | P.O. Box 1346 |
| 15 | Alamo, CA 94507 |
| | Phone (925) 855-1507 |
| 16 | Fax: (925) 820-6034 |
| 17 | (designated local counsel) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| FAITH CENTER CHURCH EVANGELISTIC MINISTRIES, et al., | CASE NO. C-04-3111 JSW |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO NOTICE OF TENTATIVE RULING ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| FEDERAL D. GLOVER, et al., | |
| Defendants. | |

Pls' Resp. to Notice of Tentative Ruling – i
Case No. C-04-3111 JSW

**TABLE OF CONTENTS**

Table of Authorities ............................................................................................................. iii

Response to Tentative Ruling, Question No. 1: Plaintiffs' Conduct is Properly Classified as Religious Speech............................................................................................................1

Response to Tentative Ruling, Question No. 2: Library Meeting Rooms are Properly Classified as a Designated Public Forum.....................................................................................5

Response to Tentative Ruling, Question No. 3: Defendants' Policy Results in Unbridled Discretion....................................................................................................................10

Response to Tentative Ruling, Question No. 4: Injunctive Relief May Be Granted to Fully Respect the Establishment Clause ...........................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of the City of Chicago*, 45 F.3d 1144 (7th Cir. 1995) .................................................................................................................... 5

*Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 331 F.3d 342 (2d Cir. 2003) .................................................................................................................... 2, 3

*Campbell v. St. Tammany Parish Sch. Bd.*, No. Civ.A.98-2605, 2003 WL 21783317 (E.D. La. July 30, 2003) ................................................................................................ 2, 3, 4

*Chess v. Widmar*, 635 F.2d 1310 (8th Cir. 1980) ................................................................ 1

*Cinevision Corp. v. City of Burbank*, 745 F.2d 560 (9th Cir. 1984) ............................. 7, 9, 10, 11

*Concerned Women for Am., Inc. v. Lafayette County*, 883 F.2d 32 (5th Cir. 1989) ..... 5, 6, 7, 8, 10

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788 (1985) ..................... 5

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958 (9th Cir. 1999) ....... 9

*Good News Club v. Milford Central School*, 533 U.S. 98 (2001) ............................... 2, 11

*Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366 (3d Cir. 1990) ................................ 8, 9

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044 (9th Cir. 2003) .......................... 6

*Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242 (3d Cir. 1992) ......... 5, 6

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) ....... 11

*Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585 (6th Cir. 2003) ....... 6

*New York Magazine v. Metro. Transp. Auth.*, 136 F.3d 123 (2d Cir. 1998) .................. 8

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ................... 4, 6, 9

*Pfeifer v. City of West Allis*, 91 F. Supp. 2d 1253 (E.D. Wis. 2000) ........................ 5, 6, 7, 8

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995) ............... 11

*Southeastern Promotions, Ltd., v. Conrad*, 420 U.S. 546 (1975) ................................. 7

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) ............................ 9

*Widmar v. Vincent*, 454 U.S. 263 (1981) .................................................................. 1, 2, 11

Defendants would ask this Court to impose a crucial, constitutional distinction between religious speech and "prayer, praise, and worship." But the Supreme Court has held that there is no intelligible distinction between religious speech and religious worship. *Widmar v. Vincent*, 454 U.S. 263, 270 n.6 (1981). The Court emphatically stated that the distinction "lacks a foundation in either the Constitution or in our cases" and is "judicially unmanageable." *Id*. at 276 n.9.

The *Widmar* Court concluded that the government could not prohibit the use of University facilities for religious worship and teaching after opening a forum for "political, cultural, educational, social and recreational events." *Id*. at 277; *Chess v. Widmar*, 635 F.2d 1310, 1312 (8th Cir. 1980). The policy at issue in *Widmar* is very similar to Defendants' policy, which opens "library meeting rooms for educational, cultural and community related meetings, programs, and activities." Cain Declaration, Exhibit A. Like the University in *Widmar*, Defendants' attempt to parse religious speech is unconstitutional. The real conundrum in this case is posed by Defendants' argument that the United States Constitution would allow Plaintiff Hattie Hopkins ("Pastor Hopkins") to say, "Christians worship the Lord Jesus Christ," in a community room if she meant it analytically, but the same phrase would be (in Defendants' view) unconstitutional if said as exhortation. Such is not the law.

