1  SILVANO B. MARCHESI, County Counsel (State Bar No. 42965)
   e-mail: smarc@cc.cccounty.us
2  KELLY M. FLANAGAN, Deputy County Counsel (State Bar No. 145018)
   e-mail: kflan@cc.cccounty.us
3  DANIELLE R. MERIDA, Deputy County Counsel (State Bar No. 217465)
   e-mail: dmeri@cc.cccounty.us
4  COUNTY OF CONTRA COSTA
   651 Pine Street, 9th Floor
5  Martinez, California 94553-1288
   Telephone:  (925) 335-1800
6  Facsimile:  (925) 646-1078

7  Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAITH CENTER CHURCH EVANGELISTIC MINISTRIES, a California nonprofit religious corporation, and HATTIE HOPKINS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL GLOVER, et al.<br><br>Defendants. | Civil Action No. C 04-3111 JSW<br><br>**DEFENDANTS SUPPLEMENTAL BRIEFING IN OPPOSITION TO PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: May 13, 2005<br>Hearing Time: 9:00 a.m.<br>Courtroom 2 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. A Library Meeting Room Open For Use During Normal Operating Hours Is A Limited Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. Prayer, Praise and Worship Is Mere Religious Worship, Which Is Properly Excluded From The Countys Limited Forum . . . . . . . . 6

    C. The Library s Prohibition On Religious Services Is Not too Vague To Be Enforced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D. The Appropriate Scope Of An Injunction Permits Religious Activities And Allows the County To Maintain The Current Prohibition On Religious Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**CASES** Page

*Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342
(2nd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 6, 7

*California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141
(9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Campbell v. St. Tammany Parish Sch. Bd.*, 2003 U.S. Dist. LEXIS 13559
(E.D. La. July 30, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 4, 5, 6, 7

*Children of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir. 1998) . . . . . . . . . . . . . 3

*Diloreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958
(9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Gay Guardian Newspaper v. Ohopee Reg'l Library Sys.*, 235 F.Supp.
2d 1362 (S.D. Ga. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Good News Club v. Milford Central Sch.*, 533 U.S. 98 (2001) . . . . . . . . . . . . . 1, 2, 4, 6, 7

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044 (9th Cir. 2003) . . . . . . . 2, 3, 5, 7, 8, 9

*Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kreimer v. Bureau of Police for the Town of Morrison*, 958 F.2d 1242
(3rd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384
(1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 7

*Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979 (9th Cir. 2003) . . . . . . . . . . . . . 4

*Madrid v. Lopez*, 21 F.Supp.2d 1151 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mainstream Loudoun v. Bd. of Trustees of the Loudoun County Library*,
24 F.Supp.2d 552 (E.D. Va. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Neinast v. Bd. of Trustees of the Columbus Metro. Library*, 346 F.3d 585
(6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Widmar v. Vincent,* 454 U.S. 263 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATUTES**

California Education Code § 38134(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Education Code § 38134(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

California Government Code § 3207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**OTHER**

Cal. Const. Art. XVI, § 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Consistent with the Court's Notice of Tentative Ruling, the County defendants (collectively, the "County") submit the following in response to the issues raised in that Notice.

**I. INTRODUCTION AND SUMMARY**

> The American experiment has flourished largely free of the religious strife that has stricken other societies because church and state have respected each other's autonomy. Religion and government thrive because each, conscious of the corrosive perils of intrusive entanglements, exercises restraint in making claims on the other. The beneficiaries are a diverse populace that enjoys religious liberty in a nation that honors the sanctity of that freedom.

*Bronx Household of Faith v. Bd. of Ed. of City of New York*, 331 F.3d 342, 355 (2nd Cir. 2003).

Church and state cannot thrive autonomously when restraint gives way to intrusion. Plaintiffs openly admit they seek to turn the Antioch public library meeting room into a house of worship. Specifically, plaintiffs want to use the library meeting room as an "alternative to a 'traditional church building,' into which some people 'who need to hear about the gospel of Jesus Christ' may never step." (Plaintiffs' First Amended Complaint at para. 22-24.) No court, including the Supreme Court, has ever held that a religious worship service, even a religious worship service accompanied by other activities, should be permitted to take place **free of charge** in a public library (or any other limited forum) during the hours it is operating as a library and **open to the public** at the time the proposed activities are to take place.

