**EXHIBIT B**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FAITH CENTER CHURCH          )
EVANGELISTIC MINISTRIES,     )
et al.,                      )
                             )
          Plaintiffs,        )
                             )
     vs.                     ) Case No. C04-3111 JSW
                             )
FEDERAL D. GLOVER, et al.,   )
                             )
          Defendants.        )
                             )

ORIGINAL

DEPOSITION OF

GRETA GALINDO

———————————

July 15, 2008

Transcript was not signed
by the Witness within the
statutory period, in accordance
with Federal Rule 30 (e)

REPORTED BY:   CAROLYN M. MANN, CSR 10066 [#411108]

1                          I N D E X

2                    INDEX OF EXAMINATIONS

3  EXAMINATION BY MR. CHANDLER ........................   4

4            EXHIBITS MARKED FOR IDENTIFICATION

5  Exhibit 10   Application and Permit for Use of

                Meeting Room by Terry D. Robinson,

6                dated December 19, 2006.................   9

7  Exhibit 11   E-mail from Greta Galindo to Laura

                O'Donoghue, Anne Cain, and Cathy

8                Sanford, dated November 20, 2007......... 10

9  Exhibit 12   E-mail chain including message from

                Greta Galindo to Laura O'Donoghue, dated

10               February 13, 2007....................... 12

11 Exhibit 13   Diagram concerning the Antioch library

                building................................ 14

12

   Exhibit 14   Contra Costa County Library Rules for

13               the Use of Library Meeting Rooms........ 17

14                         --oOo--

15

16

17

18

19

20

21

22

23

24

25

                                                           2

1                        --oOo--
2           Deposition of GRETA GALINDO, taken by the
3    Plaintiffs at 651 Pine Street, 9th Floor, Martinez,
4    California, commencing at 10:46 a.m. on July 15, 2008,
5    before CAROLYN M. MANN, CSR, pursuant to Notice.
6                        --oOo--
7                A P P E A R A N C E S
8    FOR THE PLAINTIFFS:
9              ALLIANCE DEFENSE FUND
               101 Parkshore Drive
10             Suite 100
               Folsom, California  95630
11             BY:  TIMOTHY D. CHANDLER
                    JOEL OSTER
12
     FOR THE DEFENDANTS:
13
               CONTRA COSTA COUNTY
14             OFFICE OF THE GENERAL COUNSEL
               651 Pine Street
15             Ninth Floor
               Martinez, California  94553-1229
16             BY:  THOMAS L. GEIGER
17                      --oOo--
18
19
20
21
22
23
24
25

                                                          3

1          MARTINEZ, CALIFORNIA

2        TUESDAY, JULY 15, 2008

3           10:46 A.M.

4            --oOo--

5          GRETA GALINDO

6          _____

7   called as a witness, who, having been first duly sworn,

8   was examined and testified as follows:

9            --oOo--

10          EXAMINATION BY MR. CHANDLER

11          MR. CHANDLER:  Q.  Miss Galindo, have you ever

12  had your deposition taken before?

13      A.   No.

14      Q.   Okay.  As you're aware, you were just sworn

15  in, so everything you say is under oath, just as if you

16  were testifying in court.

17          I'm going to ask you a series of questions.

18  Go ahead and just answer them to the best of your

19  knowledge.  If you're not sure or you don't know, go

20  ahead and say so.

21          I will try to keep my questions as clear and

22  concise as possible, but I'm an attorney, so we do

23  struggle with that at times.  If you don't understand

24  something, just ask.