### Response to Tentative Ruling, Question No. 1
### Plaintiffs' Conduct is Properly Classified as Religious Speech

This court should evaluate the expressive activity involved in this case, not merely the label assigned to the speech by Defendants. In *Widmar*, the Supreme Court looked behind the labels of "religious worship and religious teaching," which were prohibited by the University's facility use policy, and concluded that the expressive activities could not be prohibited:

> There is no indication when "singing hymns, reading scripture, and teaching biblical principles," cease to be "singing, teaching, and reading" – all apparently forms of "speech," despite their religious subject matter – and become unprotected "worship."

454 U.S at 270 n.6 (citation omitted); *see also Good News Club v. Milford Central School*, 533 U.S. 98, 112 n.4 (2001). Activities that are "quintessentially religious" or "decidedly religious in nature" are also "characterized properly as the teaching of morals and character development from a particular viewpoint." *Good News Club*, 533 U.S. at 111. In *Good News Club*, the Court held that the school could not prohibit the Club's First Amendment activities of songs, games, a lesson, and an invitation "calling children to commit themselves in an act of Christian conversion." *Id*. at 111-12, 137-38 (Souter, J., dissenting). Again, the Court refused to distinguish "religious worship" from "religious speech" because these activities are inextricably linked. *Id*. at 112 n.4.

Federal courts have repeatedly ruled against governmental efforts to enforce content-based restrictions that prohibit religious instruction, worship, and services. *See, e.g., Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 331 F.3d 342 (2d Cir. 2003); *Campbell v. St. Tammany Parish Sch. Bd.*, No. Civ.A.98-2605, 2003 WL 21783317 (E.D. La. July 30, 2003).[1] In *Bronx Household of Faith*, the Second Circuit affirmed a preliminary injunction against an Education Board that opened school facilities for "social, civic and recreational meetings and entertainment, and other uses pertaining to the welfare of the community," yet prohibited use for "religious services or religious instruction." 331 F.3d at 348.

---

[1] This Court noted on page 2 of its Tentative Ruling that *Bronx Household of Faith* and *Campbell* are factually different than this case because "[t]here the plaintiffs sought to use public schools after hours," whereas, "Plaintiffs seek to use a public library meeting room during normal library hours." This distinction favors Plaintiffs and demonstrates the compatibility of library meeting rooms for expressive activity. Defendants' approval of an application to use a library meeting room indicates that the room is unoccupied and available during the time slot selected by the applicant. In the public school environment, classrooms and auditoriums are often occupied by students and used for school purposes during school hours, so these facilities may not be compatible with expressive activity until after hours.

Such "services" included "singing of Christian hymns and songs, prayer, fellowship with other church members and Biblical preaching and teaching, communion, sharing of testimonies and social fellowship among the church members." *Id*. at 347. The Court looked to the substance of the proposed religious activities, rather than the label assigned by the government, and concluded that what the church "proposed for their Sunday meetings are not simply religious worship, divorced from any teaching of moral values or other activities permitted in the forum." *Id*. at 354.

Similarly, in *Campbell v. St. Tammany Parish School Board*, a district court held that a school board engaged in unconstitutional viewpoint discrimination by opening school facilities for "civic and recreational meetings . . . and other uses pertaining to the welfare of the community," yet prohibiting access for "religious services or religious instruction." 2003 WL 21783317, at *1. St. Tammany Parish denied the request of the Louisiana Christian Coalition to hold a prayer meeting where they planned "to worship the Lord in prayer and music[,] . . . discuss family and political issues, pray about those issues, and seek to engage in religious and Biblical instruction with regard to those issues." *Id*. The Court held that the school board could not preclude the religious organization from the forum because even though the "proposed prayer meeting was 'quintessentially religious,' . . . it was not only worship; it included a discussion of family and political issues." *Id*. at *10. The Court noted the format of religious services:

> It is difficult to imagine any religious service, no matter how traditional or nontraditional that does not include sermons, homilies or lessons directed at moral and ethical conduct or how one should live one's life.

*Id*. at *9. The *Campbell* Court noted the *Widmar* discussion of not distinguishing between "religious speech" and "religious worship":

PLS' RESP. TO NOTICE OF TENTATIVE RULING – 3
CASE NO. C-04-3111 JSW

> By effectively including religious worship as protected viewpoint speech, the Supreme Court does avoid the admittedly difficult problems of distinguishing worship from other types of religious speech and the propriety of a government agent making those distinctions.

*Id*. at *9 n.15.

In this case, assuming that there is some form of religious speech that is 100% "worship" devoid of all secular content, Plaintiffs' religious speech is scarcely "mere worship" or absent any other expressive dimension. Rather, participants at Faith Center's meetings discuss educational, cultural, and community issues from a religious perspective; engage in religious speech, including religious worship; and engage in discussing the Bible and other religious books, teaching, praying, singing, sharing testimonies, sharing meals, and discussing social and political issues. Amended Verified Complaint, ¶ 26.