There is no simple apples to apples comparison between this case and the cases which have come before it.[1] This case is factually distinct from *Good News Club* and *Lamb's Chapel* in which the proposed activities did not include a worship service and were to take place after school hours. *Good News Club v. Milford Central Sch.*, 533 U.S. 98,

---

[1] This includes *Widmar v. Vincent*, 454 U.S. 263 (1981), upon which plaintiffs so heavily rely in their moving papers. *Widmar* involved a college campus, which was an open forum that placed virtually no limitations on student speech. That forum is distinguishable from the forum at issue here. Additionally, plaintiffs' contention that *Widmar* settled the issue that religious worship cannot constitutionally be distinguished from other religious speech is not well-taken. Had *Widmar*, in fact, settled that issue, later courts in cases such as *Good News Club*, *Bronx Household of Faith* and *Campbell* would have had no reason to grapple with it.

102, 112 n.4 (2001); *Lamb s Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 386, 389 n.2 (1993). And, as noted by the Court, while the activities at issue in this case appear to be factually similar to those permitted in *Bronx Household of Faith* and *Campbell*, the nature of the forum is entirely different. (Notice of Tentative Ruling on Plaintiffs Motion for a Preliminary Injunction and Setting of Hearing ( Tentative Ruling ), at 2.) The proposed activities in those cases were to take place on a Sunday morning in school buildings, which were completely empty except for those present to take part in the religious worship services. *Bronx Household of Faith*, 331 F.3d at 345; *Campbell v. St. Tammany Parish Sch. Bd.*, 2003 U.S. Dist. LEXIS 13559 at * 30-31 (E.D. La. July 30, 2003). That is quite different from a library which is in operation and open to the public while a religious service is taking place.

The County strongly urges the Court to adopt a final ruling which finds that the County s policy of prohibiting religious services does not constitute viewpoint discrimination, as did the Ninth Circuit in *Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044, 1050 n.4 (9th Cir. 2003), where the court rejected the argument that excluding religion as a subject or category from a limited public forum must constitute viewpoint discrimination. If the Court nonetheless finds that prohibiting religious services constitutes viewpoint discrimination, the Court should then conclude that such discrimination is justified given the compelling governmental interest of avoiding an Establishment Clause violation. The County s Establishment Clause concerns are much more significant here where the proposed use is for a religious worship service, the proposed forum is a public library during normal hours of operation and the space will be used for free   not rented. Such facts were not present in earlier Supreme Court and lower court cases in which Establishment Clause arguments were rejected.

## II. ARGUMENT

### A. A Library Meeting Room Open For Use During Normal Operating Hours Is A Limited Forum

While plaintiffs  argue that the limited forum doctrine is  suspect,  the Ninth Circuit disagrees and regularly distinguishes between  designated forums  and  nonpublic

forums such as limited forums which legitimately restrict access to certain groups or topics. *Hills*, 329 F.3d at 1049.[2] The Ninth Circuit's forum analysis considers the "nature of the property and its compatibility with expressive activity," "whether the forum was designed and dedicated to expressive activity" and "the policy and practice of the government." *Id.* at 1049 (quoting *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 976-77 (9th Cir. 1998)).

Here the nature of the forum is a meeting room, used **free of charge**, within a public library **during its normal hours of operation**. This is the "critical distinction" noted in the Court's tentative ruling between the fora at issue in *Bronx Household of Faith* and *Campbell* and the forum here. (Tentative Ruling at 2.) In *Bronx Household of Faith*, plaintiffs sought to **rent** public school space on a Sunday for "singing, the teaching of adults and children . . . from the viewpoint of the Bible, and . . . a fellowship meal after the service." *Bronx Household of Faith*, 331 F.3d at 346-47 (internal quotes omitted). The court held that it did not find a "valid Establishment Clause interest" because the proposed "meetings . . . occur on Sunday mornings, during nonschool hours . . . there is no evidence that any school children would be on the school premises on Sunday mornings or would attend the meetings . . . [and] the church apparently intended to pay rent for the use of the space."[3] *Id.* at 356. *Campbell* involved a forum "identical" to that in *Bronx Household of*

---

[2] The Ninth Circuit's approach to the forum doctrine is not the same as that of some courts in other federal circuits. Some courts use the terms "limited" and "designated" forum interchangeably. *See, e.g. Mainstream Loudoun v. Bd. of Trustees of the Loudoun County Library*, 24 F.Supp.2d 552, 562 (E.D. Va. 1998). The Ninth Circuit has indicated its disapproval of that practice. "Some courts and commentators refer to a 'designated public forum' as a 'limited public forum' and use the terms interchangeably. **But they are not the same, at least not in this circuit**." *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001) (emphasis added).