25          And your attorney may object to some of my

4

1  questions, but unless he specifically tells you not to
2  answer, go ahead and answer after he's done with his
3  objection.
4  　　　　Your answers should be audible and clear.
5  Don't nod or shake your head or say "uh-huh" or
6  "huh-uh."  The court reporter is going to take a
7  transcript of everything said, so we want to make her
8  job as easy as possible.  So that will make it easier
9  for her to get everything down in writing.
10  　　　　If you get to a point where you need to take a
11  break, want to go get some water or something, that's
12  fine, just let me know.
13  　　　　Do you have any questions before we begin?
14  　　A.　No.
15  　　Q.　Okay.  Could you state your name and spell it
16  for the record.
17  　　A.　Greta, G-R-E-T-A, Galindo, G-A-L-I-N-D-O.
18  　　Q.　And besides your attorney, did you discuss
19  this deposition with anybody?
20  　　A.　No.
21  　　Q.　Did you review any documents in preparation
22  for this deposition?
23  　　A.　No.
24  　　Q.　Where are you currently employed?
25  　　A.　Antioch public library.

5

1      Q.    And how long have you been employed there?

2      A.    Four years.

3      Q.    And what is your job title?

4      A.    Senior community library manager.

5      Q.    And what does that involve?  What are your job

6    duties?

7      A.    I'm the library supervisor, so I supervise the

8    staff.

9      Q.    Are you the most senior librarian within the

10   Antioch branch?

11     A.    Yes.  I'm the manager.

12     Q.    The court reporter is going to show you what

13   has been marked as Exhibit 4.

14           Tom, do you still have your copy?

15           MR. GEIGER:  I do.

16           MR. CHANDLER:  Q.  This document was marked as

17   Exhibit 4 in a previous deposition.  Do you recognize

18   it?

19     A.    Yes.

20     Q.    And what is it?

21     A.    Meeting room policy.

22     Q.    Is this the current meeting room policy?

23     A.    Yes.

24     Q.    As part of your job, do you review meeting

25   room applications to determine if they're in compliance

6

1    with this policy?

2         A.    Yes.

3         Q.    If so, how often?

4         A.    Weekly.  Daily.

5         Q.    Is it a regular part of your job?

6         A.    Uh-huh.

7         Q.    Can you think of any examples of applications

8    to use the Antioch meeting room that have been denied

9    because they didn't comply with Exhibit 4?

10        A.    Yes.

11        Q.    Can you give me any particular examples?

12        A.    People that want to sell something, often

13   they're books, have been denied.  Anytime they want to

14   sell something.  If it's not open to the public.

15   Religious services have been denied.  Not . . . hmm.

16        Q.    When an applicant comes and says they want to

17   sell books in the meeting room, is that prohibited or

18   would they just be required to pay a fee?

19        A.    They would have to pay the fee.

20        Q.    So is that true when anyone is selling

21   anything?

22        A.    Yes.

23        Q.    So they -- and with religious services, have

24   you specifically denied an application because it was a

25   religious service?

1       A.    No.

2       Q.    Are you -- apart from Faith Center, the group

3   that's involved in this lawsuit, are you aware of any

4   other organizations that have been denied use of the

5   meeting room as a religious service?

6       A.    No.

7            MR. GEIGER:   Just, did you say not denied or

8   denied?   I'm sorry.

9            MR. CHANDLER:   I meant -- I'll rephrase it.

10           MR. GEIGER:   I thought I heard a "not," but I

11   wasn't sure.

12           MR. CHANDLER:   Q.   Apart from Faith Center,

13   have there been any other groups, to your knowledge,

14   that have been denied because they were conducting a

15   religious service?

16      A.    No.

17      Q.    Can you think of any other examples of someone

18   being denied access to the meeting room because they did

19   not -- because they violated Exhibit 4 or their meeting

20   did not fall within the scope of Exhibit 4?

21      A.    No.

22      Q.    I'd like to ask you about a specific

23   application to the Antioch library.   Let's mark this

24   as -- I think we're on 10.   The court reporter is going

25   to mark this as Exhibit 10.

Merrill Legal Solutions
(800) 869-9132

1          (Deposition Exhibit 10 was marked for

2          identification.)