That speech may be called a "religious service" does not justify express state discrimination against "praise, prayer, and worship" in a community meeting room. In this Court's Tentative Ruling, this Court correctly noted that "Defendants' conduct in restricting Plaintiffs' access to the Library meeting room restricted Plaintiffs' speech based upon its viewpoint." *See also* Plaintiffs' Motion for Preliminary Injunction at 1-3. As the Supreme Court has explained, "Once the government permits discussion of certain subject matter, it may not impose restrictions that discriminate among viewpoints on those subjects whether a nonpublic forum is involved or not." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 61 (1983).

In this case, Defendants opened library meeting rooms for "educational, cultural and community related meetings, programs, and activities." Cain Declaration, Exhibit A. Defendants admit that religion, as a topic, may be discussed in library meeting rooms.

Defendants' Opposition Brief at 13.[2] Under Defendants' policy, library meeting rooms may be used for singing songs, moral teaching, discussion, and many other expressive activities. Yet Defendants avoid their duty to provide equal access to Plaintiffs by labeling Plaintiffs' religious speech of prayer, praise, and worship as a "religious service." "Religious speech" is "educational, cultural and community related," so it is encompassed by the purpose of Defendants' forum. Therefore, Defendants' exclusion of Plaintiffs' religious speech is unconstitutional viewpoint discrimination that is impermissible in *any* forum.

**Response to Tentative Ruling, Question No. 2**
**Library Meeting Rooms are Properly Classified as a Designated Public Forum**

At the start of forum analysis, it is important to correctly identify the relevant forum, that is, the specific area to which the potential speaker seeks access. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985). Thus, the relevant forum may not be an entire school, library, or other government building, but, rather, some subdivision of the facility, such as an auditorium, meeting room, or display case. *See, e.g, Concerned Women for Am., Inc. v. Lafayette County*, 883 F.2d 32, 34-35 (5th Cir. 1989) (library auditorium is relevant forum); *Pfeifer v. City of West Allis*, 91 F. Supp. 2d 1253, 1261-62 (E.D. Wis. 2000) (library meeting room is relevant forum); *Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of the City of Chicago*, 45 F.3d 1144, 1152 (7th Cir. 1995) (display case is relevant forum). Here, Plaintiffs seek access to Defendants' library meeting rooms – not the areas of the Library that may be reserved for "reading, studying, [and] using the Library materials." *Kreimer v. Bureau of Police for the Town of Morristown*, 958 F.2d 1242, 1260-62 (3d Cir. 1992). Consequently, the relevant forum in this case is the library meeting rooms, which are far more compatible with speech activity than are the "quiet" reading areas of the library.

---

[2] "Defendants' Opposition Brief" refers to Defendants' Opposition to Motion for Preliminary Injunction.

PLS' RESP. TO NOTICE OF TENTATIVE RULING – 5
CASE NO. C-04-3111 JSW

Of course, the government landlord may preserve a library as a place of "reading, writing, and quiet contemplation." *See Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 591 (6th Cir. 2003). Thus, when considering access to a library as a whole, courts often label libraries as limited public fora. *Neinast*, 346 F.3d at 591 (library is a limited public forum as a place for "reading, writing, and quiet contemplation"); *Kreimer*, 958 F.2d at 1260-62 (library is a limited public forum because it is "open to the public only for specified purposes: reading, studying, using the Library materials").

However, when the government landlord opens a community room for public meetings, courts have held that such areas of the library are designated public fora. *See Concerned Women for Am., Inc.*, 883 F.2d at 34-35 (library created a designated public forum "by allowing diverse groups to use its auditorium"); *Pfeifer*, 91 F. Supp. 2d at 1263-66 (library created a designated public forum by opening its meeting room to a "large number of diverse groups"). This distinction is significant because content-based restrictions in a designated public forum are subject to the exacting strict scrutiny test.[3] *Perry Educ. Ass'n,* 460 U.S. at 45-46.

A designated public forum is "public property which the state has opened for use by the public as a place for expressive activity." *Id*. at 45. "In considering whether a designated public forum has been created," the Ninth Circuit looks to "the policy and practice of the government, the nature of the property and its compatibility with expressive activity and whether the forum was designed and dedicated to expressive activities." *Hills v. Scottsdale Unified Sch. Dist*., 329 F.3d 1044, 1049 (9th Cir. 2003). A limited public forum is created when the government "intentionally open[s] a nonpublic forum to certain groups or topics." *Id.*

---

[3] Under strict scrutiny, a content-based restriction will not survive unless the state demonstrates that the restriction is narrowly tailored to achieve a compelling governmental interest. *Perry Educ. Ass'n*, 460 U.S. at 45-46.