[3] The significance of the distinction for Establishment Clause purposes between the use of a free library meeting room and the use of otherwise empty school buildings for a fee cannot be understated. The California Legislature has recognized the utility of permitting religious groups to conduct religious services in otherwise empty school buildings, but requires that religious groups pay for that use. Cal. Ed. Code § 38131(b)(3) (permitting the use of school facilities for "[t]he conduct of religious services for temporary periods, on a one-time or renewable basis, by any church or religious organization . . . **provided the governing board**

(continued...)

*Faith*, namely, "weekly use of a school on **Sunday mornings** for their regular worship service." *Campbell*, 2003 U.S. Dist. LEXIS 13559 at *30-31 (emphasis added).

The Ninth Circuit recently upheld a school's right to restrict religious proselytization at a graduation ceremony, distinguishing *Good News Club* on the grounds that there was "no valid Establishment Clause interest" in *Good News Club* given that, among other things, "censored religious activities took place outside school hours." *Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979, 985 (9th Cir. 2003) (*quoting Good News Club,* 533 U.S. at 113.) Here, the proposed religious worship service would take place in the Antioch library on a busy Saturday morning when library patrons of all ages and faiths would be present. Moreover, the library meeting room is provided free of charge.[4] These distinctions are critical. The danger of violating the Establishment Clause is minimal when the public at-large is not present at the event in question and the government property is rented as opposed to being subsidized by taxpayers. When the space is provided free of charge during times when the general public is present, the danger of a violation is substantially greater. The County has a compelling interest in avoiding an Establishment Clause violation.

Moreover, the nature of libraries as "traditional places for reading, writing and quiet contemplation" make them incompatible with indiscriminate expressive activity and therefore limited forums. *Neinast v. Bd. of Trustees of the Columbus Metro. Library*, 346 F.3d 585, 591 (6th Cir. 2003) (*quoting Kreimer v. Bureau of Police for the Town of Morrison*, 958 F.2d 1242, 1261 (3rd Cir. 1992)); *see also, e.g., Madrid v. Lopez*, 21

---

[3](...continued)
**charges the church or religious organization using the school facilities or grounds a fee**")(emphasis added). Such fee must be "at least equal to the district's direct costs." Cal. Ed. Code § 38134(d).

[4] The California Constitution Article 16, Section 5 prohibits any government entity "to make an appropriation, or pay from any public fund whatever, or grant anything to in aid of any religious sect, church, creed or sectarian purpose . . . ." Cal. Const. art. XVI, § 5. Requiring the County to provide free meeting space for religious worship services at least arguably violates the California Constitution.

F.Supp.2d 1151 (N.D. Cal. 1997). In *Gay Guardian Newspaper v. Ohopee Regional Library Systems*, the court held a library lobby was a limited forum given that library officials were charged with harmoniously operating a *community* library. *Gay Guardian Newspaper v. Ohopee Reg l Library Sys.*, 235 F.Supp.2d 1362, 1369 (S.D. Ga. 2002) (emphasis in the original). The nature of a library, including its lobbies and meeting rooms, is distinct from other fora and the County has a legitimate reason for preserving the primary purpose of the forum by prohibiting certain types of inconsistent expressive activity.

Here too the Antioch public library, including its meeting room which is situated inside the library itself, has a primary purpose of reading, writing and quiet contemplation. *Neinast*, 346 F.3d at 591 (quoting *Kreimer*, 958 F.2d at 1261). That the library permits community groups to use its meeting rooms for limited purposes does not alter the primary purpose of the library especially given the location of the meeting room inside the library itself and given that it is used during normal library hours. So while the County is obligated to permit the public to exercise rights that are consistent with the nature of the Library . . . other activities need not be tolerated. *Gay Guardian Newspaper,* 235 F.Supp.2d at 1369 (quoting *Kreimer*, 958 F.2d at 1262). A religious worship service during normal library hours is inconsistent with the primary purpose of the library.

The County s policy delineating the speakers and uses appropriate for the forum and its consistent screening process of the applications for use underscores that it has never opened up the library or its meeting rooms for indiscriminate use.[5] *See Campbell,* 2003 U.S. Dist. LEXIS 13559 at *19 n. 6 (restrictions were minimally sufficient to preserve the limited forum identity. ); *Hills*, 329 F.3d at 1049 (limited forum created given school district screened submissions for suitability and frequently rejected flyers for various

---

[5] Here, the County restricts use of its library meeting rooms for educational, cultural and community related meetings, programs and activities and its screening process ensures that use complies with the policy as well as various state and local requirements restricting use. For instance certain restrictions exist prohibiting the use of government property for the purpose of electing or defeating a candidate for public office. *See* Contra Costa County Administrative Bulletin 405.4; *see also* Cal. Gov t. Code. § 3207.