3          MR. CHANDLER:  Q.  Now, looking at Exhibit 10,

4     is this the form you use to accept applications for the

5     meeting room at Antioch --

6          A.   Yes.

7          Q.   -- library?

8               And is this an application for the Antioch

9     library meeting room?

10         A.   Yes.

11         Q.   Do you recognize the signature on the bottom?

12         A.   Yes.

13         Q.   Whose signature is that?

14         A.   Adult services librarian.

15         Q.   Her name is . . .?

16         A.   Kathy Middleton.

17         Q.   And did she approve this application?

18              MR. GEIGER:  Objection, the document speaks

19    for itself.

20              MR. CHANDLER:  Q.  You can go ahead and

21    answer.

22         A.   Yes.

23         Q.   Now, I noticed there's a line across the

24    middle.  Does that say, the wording above the line

25    across the middle, does that say "Cancelled"?

9

1        A.    Yes.

2        Q.    Does that -- would that indicate that the

3   group cancelled the meeting?

4        A.    Yes.

5        Q.    Okay.  That was all I had for that exhibit.

6              If you could go back to Exhibit 4.  I'd like

7   to discuss the religious use aspect of the policy.  As

8   it currently stands, the meeting room policy prohibits

9   all religious services, correct?

10       A.    Yes.

11             MR. CHANDLER:  That will be 11.

12             (Deposition Exhibit 11 was marked for

13             identification.)

14             MR. CHANDLER:  Q.  The court reporter is

15   handing you what's marked as Exhibit 11.  Did you write

16   this e-mail?

17       A.    Yes.

18       Q.    Near the end of the e-mail, you state that

19   it's your thinking that -- your thinking is that the way

20   this is worded it is not a religious service; that the

21   prayer and praise part may be, not the scriptural

22   workshop.  Why did you make the distinction between the

23   prayer and praise part and the scriptural workshop?

24       A.    Prayer and praise seem to be part of a

25   formalized worship service, as opposed to like a Bible

10

1    study, scriptural workshop.

2        Q.    So when you say a worship service, how would

3    you define that?

4        A.    Have a preacher up front guiding people in a

5    structured prayer and praise and moving them through a

6    service.

7        Q.    And so that would be a religious service under

8    the meeting room use policy?

9        A.    Yes.

10       Q.    If a, if a preacher or pastor wanted to give a

11   sermon about the Bible, would that be considered a

12   religious service, in your mind?

13              MR. GEIGER:  Objection; hypothetical, calls

14   for speculation.

15              MR. CHANDLER:  Q.  You can go ahead and

16   answer.

17       A.    Yes.

18       Q.    And if a preacher wanted to do a sermon on

19   what the Bible says about how to manage your money,

20   would that also be a religious service?

21              MR. GEIGER:  Objection; hypothetical, calls

22   for speculation.  The policy speaks for itself.

23              THE WITNESS:  Yes.

24              MR. CHANDLER:  Q.  Do you know who Madalynn

25   Peterson is?

                                                        11

1          A.    Yes.

2          Q.    Has she been using the meeting room at the

3     Antioch library?

4          A.    Yes.

5          Q.    Do you know what kind of events she has there?

6          A.    She has a Bible study.

7          Q.    Sorry.  Just a second.

8                Do you know what goes on during the Bible

9     study?

10         A.    When I've spoken to Madalynn about it, they

11    teach people to read using the Bible.

12         Q.    So it's like a -- when you say teach people to

13    read, is that like a literacy course?

14         A.    Yes.

15               MR. CHANDLER:  Mark that as Exhibit 12.

16               (Deposition Exhibit 12 was marked for

17               identification.)

18               MR. CHANDLER:  Q.  The court reporter has

19    handed you what's marked as Exhibit 12.  And I'm

20    specifically focusing on the part of the, I guess in the

21    middle of the page, but the last paragraph written

22    there.  Did you write that e-mail?