The crucial characteristic of a "designated public forum" is that its purpose is very broad and inclusive, whereas, a "limited public forum" is very limited and specific in its purpose. For example, if a municipality opens a theater for the broad purpose of community entertainment, the municipality has created a designated public forum. *See, e.g., Southeastern Promotions, Ltd., v. Conrad*, 420 U.S. 546, 555 (1975). On the other hand, if a municipality dedicates the "theater to the production of Shakespeare's works or the performance of plays intended for children," the municipality likely created a limited public forum. *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 573-74 (9th Cir. 1984).

In this case, Defendants might point to areas within the Library that are reserved for reading, studying, and using Library materials. Plaintiffs are not seeking to engage in religious speech in those areas. Instead, Plaintiffs seek access to Defendants' library meeting rooms that were expressly opened for "educational, cultural and community related meetings, programs, and activities." Cain Declaration, Exhibit A. Indeed, Defendants have permitted a broad range of speech in library meeting rooms, including homeowners associations, Boy Scouts, Girl Scouts, the Sierra Club, Narcotics Anonymous, Moraga Historical Society, Bucks & Ducks, Inc., East Contra Costa Democratic Club, Jewish Family and Children's Services of the East Bay, Moragans for Housing Options, IPMS Plastic Modelers, and the Concord Art Association. *See* Affidavit of Robert H. Leach, Exhibits A-L.

Such a broad purpose evidences Defendants' intent to designate a public forum, subject to the exacting strict scrutiny test. *See, e.g., Concerned Women for Am., Inc.,* 883 F.2d at 34-35; *Pfeifer*, 91 F. Supp. 2d at 1259. The long list of permitted users directly contradicts Defendants' claim that the library is not "open for indiscriminate use." Defendants' Opposition Brief at 5. In

addition, the list of permitted users demonstrates that Defendants' library meeting rooms are compatible with expressive activity.

Defendants argue that the library meeting rooms are a limited public forum even though the meeting rooms are generally open to the community. Defendants' Opposition Brief at 4-6. Federal courts have rejected the argument that placing a narrow exclusion – like Defendants' religious services prohibition – in an otherwise broad policy converts a designated public forum into a limited or non-public forum. *See Concerned Women for Am., Inc.*, 883 F.2d at 34-35; *Pfeifer*, 91 F. Supp. 2d at 1263-67; *New York Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 129-30 (2d Cir. 1998). In *Pfeifer*, the court stated that a library's facility use policy that unconstitutionally excluded "religious services or instructions" did not affect the library meeting room's status as a designated public forum. 91 F. Supp. 2d at 1265-66. The Third Circuit explained that a contrary rule would "sound[] the death knell for the designated open forum," and the government could:

> upon the most tenuous and internally inconsistent grounds, pick and choose those to whom it grants access for purposes of expressive activity simply by framing its access policy to carve out even minute slices of speech which, for one reason or another, it finds objectionable.

*Gregoire v. Centennial Sch. Dist.*, 907 F.2d 1366, 1378 (3d Cir. 1990). *New York Magazine* confirms this by teaching us that:

> [I]t cannot be true that if the government excludes any category of speech from a forum through a rule or standard, that forum becomes ipso facto a non-public forum, such that we would examine the exclusion of the category only for reasonableness. This reasoning would allow every designated public forum to be converted into a non-public forum the moment the government did what is supposed to be impermissible in a designated public forum, which is to exclude speech based on content.

136 F.3d at 129-30.

Thus, Defendants' unconstitutional exclusion of use for "religious services" does not convert the library meeting rooms into a limited public forum. Having opened their meeting rooms for "educational, cultural and community related meetings, programs, and activities," Defendants cannot now "pick and choose" to whom they will grant access for free speech "simply by framing [their] access policy to carve out even minute slices of speech which, for one reason or another, [they] find[] objectionable." *Gregoire*, 907 F.2d at 1378. Defendants' exclusion of "religious services" from their broad facility use policy does not alter the status of the meeting rooms as a designated public forum.