1 reasons"); *Diloreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965-67 (9th Cir. 1999) (limited forum given that school district screened and rejected advertisements).

**B. Prayer, Praise and Worship Is Mere Religious Worship, Which Is Properly Excluded From The County's Limited Forum**

Plaintiffs' application to use the library meeting room simply stated that they sought to use it for "prayer, praise and worship." Subsequently, the flyer provided to the County's counsel during the course of initial disclosures clearly delineated all of plaintiffs' proposed activities— "wordshop" and fellowship on the one hand and a religious worship service on the other.

The Supreme Court has **not held** that a religious service or religious worship may not be excluded from a limited forum. *Campbell*, 2003 U.S. Dist. LEXIS 13559 at *27 (emphasis added). Nonetheless, the *Bronx Household of Faith* and *Campbell* courts chose to view requests to hold religious services plus some other clearly permissible activities as all or nothing propositions— if any arguably non-religious component was included, the worship service component must be permitted as well. The County contends that, unlike those courts, this Court should not read Supreme Court precedent to preclude distinctions between the types of activities for which plaintiffs sought to use the library meeting room or to require the County to allow religious services in an operating public library without charge.

Notwithstanding plaintiffs' anticipated arguments to the contrary, the decisions of the Second Circuit (*Bronx Household of Faith*) and the Eastern District of Louisiana (*Campbell*) do not compel any other conclusion, not only because those cases are entirely distinguishable on their facts with respect to the forums at issue, but also for the obvious reason that those decisions are not binding on this Court, and because those decisions were based on an overly broad reading of *Good News Club* which was not necessary and which does not comport with Ninth Circuit precedent.

Rather, *Good News Club* stands only for the proposition that religious instruction ("the teaching of morals and character, from a religious standpoint") must be allowed in a

forum which allows similar secular instruction.[6] To read *Good News* any more broadly would, in the words of Justice Souter, read it to "stand for the remarkable proposition that any public school opened for civic meetings must be opened for use as a church, synagogue or mosque." *Good News Club*, 533 U.S. at 139 (Souter, J., dissenting).[7]

Plaintiffs' "wordshop" (the flyer's description of which is essentially that of a "how to pray" seminar) is precisely the type of "secular equivalent" activity that *Lamb's Chapel* and *Good News Club* address, and deference to those precedents mandates that this type of activity be permitted.[8] The same deference, however, is not warranted with respect to the other activity for which plaintiffs sought to use the library's meeting room: a religious worship service – an activity **which has no secular equivalent**.[9] The Ninth Circuit has rejected the argument that such exclusion ("religion as a subject or category") from a limited forum necessarily constitutes viewpoint discrimination. *Hills*, 329 F.3d at 1050 n.4 (*quoting DiLoreto,* 196 F.3d at 969). Absent viewpoint discrimination, the County can restrict its limited forum to uses which are consistent with the nature of the forum. As

---

[6] The superintendent's stated reason for denying the applications was simply that the Club's activities were "religious instruction." *Good News Club,* 533 U.S. at 114 n.5. Whether the club's activities were properly characterized as "instruction" as opposed to "worship" is subject to dispute (as the dissent points out), but in the present case, no such dispute need arise because the plaintiff's themselves described one activity in which they proposed to engage at the library as "worship."

[7] It is, in fact, just that remarkable proposition that plaintiffs seek to have this Court adopt.

[8] It must be noted again, however, that the County was unaware of the nature of this part of plaintiffs' activities at the time that application was made for use of the library meeting room. A "seminar" of any type was not described by plaintiffs; rather, plaintiffs indicated only that they sought to use the meeting room for "prayer, praise and worship."

[9] Again, although the courts in *Bronx Household of Faith* and *Campbell* chose not to do so, *Good News Club* is readily distinguishable. In *Good News Club*, the club sought "nothing more than to be treated neutrally and given access to speak about the same topics as are other groups." *Good News Club,* 533 U.S. at 114. No non-religious group could or would seek access to the library to hold a religious service, because such a service is **exclusively** religious in nature. A religious worship service cannot be a religious viewpoint on an "otherwise permissible subject," because without the religion in a religious worship service, there is no subject at all. Secular worship is an oxymoron.

discussed above, a religious service is not such a use.

**C.    The Library's Prohibition On Religious Services Is Not too Vague To Be Enforced**

The Court queries whether the County's policy which permits library meeting rooms to be used for religious speech but prohibits use for religious services is too vague to be enforced. (Tentative Ruling at 3.) The library here admittedly must permit religious-based activities when it permits similar secular-based activities; its policy thus does not prohibit such activities. The library need not, however, permit religious services, the meaning of which is sufficiently clear that "persons of ordinary intelligence can determine what is prohibited." *Hills*, 329 F.3d at 1056; *see also, California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001). Plaintiffs can clearly distinguish the different types of activities; they did so on their flyer.