23         A.    Yes.

24         Q.    And you talk about, a different church has

25    been using the meeting room every Sunday.  Is that

                                                              12

1   Madalynn Peterson's church that you're referring to?

2       A.   Yes.

3       Q.   In the e-mail you say, "I will give Madalynn a

4   call to let her know about the policy decision."  What

5   policy decision are you referring to?

6       A.   Before that time, we were allowed -- it was

7   the time when religious use could be allowed in the

8   meeting room.  So I had approved her application, and

9   then after April, when it was changed to "shall not be

10  used for religious services," I gave Madalynn a call to

11  make sure that she knew and that I was fully aware of

12  what they were using the meeting room for, and that it

13  was in line with the policy.

14      Q.   And when you refer to April, what are you

15  referring to?  You mentioned April.

16      A.   When the court decision came to not use the

17  library for religious service.  Prior to that, there had

18  been I guess what you'd call an injunction, and they

19  were being allowed.

20      Q.   And they were being allowed, religious

21  services were being allowed?

22      A.   Yes.

23      Q.   And to your knowledge, was Madalynn Peterson

24  conducting religious services prior to the call to her

25  that you referred to in Exhibit 12?

13

1      A.    No.

2      Q.    So why did you, why did you feel the need to

3    call her to tell her about the policy decision?

4      A.    I wanted to make sure, because I hadn't --

5    before that, I hadn't really, since it was okay to have

6    religious services, I hadn't really clarified exactly

7    what they were using the meeting room for, other than

8    looking at her application.  And so I just wanted to

9    double-check.

10      Q.    And did you call her?

11      A.    Uh-huh, yes.

12      Q.    And did you speak to her about it?

13      A.    Yes.

14      Q.    And what did she tell you?

15      A.    She said they were doing a Bible study,

16    teaching people to read using the Bible.

17      Q.    So to your knowledge, did Madalynn Peterson

18    change her event in any way as a result of talking with

19    you?

20      A.    No.

21          MR. CHANDLER:  If we want to just take a

22    couple minutes -- we got to that very quickly -- and let

23    me make sure I've covered everything, and we might be

24    able to let you go.

25          (Recess taken; Deposition Exhibit 13 was

14

1          marked for identification.)

2          MR. CHANDLER:   Q.   The court reporter has

3    handed you what's marked as Exhibit 13.  Can you take a

4    look at this exhibit and tell me if it's an accurate

5    depiction of the Antioch library building?

6          A.   Yes.

7          Q.   And are all the room descriptions on

8    Exhibit 13 accurate?

9          A.   Yes.

10         Q.   I'm going to give you a pen, and the -- it

11   appears that the entrance, the doors that enter into the

12   meeting room, that there are small rooms on either side

13   of those doors.  Do you see what I'm referring to?

14         A.   Yes.

15         Q.   Could you mark on Exhibit 13, mark those rooms

16   as number 1 and 2, just for the record.  Just draw a 1

17   and a 2 on those rooms.

18         A.   Okay.

19         Q.   Can you tell me what you've marked as room

20   number 1, what that room is?

21         A.   The book drop.  It's where the books go.

22         Q.   From --

23         A.   From outside.

24         Q.   From outside.

25         A.   The book return.

15

1    Q.   And how about room number 2?

2    A.   It's a closet.

3    Q.   Storage closet?

4    A.   Yes.

5    Q.   For the meeting room?

6    A.   Storage closet.

7    Q.   Then on to the -- the meeting room is next to

8    what looks like a large area that's labeled "Work Area"?

9    A.   Yes.

10   Q.   Can you describe that area for me?

11   A.   It's our back of house.  So it's where we do

12   all of our book processing and where my staff have their

13   desks and the back house computers.  There's also an

14   area called Project Second Chance where they have an

15   adult literacy program.

16   Q.   Is that area open to the general public?

17   A.   No.

18   Q.   And just below the work area, next to the

19   meeting room, there appear to be two more small rooms

20   that are in between the meeting room and the staff room.