On page 2 of this Court's Tentative Ruling, this Court noted that it "cannot ignore that the Library may have legitimate reasons for wishing to exclude "religious services." Concerns about the suitability of expressive activity in a forum must be addressed by content-neutral restrictions. Because Defendants' meeting rooms are a designated public forum, ***content-based*** restrictions on expressive speech are permissible only if narrowly tailored to achieve a compelling state interest. *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 964-65 (9th Cir. 1999). "General fear . . . cannot justify a content-based restriction on expression." *Cinevision Corp.*, 745 F.2d at 572. "[I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." *Id.* (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969)). Instead, general fears or apprehension concerning expressive activity should be addressed by enforcing "regulations of the time, place, and manner of expression which are ***content-neutral***, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n*, 460 U.S. at 45 (emphasis added).

In *Concerned Women for America* ("CWA"), the Fifth Circuit upheld an injunction against a library because it enforced a religious, content-based restriction against an organization. 883 F.2d at 35. The library did not have a compelling governmental interest to justify its discrimination. *Id*. Indeed, there was "no evidence that CWA's meeting would disrupt or interfere with the general use of the library." *Id*. The court continued, "[s]hould the contrary prove to be true, library officials may respond by imposing reasonable time, place or manner restrictions on access to the auditorium, provided any regulations are justified without reference to the content of the regulated speech." *Id*.

Similarly, in this case, Defendants do not have a compelling interest to justify excluding Plaintiffs from library meeting rooms because of the religious content of their speech. *See* Plaintiffs' Reply to Defendants' Opposition at 9-12.[4] If a boisterous meeting discomforts those in the quiet reading areas of the library, the proper response is to enforce a content-neutral noise regulation – not investigate whether the speech is permissible "religious viewpoint" or "impermissible" "mere worship."

### Response to Tentative Ruling, Question No. 3
### Defendants' Policy Results in Unbridled Discretion

Defendants' failure to define a "religious service" in their policy raises a vagueness warning flag, but the greater defect is the unbridled discretion that the policy thrusts upon library officials. The Ninth Circuit has rejected the argument that the First Amendment permits subjective exclusions from a public forum. *Cinevision Corp.*, 745 F.2d at 575. In *Cinevision Corp.*, the Ninth Circuit stated that exclusions in a forum should be objective and precise:

> [T]he more subjective the standard used, the more likely that the category will not meet the requirements of the first amendment; for, when guided only by

---

[4] "Plaintiffs' Reply to Defendants' Opposition" refers to Plaintiffs' Reply to Defendants' Opposition to Motion for Preliminary Injunction.

PLS' RESP. TO NOTICE OF TENTATIVE RULING – 10
CASE NO. C-04-3111 JSW

> subjective, amorphous standards, government officials retain the unbridled discretion over expression that is condemned by the first amendment.

745 F.2d at 575.

While the term "religious service" has some intuitive meaning in the First Amendment context, the term is subjective and amorphous. Under Defendants' policy, does a secular community meeting become a "religious service" if a prayer is offered? If the song "God Bless America" is sung? Or, if a donation is taken for a religious purpose? Defendants' policy leaves these questions to the unbridled discretion of library officials.

Defendants' "religious service" exclusion is also unmanageable because, as the Supreme Court explained in *Widmar*, there is no intelligible distinction between "religious worship" and "religious speech." 454 U.S. at 270 n.6. "Religious services" contain "religious speech," and "religious speech" sometimes includes "religious worship." Clearly, it is not possible to separate a religious service from the religious speech that it contains.

**Response to Tentative Ruling, Question No. 4**
**Injunctive Relief May Be Granted to Fully Respect the Establishment Clause**

This Court may fashion injunctive relief in a manner that fully respects the Establishment Clause. The Establishment Clause does not require the government to exclude a religious group from a public forum. *Good News Club*, 533 U.S. at 98, 112-13 (Establishment Clause does not justify facility use exclusion for religious purposes, including worship); *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 395 (1993) (same); *Widmar*, 454 U.S. at 273 (same). Instead, the Supreme Court has consistently stated that government scrutiny of speech based on its religious content risks Establishment Clause violations due to hostility and entanglement problems. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 845-46 (1995). Because a religious service cannot be separated from its makeup of religious

speech, injunctive relief could not be drawn to distinguish these activities without violating the Establishment Clause. Put another way, the government does not indorse what it fails to censor. In this light, the "conundrum" before the Court is illusory and reflects only Defendants' baseless fears, not the First Amendment's substance. Defendants need not parse religious speech for "impermissible worship" if they cleave to the constitutional mandate of equal access. Therefore, injunctive relief should be granted to enjoin Defendants from enforcing their policy that prohibits the use of library meeting rooms for "religious services."

By:    /s/ Elizabeth A. Murray
       Attorney for Plaintiffs