"[T]hat there may be some "close cases" or difficult decisions does not render a policy unconstitutionally vague." *See Hills*, 329 F.3d at 1056 (9th Cir. 2003); *California Teacher's Ass'n*, 271 F.3d at 1152. The *Hills* court thus found that a school district's policy, which prohibited distribution of "[n]on-school originated material of a commercial, political, or religious nature" was not unconstitutionally vague, because "[a]lthough not perfectly clear, the term "religious" is a common term and does at least provide some degree of constraint on the District." 329 F.3d 1047, 1056. Similarly, "religious services," while perhaps not "perfect," is a commonly-used term and sufficiently descriptive so that applicants such as plaintiffs are put on notice as to what is prohibited.

In the Ninth Circuit, therefore, the fact that a policy may require a government entity to distinguish between different types of religious speech does not render that policy unconstitutionally vague. Thus, the *Hills* court found that, despite the school district's policy against distribution of materials of a "religious nature," the school district could not prohibit distribution of brochures for an off-campus summer program "because it is taught from a Christian perspective," if the school district allowed distribution of similar secular brochures. *Id.* at 1053. However, under the same policy, the court held that the school district could nonetheless exercise some control over the content of the brochure, to the

extent that some of the language in the proposed brochure exceeds the scope of the District's forum." *Id.* at 1052.[10] The County's policy is similarly capable of enforcement.

### D. The Appropriate Scope Of An Injunction Permits "Religious Activities" And Allows The County To Maintain The Current Prohibition On Religious Services

The County has no interest in monitoring the activities in the library meeting room, nor does it wish to repeatedly enter the constitutional minefield of determining what activities might arguably fall at the margins of permissible religious activities versus impermissible religious worship. The County is confident that the majority of the time the description of activities on a use application will be sufficient to determine whether or not the requested use is permissible. An injunction, therefore, that permits the County to exclude religious services, but requires that the library meeting room be available for "religious activities" that fall within the scope of the limited forum is a workable remedy.

If, however, there is some doubt that the library can distinguish between religious services and other religious activities, the County proposes that the meeting room use application be altered to include a certification by the applicant that the meeting room will not be used for religious services. As it does now with respect to applicants' descriptions of the use to which they intend to put the meeting room, the County would rely on the honesty of an applicant in so certifying.

An injunction such as that described above satisfies both the free exercise clause of the first amendment (by permitting plaintiffs to express their religious viewpoints in the context of "educational, cultural and community" related events and activities) and the Establishment Clause (by not requiring the County to allow plaintiffs to hold religious services without charge in a limited forum during operating hours). A broader injunction, such as that sought by plaintiffs, which would require the County to allow plaintiffs to hold religious services for free in an open library, virtually invites an Establishment Clause challenge.

---

[10] As an example, the district could permissibly exclude language that "contains direct exhortations to religious observance," such as a statement regarding the need to educate children younger than 12 of the importance of reading the Bible. *Id.* at 1052-53.

If an injunction issues that requires the County to permit religious services in its library meeting rooms, the County contends that the appropriate level of a bond is an amount sufficient to address the Establishment Clause violation action(s) that the County believes will almost certainly follow. If an injunction issues that does not require that worship services be held in County libraries, the necessity for a bond would be largely eliminated.

## III. CONCLUSION

The Ninth Circuit has rejected the idea that the exclusion of religion as a category from a limited forum necessarily constitutes viewpoint discrimination. Religious services are a unique religious activity for which there exists no secular equivalent. The exclusion of the category of religious worship from the permissible activities allowed in County library meeting rooms during operating hours without charge does not constitute viewpoint discrimination. Rather, that exclusion is entirely reasonable given the nature of the forum and the County's compelling interest in avoiding violation of the Establishment Clause. The County therefore respectfully submits that the Court should not issue an injunction that forces the County to provide free space in its libraries for religious services during operating hours. Rather, if an injunction is to issue at all, that injunction should be limited to one which requires that religious activities (i.e., discourse on otherwise permissible subjects from a religious viewpoint) be allowed, but which does not force the County to permit religious services.

Dated:

                              SILVANO B. MARCHESI
                              County Counsel

                                  /s/
                    By: _____
                              KELLY M. FLANAGAN
                              Deputy County Counsel
                              Attorneys for Defendants