21   Can you mark those two rooms as 3 and 4?  And can you

22   tell me what room number 3 is?

23   A.   It's a bathroom, staff bathroom.

24   Q.   So it's just for the staff?

25   A.   Yes.

16

1    Q.   And what's room number 4?

2    A.   The kitchen.  Staff kitchen.

3    Q.   And the staff room, what is that, what's --

4    can you describe that room for me?

5    A.   It's like a break room, with the fridge and

6    the table and a TV.

7    Q.   And then there's an office next to the staff

8    room.  Whose office is that?

9    A.   The adult -- Kathy Middleton, adult services

10   librarian, and Judy Shipe.  She's a library assistant.

11   Q.   And then there's another office beyond that

12   one?

13   A.   The other office is mine.

14   Q.   Your office?  Okay.

15        (Deposition Exhibit 14 was marked for

16        identification.)

17        MR. CHANDLER:  Q.  The court reporter has

18   handed you what's marked as Exhibit 14.  Do you

19   recognize this document?

20   A.   Yes.

21   Q.   And what is it?

22   A.   It's rules for the library meeting room at

23   Antioch library.

24   Q.   Are these the current rules?

25   A.   Yes.

17

1       Q.   Under where it says "Hours of Use," it says

2   the meeting room can be used no later than 10 p.m.  Does

3   that apply to every single day?

4       A.   Yes.

5       Q.   Is the Antioch library open until 10 o'clock

6   every day?

7       A.   No.

8       Q.   How late is it open?

9       A.   8 o'clock.

10      Q.   8 p.m.?

11      A.   Yes.

12           MR. GEIGER:  Is that every day?

13           THE WITNESS:  Monday through Thursday.

14           MR. CHANDLER:  Q.  And on Friday?

15      A.   Friday and Saturday it's open until 6, closed

16   on Sundays.

17      Q.   Are there any restrictions on how early in the

18   day the meeting room can be reserved?

19      A.   No.

20      Q.   So if you wanted to have an event at 7 a.m.,

21   the library could accommodate that?

22      A.   Yes.

23      Q.   Can people bring food or drinks into a meeting

24   room?

25      A.   Yes.

1        Q.    Can you show a movie in the meeting room?

2        A.    Yes.

3        Q.    Can you play music?

4        A.    Yes.

5        Q.    Are there any noise or sound restrictions?

6        A.    Yes.

7        Q.    What are they?

8        A.    When the library is open, we don't want to

9    hear activities in the meeting room in the library

10   buildings.

11       Q.    In the -- when you say library building, what

12   are you referring to?  And you can use Exhibit 13 if it

13   will help.

14       A.    Out anywhere in the public area or even in the

15   back of the house in the staff room, if it's loud enough

16   to go out of the meeting room, where anyone can hear it,

17   then we will ask them to be quiet.

18       Q.    And that's during the hours that the library

19   is open.

20       A.    Yes.

21       Q.    When the library is not open are there sound

22   restrictions?

23       A.    If the staff are there -- staff are generally

24   there before the library is open -- yes.

25       Q.    So I know you mentioned on Sunday it's closed.

1    If there's a meeting held on Sunday, is there staff

2    typically there on Sunday?

3         A.    No.

4         Q.    So there wouldn't be a sound restriction then?

5         A.    No.

6               MR. CHANDLER:  All right.  I think that's it.

7               Do you have any questions?

8               MR. GEIGER:  No.

9               MR. CHANDLER:  Thank you.

10              (Whereupon, the deposition was adjourned

11              at 11:12 a.m.)

12                        --oOo--

13              I declare under penalty of perjury that the

14    foregoing is true and correct.  Subscribed at

15    _____, California, this _____ day of

16    _____, 2008.

17

18

19                              _____

20                              GRETA GALINDO

21

22

23

24

25

20

```
 1                    CERTIFICATE OF REPORTER

 2           I, CAROLYN M. MANN, a Certified Shorthand

 3    Reporter, hereby certify that the witness in the

 4    foregoing deposition was by me duly sworn to tell the

 5    truth, the whole truth, and nothing but the truth in the

 6    within-entitled cause;

 7           That said deposition was taken down in

 8    shorthand by me, a disinterested person, at the time and

 9    place therein stated, and that the testimony of the said

10    witness was thereafter reduced to typewriting, by

11    computer, under my direction and supervision;

12           That before completion of the deposition,

13    review of the transcript [X] was [ ] was not requested.

14    If requested, any changes made by the deponent (and

15    provided to the reporter) during the period allowed are

16    appended hereto.

17           I further certify that I am not of counsel or

18    attorney for either or any of the parties to the said

19    deposition, nor in any way interested in the event of

20    this cause, and that I am not related to any of the

21    parties thereto.

22       DATED:    7/28/08

23

24

25       CAROLYN M. MANN, CSR No. 10066
```

# Contra Costa County Library

## APPLICATION AND PERMIT FOR USE OF MEETING ROOM

Name of Library __Antioch__
Date of Meeting __12-22-06__
Time of Meeting: From __4 pm__ To __8 pm__  Total time __4 hours__

Name of Applicant __Terry D. Robinson__
Name of Organization __K/P Entertainment   n/profit__
Purpose of Organization __Music__
Purpose of Meeting __meeting For American Idol auditining__

I have read and agree to abide by and uphold all rules and policies of the Contra Costa County Library and the branch library governing the use of library premises or equipment, and I understand that failure to do so will result in loss of future privileges in the use of library meeting rooms. I understand that there is a no refund policy on the fee-based use of meeting rooms.

I agree that _____ shall defend, indemnify, save, and hold harmless Contra Costa County and its officers and employees from any and all claims, costs, and liability for any damages, sickness, death, or injury to person(s) or property, including without limitation all consequential damages, from any cause whatsoever arising directly or indirectly from or connected with the operations or services of _____ or its agents, servants, employees, or subcontractors hereunder, save and except claims or litigation arising through the sole negligence or sole willful misconduct of Contra Costa County or its officers or employees. _____ will reimburse Contra Costa County for any expenditures, including reasonable attorneys fees, Contra Costa County may make by reason of the matters that are the subject of this indemnification, and if requested by Contra Costa County, will defend any claims or litigation to which this indemnification provision applies at the sole cost and expense of _____.

Signature _____   Date __12-09-06__

Position in organization __CEO__

Home address __109 Sycromore__   Phone __(925) 497-0379__
Business address __Antioch__   Phone __(925) 757-7762__

## -- For Library Use Only --

Non Fee Use
Approved ☒
Not Approved ☐ Reason: _____

Fee Based Use
Approved ☐
Not Approved ☐ Reason: _____
Amount of Fee Received: _____   Received by: _____

Librarian in charge __Kathy J. Maxwell__   Date __12-11-06__

5.12 rev.8/92                    E:\mtgroom\meeting.app

EXHIBIT
Galindo
10
7-15-08

2783



Greta Galindo/staff/cccl
11/20/2007 03:16 PM

To   Laura O'Donoghue/staff/cccl@library, Anne
Cain/staff/cccl@library, Cathy Sanford/staff/cccl@library

cc

bcc

Subject  meeting room use at Antioch

Since Laura is out today, I am hoping either Cathy or Anne can help me with this.
I have a faxed application from Pastor Hattie Hopkins (she is with Faith Center Evangelistic Ministries- the one that brought the suit)  her purpose of the meeting is prayer, praise, workshop, purpose to teach scripture and encourage salvation thru Jesus to build up this community.
My thinking is that the way this is worded is that it is not a religious service. want to double check, because the prayer and praise part maybe be, not the scripture workshop

Greta Galindo
Acting Branch Librarian
Antioch Public Library
925-757-9224

EXHIBIT
Galindo
11
7-15-08

4634

Laura O'Donoghue/staff/cccl
02/13/2007 06:01 PM

To ASM
cc
bcc
Subject Fw: Meeting Room Use

History    ↪ This message has been forwarded.

Laura O'Donoghue
Deputy County Librarian / Public Services
Contra Costa County Library
(925) 646-6423  Phone
(925) 646-6461  Fax

----- Forwarded by Laura O'Donoghue/staff/cccl on 02/13/2007 06:00 PM -----

Greta Galindo/staff/cccl
02/13/2007 01:40 PM

To Laura O'Donoghue/staff/cccl@library
cc
Subject Meeting Room Use

I do have a different church that has been using the meeting room every Sunday, and they have reservations through April.  I will give Madalynn a call to let her know about the policy decision.  Just wanted to give you a heads up.

Greta Galindo
Acting Branch Librarian
Antioch Public Library
925-757-9224



EXHIBIT
Galindo
12
7-15-08



ANTIOCH LIBRARY    ANTIOCH CALIFORNIA

IAN-MACKINLAY AND ASSOCIATES    ARCHITECTS AIA

EXHIBIT
Galindo
13
7-15-08

CHILDREN'S READING

M W M

LOBBY

MEETING ROOM

STAFF ROOM

C.D.

STACKS

ADULT READING

OFFICE OFFICE

WORK AREA

STACKS

MECHANICAL ROOM

4952

CONTRA COSTA COUNTY LIBRARY

RULES FOR THE USE OF LIBRARY MEETING ROOMS

| | |
|---|---|
| **Name of Library:** | Antioch Library |
| **Address:** | 501 W. 18th Street, Antioch, CA 94509 |
| **Telephone Number:** | (925) 757-9224 |
| **MEETING ROOM CAPACITY** | 110 |
| **FREQUENCY OF USE** (How often can an organization use the room within one fiscal year): | Once per week |
| **DURATION OF USE** (How many hours can a meeting last on one day) | 8 hours |
| **ADVANCE BOOKING TIME** **No Fee Use**: Three Months | **Fee Based Use**: Three Months |
| **HOURS OF USE** **Weekdays**: No later than 10:00 p.m. | **Weekends**: No later than 10:00 p.m. |
| **FEE SCHEDULE** $40.00/hour, billed in half-hour increments & paid at time of booking. No refunds. | |
| **CONDITION UPON VACATING** | |
| 1. Put all chairs against walls, except one wall with light switches | |
| 2. Put tables against wall with washer lights | |
| 3. Put garbage can in lobby | |
| 4. Turn out lights | |
| 5. Lock all doors | |
| 6. Check to ensure back door is latched | |
| **FOOD AND BEVERAGE ARRANGEMENTS** | |
| 1. Pre-prepared simple snacks and beverages | |
| 2. No food preparation is allowed | |
| 3. Must bring own supplies | |
| **EQUIPMENT AVAILABLE** | |
| 1. TV, VCR & Stand | |
| 2. Three low end tables | |
| 3. Eighty (80) chairs | |
| 4. Eight (8) tables – five feet long | |
| 5. Two (2) tables – six feet long | |
| 6. Four (4) tables – size of card tables | |
| 7. 16 mm Projector and Stand | |
| 8. Small Screen | |
| 9. Dry Erase Board | |
| 10. Blackboard | |
| **SPECIAL USE CONDITIONS** | |
| 1. Return key in book drop after checking that all doors are shut and locked | |
| 2. If meeting is scheduled for time when library is closed, application must pick-up key when the library is open and sign for it | |
| 3. Wheelchair accessible | |
| NOTE: Inside lobby glass door and door in corner of meeting room to kitchen is alarmed when the library is closed. Please do not touch these doors. | |

EXHIBIT
Galindo
14
7-15-08