1   SILVANO B. MARCHESI (SBN 42965)
    County Counsel
2   THOMAS L. GEIGER (SBN 199729)
    Deputy County Counsel
3   COUNTY OF CONTRA COSTA
    651 Pine Street, 9th Floor
4   Martinez, California 94553
    Telephone: (925) 335-1813
5   Facsimile: (925) 646-1078
    tgeig@cc.cccounty.us
6
7   Attorneys for Defendants

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12

13  FAITH CENTER CHURCH              No. C 04-3111 JSW
    EVANGELISTIC MINISTRIES, et al.,
14                                   DEFENDANTS' CROSS-MOTION FOR
           Plaintiffs               SUMMARY JUDGMENT AND
15                                   PERMANENT INJUNCTION;
    v.                               MEMORANDUM OF POINTS AND
16                                   AUTHORITIES IN SUPPORT AND IN
    FEDERAL D. GLOVER, et al.,       OPPOSITION TO PLAINTIFFS' MOTION
17
           Defendants.
18
                                     Date:   November 7, 2008
19                                   Time:   9:00 a.m.
                                     Courtroom 2, 17th Floor
20                                   Judge: Honorable Jeffrey S. White

21

22

23

24

25

26

27

28

---

DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND PERMANENT
INJUNCTION  - C 04-3111 JSW                                                    1

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

NOTICE OF MOTION AND CROSS-MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELIEF REQUESTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

GROUNDS FOR MOTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    ISSUES TO BE DECIDED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        Contra Costa County Library Buildings and Policies . . . . . . . . . . . . . . . . . . . . . . . . 3

        Faith Center's Meeting Room Use Applications and Religious Worship Service. . . . . 5

    PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        I.    UNDER THE LAW OF THIS CASE, THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS AND TO A PERMANENT INJUNCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            A.    General Principles of the Law of the Case Doctrine. . . . . . . . . . . . . . . 7

            B.    The Law of This Case Was Established in *Faith Center*. . . . . . . . . . . . 7

            C.    The Issues Raised by Faith Center Were Conclusively Determined by the Ninth Circuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                1.    The Evidence Supports the Finding that the Antioch Library Meeting Room Is a Limited Public Forum. . . . . . . . . . . . . . . . 9

                2.    The Evidence Supports the Finding that Faith Center Held a Religious Worship Service . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                3.    Activities That Express a Religious Viewpoint Have Been Held in the Antioch Library Meeting Room . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        II.    SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE PLAINTIFFS' REMAINING CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            A.    General Rules for Summary Judgment Motions . . . . . . . . . . . . . . . . . . 12

            B.    The County's Meeting Room Use Policy Does Not Violate the Free Exercise Clause Because Faith Center Was, At Most, Only Inconvenienced. . . . . . . . 13

1                           1.     Free Exercise Clause Generally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2                           2.     The Use Policy Affects Only Faith Center's Operations. . . . . . . . . . . 13

3                           3.     The Use Policy's Purposes Are to Prevent the Meeting Room from Becoming a House of Worship and to Preserve Its Availability to the Entire Community . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.     The County's Meeting Room Use Policy Does Not Violate the Establishment Clause Because It Allows Religious Activities To Occur in the Library Meeting Room and Is Not Hostile to Religion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                           1.     Establishment Clause Generally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                           2.     The Meeting Room Is a Limited Public Forum Where Religious Activities Are Allowed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                           3.     The Meeting Room Use Policy is Not Hostile Toward Religion. . . . . . 16

                                    a.     The County Has Compelling Secular Purposes for Excluding Religious Services from Library Meeting Rooms. . . . . . . . . . 17

                                    b.     The Primary Effect of the Meeting Room Use Policy Cannot Be Construed As Sending a Message of Disapproval of Religion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                                    c.     Enforcement of the Use Policy Does Not Foster Excessive Entanglement with Religion. . . . . . . . . . . . . . . . . . . . . . . . . . 19

                           4.     The Use Policy Does Not Distinguish Between Religious Denominations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.     The County's Meeting Room Use Policy Does Not Violate the Equal Protection Clause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III.     IF JUDGMENT IS NOT ENTERED FOR DEFENDANTS ON ALL CLAIMS, THEN THE DEFENDANTS ARE ENTITLED TO ABSOLUTE OR QUALIFIED IMMUNITY ON ANY REMAINING CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.     THE COUNTY IS ENTITLED TO A PERMANENT INJUNCTION PROHIBITING PLAINTIFFS FROM USING THE LIBRARY MEETING ROOM FOR RELIGIOUS SERVICES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.     Summary Judgment Can Be Used to Grant a Permanent Injunction. . . . . . . . . 23

B.     Proposed Permanent Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES

UNITED STATES CONSTITUTION

United States Constitution, Amendment I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15

United States Constitution, Amendment XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


CASES

*Agostini v. Felton*, 521 U.S. 203, (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114 (9th Cir. 2002). . . 14, 16-18

*Anderson v. Creighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989). . . . . . . . . . . . . . . . . . . . . . . . 11

*Bronx Household of Faith v. Board of Education of the City of New York*, 331 F.3d 342 (2d. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brotherhood of Railroad Carmen v. Chicago & N.W. Ry. Co.*, 354 F.2d 786 (8th Cir. 1966). . . . . . . 23

*Campbell v. St. Tammany Parish Sch. Bd.*, 231 F.3d 937 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Charlton v. Estate of Charlton*, 841 F.2d 988 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Children of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . 11

*Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221 (9th Cir. 1990). . 13

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993). . . . . . . . . . . . 14-16

*Community House, Inc. v. City of Boise*, 490 F.3d 1041(9th Cir. 2007). . . . . . . . . . . . . . . . . . . 16, 19

*County of Allegheny v. ACLU*, 492 U.S. 573 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*DeNardo v. Murphy*, 781 F.2d 1345 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . 13

*Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872 (1990). . . . . . . . . . . . . . 13

*Everson v. Board of Educ.*, 330 U.S. 1 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Faith Center Church Evangelistic Ministries, et al. v. Federal D. Glover, et al.*, 480 F.3d 891 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 143 (2007). . . . . . . . . . . . . . . . . . . . . . . . 1, 2-3, 6-10, 14, 17, 19-21, 24

*Good News Club v. Milford Cen. Sch.*, 522 U.S. 98 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11,12

*Green v. City of Tucson*, 340 F.3d 891 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 11

*Hunt v. McNair*, 413 U.S. 734 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hunter v. Bryant*, 502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Intel Corp. v. Hartford Accident & Idem. Co.*, 952 F.2d 1551 (9th Cir. 1991). . . . . . . . . . . . . . . . 12

*Johnson v. Robison*, 415 U.S. 361 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*KDM v. Reedsport Sch. Dist.*, 196 F.3d 1046 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Kreimer v. Bureau of Police of the Town of Morristown*, 958 F.2d 1242 (3d. Cir. 1992). . . . . . . . . . 9

*Lakewood, Ohio Cong. of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303 (6th Cir), *cert. denied*, 464 U.S. 815 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Larson v. Valente*, 456 U.S. 228 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lemon v. Kurtzman*, 403 U.S. 602 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Locke v. Davey*, 540 U.S. 712 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Malley v. Briggs*, 475 U.S. 335 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*McGinley v. Houston*, 282 F. Supp.2d 1304 (M.D.Ala. 2003), aff'd 361 F.3d 1328 (11th Cir. 2004) . 17

*Miller v. Reed*, 176 F.3d 1202, (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Neinast v. Bd. of Trustees of Columbus Metropolitan Library*, 346 F.3d 585 (6th Cir. 2003). . . . . . . . 9

*Reynolds v. United States*, 98 U.S. 145(1879). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roemer v. Bd. of Pub. Works*, 426 U.S. 736 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Romer v. Evans*, 517 U.S. 620 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*, 515 U.S. 819 (1995). . . . . . . . . . . . 16, 18

*San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024 (9th Cir. 2004). . . . . . . . . . . . . . . 14

*Saucier v. Katz*, 533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Standard Oil Co. of Texas v. Lopeno Gas Co.*, 240 F.2d 504 (5th Cir. 1957. . . . . . . . . . . . . . . . . . 23

*Strout v. Albanese*, 178 F.3d 57 (1st Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626 (9th Cir. 1987). . . . . . . . . . . 12

*Tilton v. Richardson*, 403 U.S. 672 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Cote*, 51 F.3d 178 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION - C 04-3111 JSW

*United States v. Houser*, 804 F.2d 565 (9ᵗʰ Cir. 1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

*Vasquez v. Los Angeles County*, 487 F.3d 1246 (9ᵗʰ Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . 16-19

*Vernon v. City of Los Angeles*, 27 F.3d 1385 (9ᵗʰ Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 14, 16, 18, 19

*Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102 (9ᵗʰ Cir. 1988). . . . . . . . . . . . . . . . . . . . . . 22

STATUTES AND RULES

Federal Rules of Civil Procedure, Rule 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rules of Civil Procedure, Rule 65. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

OTHER AUTHORITIES

18B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, Section 4478.5 (2d ed. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**NOTICE OF MOTION AND CROSS-MOTION**

PLEASE TAKE NOTICE that pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants hereby move for summary judgment in their favor on all claims brought by Plaintiffs and for entry of a permanent injunction. This motion is set for hearing on November 7, 2008, at 9:00 a.m. in Courtroom 2 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California.

**RELIEF REQUESTED**

Defendants request that this Court:

1.     Enter judgment in favor of Defendants on Plaintiffs' free speech claim.

2.     Enter judgment in favor of Defendants on Plaintiffs' Free Exercise Clause, Establishment Clause, and Equal Protection Clause claims.

3.     Enter a permanent injunction authorizing Defendants to prohibit Plaintiffs from using the Antioch branch library meeting room for religious worship services in violation of the Contra Costa County Library meeting room use policy.

**GROUNDS FOR MOTION**

Defendants are entitled to summary judgment on all claims, and are entitled to entry of a permanent injunction, for the following reasons:

1.     The law of this case, established by the Ninth Circuit in *Faith Center Church Evangelistic Ministries, et al. v. Federal D. Glover, et al.*, 480 F.3d 891 (9th Cir. 2007), *cert. denied*, 128 S.Ct. 143 (2007), prohibits this Court from reconsidering the Ninth Circuit's ruling on Plaintiffs' free speech claim and requires entry of judgment in favor of Defendants on that claim.

2.     As a matter of law, Defendants' library meeting room use policy does not violate the Free Exercise Clause, the Establishment Clause, or the Equal Protection Clause of the United States Constitution.

3.     The Ninth Circuit directed this Court to enter a permanent injunction authorizing Defendants to prohibit Plaintiffs from using the meeting room of the Antioch branch library for religious services.

This motion is based upon this notice of motion and cross-motion, the memorandum of points and authorities set forth below, the declarations, evidence, pleadings and papers on file in this action, and such other and further evidence and authorities as the court may consider before deciding this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

In *Faith Center*, the Ninth Circuit declined to convert the meeting room of the County's Antioch library into a taxpayer-supported house of worship. The Ninth Circuit upheld the religious use provision of the County's library meeting room use policy, which excludes religious worship services from meeting rooms. The Supreme Court declined to review the Ninth Circuit's decision. Under the law of the case doctrine, the Ninth Circuit's holding is binding on this Court, and requires entry of judgment in favor of the County on Faith Center's free speech claim.

The Ninth Circuit's findings in *Faith Center* also conclusively determine the three remaining Constitutional claims, and require entry of judgment in favor of the County on those claims. Any ruling requiring the County to allow religious worship services in its library meeting room would force the County to violate the Establishment Clause, which prohibits the government from financing religious worship services.

## ISSUES TO BE DECIDED

1.      In *Faith Center*, the Ninth Circuit upheld the religious use provision of the County's library meeting room use policy by holding that prohibiting Faith Center's religious worship services from the Antioch library meeting room is a permissible exclusion of a category of speech that is meant to preserve the purpose behind the limited public forum. Does the law of this case prohibit this Court from revisiting Faith Center's free speech claim and require entry of judgment in favor of the County on that claim?

2.      Faith Center's free speech claim was brought in conjunction with its Establishment Clause, Free Exercise Clause, and Equal Protection Clause claims. Should summary judgment be entered in favor of the County on Faith Center's three remaining Constitutional claims?

3.     In *Faith Center*, the Ninth Circuit directed this Court, after soliciting the views of the parties, to enter a permanent injunction that allows the County to exclude religious worship services from the Antioch library meeting room and allows Faith Center to conduct activities in the meeting room that express a religious viewpoint.  What should the scope of the permanent injunction be?

## STATEMENT OF FACTS

### Contra Costa County Library Buildings and Policies

The Contra Costa Library has 25 community libraries, including a community library located in Antioch.  All 25 community libraries have a main area where books are kept.  Tables and chairs are located in these areas, which are set aside for reading, writing and quiet study.  These areas allow people to acquire knowledge and information and improve literacy.  Declaration of Anne Cain in Support of Cross-Motion for Summary Judgment and Entry of Permanent Injunction ("Cain Decl. II"), ¶ 3.  Of the 25 community libraries, 12 community libraries do not have a meeting room.  Cain Decl. II ¶ 4.  The Antioch library has a meeting room situated directly in the library.  Docket No. 30: Declaration of Anne Cain in Support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Cain Decl. I), ¶ 5.

The Contra Costa County Library is funded by several revenue sources.  The main source of library funding is property taxes.  Approximately 80 percent of the library's budget is from property taxes.  The remainder of the library's budget is from a combination of city and state funds, grants, fines, and fees.  All of the revenue from these sources are placed into a library revenue account in the County budget.  (Cain Decl. II, ¶ 7.)  The maintenance of all library buildings owned by the County, including the Antioch library and its meeting room, is funded from the library revenue account of the County budget.  Building maintenance that is funded from the library revenue account includes the cost of utilities, custodial services, painting, and the upkeep of each building's mechanical, electrical, and heating-ventilating-air conditioning systems. (Cain Decl. II, ¶ 8. )

The Antioch library is 11,000 square feet in size, including 900 square feet used as a meeting room.  (Cain Decl. II, ¶ 5.)  The entrance to the Antioch library meeting room is located off of the library's main entrance, and the meeting room shares a wall with the library staff break room. ( Docket No. 30: Cain Decl. I, ¶ 5; Docket No. 101: Declaration of Timothy D. Chandler in Support of

1  Plaintiffs' Motion for Summary Judgment (Chandler Decl."), Exhibit B, deposition of Greta Galindo

2  ("Galindo Depo."), Exhibit 13.)

3      The use of meeting rooms in library buildings owned by the County, including the Antioch

4  library meeting room, is governed by Resolution No. 2004/655.  (Docket No. 30: Cain Decl. I, Exhibit

5  A; Cain Decl. II, ¶ 9.)  Under the library meeting room use policy, non-profit and civic organizations,

6  for-profit organizations, schools and governmental organizations may use the meeting room space for

7  "meetings, programs, or activities of educational, cultural or community interest."  (Docket No. 30:

8  Cain Decl. I, Exhibit A.)  Non-profit organizations may use the meeting room free of charge for

9  meetings that are open to the general public, for which no admission fee is charged, and at which no

10  soliciting or selling is done.  (Docket No. 30: Cain Decl. I, Exhibit A).  Non-profit and civic

11  organizations, for-profit organizations, schools and governmental organizations may use the meeting

12  room space for a fee for meetings that are closed to the general public, for which an admission fee is

13  charged, or at which soliciting or selling is done. (Docket No. 30: Cain Decl. I, Exhibit A. ) Library

14  personnel are not authorized to grant exceptions to the meeting room use policy.  (Docket No. 101:

15  Chandler Decl., Exhibit C, deposition of Laura O'Donoghue ("O'Donoghue Depo."), p. 8, line 25, p.

16  9, lines 1-2.)

17      The library meeting room use policy also prohibits library meeting rooms from being used for

18  "religious services."  (Docket No. 30: Cain Decl. I, Exhibit A.)  Resolution No. 2004/655 was adopted

19  by the County Board of Supervisors on December 14, 2004.  (Docket No. 30: Cain Decl. I, Exhibit A).

20  Resolution No. 2004/655 replaced Resolution No. 93/525, which prohibited library meeting rooms

21  from being used for "religious services or activities."  (Docket No. 30: Cain Decl. I, ¶ 9.)

22      All groups requesting the use of a library meeting room must complete an application form for

23  each use.  (Docket No. 30: Cain Decl. I, Exhibit A.)  If an applicant wants to use a meeting room for a

24  religious service, the librarian reviewing the application will decide whether to allow the applicant to

25  use the room for that purpose based on what the applicant writes down on the application form.

26  (O'Donoghue Depo., 10:18-25; 11:1,)  County library personnel do not monitor library meeting rooms

27  while they are being used by applicants who are authorized to use the rooms.  (Cain Decl. II, ¶ 11;

28  Docket No. 101: Chandler Decl., Exhibit D, deposition of Lisa Loomis ("Loomis Depo."), 13:14;

Chandler Decl., Exhibit F, deposition of Jenna Biglow ("Biglow Depo.") 27:11.)

Many groups or organizations that are considering using a library meeting room will telephone that library to find out the requirements for using a meeting room before submitting a meeting room use application. Many of these groups or organizations are non-profit or civic organizations, for-profit organizations, schools, or governmental organizations that want to use a library meeting room for meetings that are closed to the general public, for which an admission fee is charged, or at which soliciting or selling is done. When informed that a fee is required, these groups and organizations often will not submit a use application because they do not want to pay a fee. The County library does not keep records of these telephone calls. ( Cain Decl. II, ¶ 10.) A fee charged under the County's library meeting room use policy does not cover the entire cost of processing a use application, and a fee charged under the County's library meeting room use policy does not cover any of the cost of maintaining library meeting rooms. (Cain Decl. II, ¶ 9.)

The County has allowed the Antioch library meeting room to be used numerous times by religious and other groups for activities and events that express a religious viewpoint, including Bible study. ( Chandler Decl., ¶¶ 24-33.)

**Faith Center's Meeting Room Use Applications and Religious Worship Service**

In May 2004, Faith Center submitted applications requesting to use the County's Antioch Branch Library meeting room on May 29, 2004 and July 31, 2004. (Docket No. 18: Amended Verified Complaint, Exhibits A and B.) Each application described the purpose of Faith Center's meetings as "Prayer, Praise and Worship Open to the Public, Purpose to Teach and Encourage Salvation thru Jesus Christ and Build up Community." (Docket No. 18: Amended Verified Complaint, Exhibits A and B.) A reservation for the May 29, 2004 meeting was marked on the Antioch branch library calendar. (Docket No. 30: Cain Decl. I, ¶ 10.)

Faith Center advertised its May 29, 2004 meeting with a flyer describing a "Women of Excellence Conference" sponsored by Faith Center Evangelistic Ministries Outreach. The flyer divided the day's activities into a "Wordshop" from 11:00 a.m. to 12:00 p.m., refreshments, and an afternoon "Praise and Worship" service with a sermon by Pastor Hopkins from 1:00 p.m. to 3:00 p.m. (Docket No. 31: Declaration of Danielle R. Merida in Support of Defendants' Opposition to Plaintiffs'

Motion for Preliminary Injunction ("Merida Decl."), Exhibit A.)

Faith Center used the Antioch library meeting room on May 29, 2004. Faith Center's morning session was a "Wordshop" that included a call to prayer, while its afternoon session was devoted expressly to "praise and worship." (Docket No. 100: Declaration of Dr. Hattie M. Hopkins in Support of Plaintiffs' Motion for Summary Judgment ("Hopkins Decl."), ¶ 8.)

During the afternoon "praise and worship" service, two library employees overheard loud noise coming from the meeting room. (Loomis Depo., 14:18-25, 15:1-5; Biglow Depo., 10:15-25.) The religious service ended, then the employees told Pastor Hopkins that the service created a noise problem. (Loomis Depo., 17:7-11; Biglow Depo., 17:11-17.)

On November 11, 2007, Faith Center applied to use the Antioch library meeting room for the following purpose: "Prayer, Praise, Wordshop, Purpose to Teach Scripture and Encourage Salvation thru Jesus to Build-Up this Community Overall." (Cain Decl. II, Exhibit A.) Faith Center's application to use the room on December 15, 2007 was granted. Faith Center was informed that it "may use the meeting room for any activity that does not violate the meeting room use policy, including activities that express a religious viewpoint." (Cain Decl. II, Exhibit B.)

## PROCEDURAL BACKGROUND

On July 30, 2004, Faith Center sued to enjoin Defendants from excluding Faith Center's proposed religious meetings on the basis of the "religious use" provision of the County's library meeting room use policy. Faith Center alleged the use policy violated the Free Speech, Free Exercise, and Establishment clauses of the First Amendment, and violated the Equal Protection Clause of the Fourteenth Amendment.

This Court granted Faith Center's motion for a preliminary injunction on May 23, 2005. (Docket No. 53.) The County appealed the preliminary injunction on June 17, 2005. Docket No. 65. The Ninth Circuit reversed in part and vacated in part this Court's order granting Faith Center's motion for a preliminary injunction, and remanded with instructions that this Court enter an injunction after soliciting the views of the parties. *Faith Center*, 480 F.3d at 918-19. Faith Center's petition for rehearing en banc was denied. *Id.* at 895. The United States Supreme Court denied Faith Center's petition for a writ of certiorari on October 1, 2007. 128 S.Ct. 143 (2007).

**ARGUMENT**

**I.   UNDER THE LAW OF THIS CASE, THE COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS AND TO A PERMANENT INJUNCTION**

**A.   General Principles of the Law of the Case Doctrine**

To promote finality, the "law of the case" doctrine holds that "the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The doctrine acts as a bar to issues that were "actually considered and decided by the first court." *Ibid.* The doctrine "applies to a court's explicit decisions as well as those issues decided by necessary implication." *Ibid.* A fully considered appellate ruling on an issue of law made on a preliminary injunction appeal is the law of the case for further proceedings in the trial court on remand and in any subsequent appeal. *See* 18B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2d ed. 2006). A trial court may not reconsider a question decided by an appellate court, whose rulings bind the lower court. *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986). Upon remand, an issue decided by an appellate court may not be reconsidered. *Ibid.*

**B.   The Law of This Case Was Established in *Faith Center***

In *Faith Center*, the Ninth Circuit upheld the religious use provision of the County's library meeting room use policy by holding that "prohibiting Faith Center's religious worship services from the Antioch meeting room is a permissible exclusion of a category of speech that is meant to preserve the purpose behind the limited public forum." *Faith Center*, 480 F.3d at 918. Under the law of the case doctrine, the holding is binding on this Court, as are the findings made by the Ninth Circuit in support of its holding.[1] The findings made by the Ninth Circuit also apply to Faith Center's remaining claims, and require entry of judgment in favor of the County on those claims.

The Ninth Circuit found that the Antioch library meeting room is a limited public forum. *Faith Center*, 480 F.3d at 908. The Ninth Circuit also found that Faith Center made a distinction between

---

[1] Faith Center misstates the Ninth Circuit's holding at pages 7 and 9 of its summary judgment motion. The Ninth Circuit did not hold that the County is entitled only to exclude "pure religious worship" from the meeting room. The discussion of "pure religious worship" at page 915 of *Faith Center* is not the holding of the case.

religious worship and virtually all other forms of religious speech when it separated its afternoon religious worship service from its morning activities. *Id.* at 918. The Ninth Circuit further found that the County's enforcement of its policy "to exclude religious worship services from the meeting room is reasonable in light of the forum's purpose." *Id.* at 908. The enforcement is reasonable for two reasons: first, "so that the Antioch forum is not transformed into an occasional house of worship;" and second, the County "reasonably could conclude that the controversy and distraction of religious worship within the Antioch Library meeting room may alienate patrons and undermine the library's purpose of making itself available to the whole community." *Id.* at 911.

In addition, the Ninth Circuit found that the County did not discriminate against Faith Center on the basis of Faith Center's religious viewpoint. *Faith Center*, 480 F.3d at 911, 914. Specifically, the Ninth Circuit held "that the exclusion of Faith Center's religious worship services from the Antioch Library meeting room is a permissible limitation on the subject matter that may be discussed in the meeting room, and . . . is not suppression of a prohibited perspective from an otherwise permissible topic." *Id.* at 911.

Finally, the Ninth Circuit found that the County's enforcement of its policy did not and will not foster an excessive government entanglement with religion. *Faith Center*, 480 F.3d at 917-18. The court noted that "the government can distinguish and exclude proselytizing religious speech to preserve the purpose for a limited forum," *Id.* at 917, but in this case there was no excessive entanglement because Faith Center itself distinguished between religious worship and other forms of religious speech. *Id.* at 917-18. All of these findings are binding on remand.

**C.     The Issues Raised by Faith Center Were Conclusively Determined by the Ninth Circuit**

Pages 8 through 21 of Faith Center's summary judgment motion revisit issues that were conclusively determined by the Ninth Circuit. The law of the case doctrine prohibits this Court on remand from reconsidering whether the library meeting room is a limited public forum or a designated public forum, whether there was any viewpoint discrimination, whether Faith Center's event was a religious worship service, or any other questions related to Faith Center's free speech claim. *See Houser*, 804 F.2d at 567. Moreover, the facts previously considered by this Court and the Ninth Circuit are binding on remand, because evidence received upon an application for a preliminary

1   injunction becomes part of the record on trial. Fed.R.Civ.P. 65(a)(2). But even if this Court were

2   authorized to revisit the issues raised by Faith Center, all of the evidence cited in Faith Center's

3   motion supports the Ninth Circuit's findings that the Antioch library meeting room is a limited public

4   forum and that the afternoon session of Pastor Hopkins' event was a religious worship service.

5       **1.**     **The Evidence Supports the Finding that the Antioch Library Meeting Room Is a**

6                  **Limited Public Forum**

7       In *Faith Center*, the Ninth Circuit found that the purpose of the Antioch library meeting room,

8   as a limited public forum, is to serve as a "common meeting space, an alternative to the community

9   lecture hall, the corporate boardroom, or the local Starbucks." *Faith Center*, 480 F.3d at 910. The

10   evidence cited at pages 5 through 7 of Faith Center's summary judgment motion, in fact, establishes

11   that the Antioch meeting room is the type of forum the Ninth Circuit said it is – a limited public forum

12   serving as a common meeting space. Between January 2003 and March 2008, the meeting room was

13   used approximately 1,200 times by a variety of groups.[2] (Chandler Decl., ¶ 11.) This means the

14   meeting room is used an average of 18 times per month. If the meeting room is available for use an

15   average of 434 hours per month, *see* Plaintiffs' Summary Judgment Motion, p. 20, fn. 14, and

16   assuming each meeting lasts two hours, then the meeting room is used an average of 36 hours per

17   month. This means the meeting room is used about 8 percent of the time it is available for use, which

18   is hardly the amount of use that would make a meeting room a designated public forum rather than a

19   limited public forum.[3] In finding that the meeting room is a limited public forum, the Ninth Circuit

20   distinguished between the meeting room and the rest of the library. *See Faith Center*, 480 F.3d at 910

21   (the "community at large has been invited to use the room," while the library itself is a place

22

23
24
25       [2] Faith Center's references to the KKK and NAMBLA at pages 2, 23, and 25 of its motion is rhetorically effective, but there is no evidence the County has ever allowed either group to use any of its library meeting rooms for any purpose. The County objects to these references as irrelevant and speculative.

26
27
28       [3] The Ninth Circuit's finding in *Faith Center* is consistent with other cases holding that libraries are limited public forums. *See, e.g., Neinast v. Bd. of Trustees of Columbus Metropolitan Library*, 346 F.3d 585, 591 (6th Cir. 2003), *Kreimer v. Bureau of Police of the Town of Morristown*, 958 F.2d 1242, 1259 (3d. Cir. 1992); *see also, e.g., Good News Club v. Milford Cen. Sch.*, 522 U.S. 98, 111 (2001) (public school facilities are limited public forums), *Campbell v. St. Tammany Parish Sch. Bd.*, 231 F.3d 937, 940 (5th Cir. 2000) (same), *Bronx Household of Faith v. Board of Education of the City of New York*, 331 F.3d 342, 351 (2d. Cir. 2003) (same).

dedicated to quiet, to knowledge, and to beauty, where the worthy missions of facilitating learning and cultural enrichment are fostered). None of Faith Center's evidence casts any doubt on the Ninth Circuit's conclusion that the library portion of the Antioch library is a place dedicated to aid in the acquisition of knowledge through reading, writing and quiet contemplation. *Ibid.*, citing cases.

The primary function of the Contra Costa County Library, including the Antioch library, is to serve as a venue for reading, writing and study. Not all community libraries of the Contra Costa County Library have meeting rooms, but all have a main area where books are kept, and tables and chairs set aside for reading, writing and quiet study, which allow people to acquire knowledge and information and improve literacy. (Cain Decl. II, ¶ 3.) Only 900 square feet of the Antioch library's 11,000 square feet is set aside as a meeting room. (Cain Decl. II, ¶ 4.) Setting aside 8 percent of a library building for community meetings does not transform a library into a facility that is something other than "a venue for reading, writing and quiet contemplation."

Moreover, contrary to Faith Center's assertions, the County has consistently enforced its meeting room use policy. There is no evidence, for example, that the County has failed to enforce the restriction prohibiting schools from using the meeting room as a regular part of the school's curriculum. *See Faith Center*, 480 F.3d at 909. The meeting room has been used by educational-related groups. (Chandler Decl., ¶¶ 34-50.) However, none of these groups used the room as a regular part of a school curriculum. (*See, e.g.*, Cain Depo., 23:18-25, 24:1-6.)

## 2. The Evidence Supports the Finding that Faith Center Held a Religious Worship Service

The evidence cited in Faith Center's motion also supports the Ninth Circuit's finding that the afternoon session of Pastor Hopkins' event was a religious worship service. The Ninth Circuit's finding was based on the distinction Faith Center drew in its flyer advertising its May 29, 2004 event. Faith Center's morning session was a "Wordshop" that included a call to prayer, while its afternoon session was devoted expressly to "praise and worship." *Faith Center*, 480 F.3d at 918. This distinction between the morning "Wordshop" and the afternoon "Praise and Worship" time is confirmed in Pastor Hopkins' declaration. (Docket No. 100: Declaration of Dr. Hattie M. Hopkins in Support of Plaintiffs' Motion for Summary Judgment ("Hopkins Decl."), ¶ 8.) The "praise and

worship" consisted of an opening group prayer, two religious songs ("When I See Jesus" and "Amazing Grace"), a sermon based on 2 Chronicles 20, and a closing group prayer. (Hopkins Decl., ¶¶ 10-17.) The opening prayer prepared attendees "mentally and spiritually to learn more from the Bible," the first song communicated to the attendees that they can derive hope, encouragement, and strength through a strong relationship with Jesus, the second song communicated to the attendees that God "will help us to overcome whatever problems we are facing" through God's unconditional love and acceptance, the sermon's message to attendees was that they must be able to effectively communicate with God "if we want to position ourselves for victory and overcome the problems in our lives and in our communities," and the closing prayer encouraged the attendees to continue "effectively communicating with God." (Hopkins Decl., ¶¶ 10-17. ) Both prayers, both songs, and the sermon each directly exhorted the attendees to a religious observance. *See Hills v. Scottsdale Unified Sch. Dist.*, 329 F.3d 1044, 1053 (9th Cir. 2003) (government can exclude proselytizing religious speech to preserve the purpose of a limited public forum). If Pastor Hopkins' "praise and worship" time in the afternoon was not a religious worship service, then nothing is, and the term "religious worship service" is meaningless.[4]

Contrary to Faith Center's assertion at page 11 of its motion, Pastor Hopkins' afternoon service event was different than the event in *Good News Club*. In *Good News Club*, the entire event was the teaching of morals and character from a religious viewpoint. *Good News Club,* 522 U.S. at 110. By contrast, the afternoon service was completely separate from the morning event, and the afternoon service was devoted entirely – and only – to praise and worship. (*See* Hopkins Decl., ¶¶ 10-17.) Only Faith Center's separate morning event – which was devoted to "instruction on how to pray fervent, effectual prayers that God hears and answers" – was like the event in *Good News Club*. ( *See* Hopkins Decl., ¶ 9).

---

[4] Appending impermissible activities to ones that are permissible within a forum does not transform the impermissible activities into a permissible type of speech. *See, e.g., Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474 (1989) (inclusion of presentations on "how to be financially responsible and how to run an efficient home" did not transform Tupperware party from "commercial" to "educational" speech); *Children of the Rosary v. City of Phoenix*, 154 F.3d 972, 981 (9th Cir. 1998) ("the [Supreme] Court has continued to reject attempts to evade a regulation by appending a message aimed at transforming the speech").

**3.     Activities That Express a Religious Viewpoint Have Been Held in the Antioch Library Meeting Room**

Finally, there is no evidence the County has engaged in viewpoint discrimination or is violating the Ninth Circuit's ruling. For example, contrary to Faith Center's assertion at pages 13 and 14 of its motion, the County has *not* prohibited "a sermon on what the Bible says about how to manage your money."[5] In fact, the County has allowed the Antioch library to be used numerous times by religious and other groups for activities and events that express a religious viewpoint, including Bible study. (Chandler Decl., ¶¶ 24-33.) These uses are entirely consistent with the Supreme Court's holding in *Good News Club*. Moreover, in 2007 Faith Center applied to use the Antioch library meeting room. The application did not indicate that worship would occur, and did not indicate that it would have separate sessions for "Wordshop" and "prayer and praise." (Cain Decl. II, Exhibit B.) The County Library granted Faith Center's use application, and informed Faith Center that it "may use the meeting room for any activity that does not violate the meeting room use policy, including activities that express a religious viewpoint." (Cain Decl. II, Exhibit C.)

**II.     SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS BECAUSE PLAINTIFFS' REMAINING CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW**

**A.     General Rules for Summary Judgment Motions**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the opposing party must show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Idem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Only disputes over facts that might affect the outcome of the

---

[5] There is no evidence anyone has applied to use the meeting room for a money management presentation based on Bible teachings. (*See* Cain Depo., p. 43:16-23; Galindo Depo., 11:10-23.)

suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

**B.      The County's Meeting Room Use Policy Does Not Violate the Free Exercise Clause Because Faith Center Was, At Most, Only Inconvenienced**

**1.      Free Exercise Clause Generally**

The Free Exercise Clause of the First Amendment provides that Congress shall make no law prohibiting the free exercise of religion. U.S. Const. amend. I. "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990). The clause prohibits the government from compelling affirmation of religious belief, punishing the expression of religious doctrines it believes to be false, imposing special disabilities on the basis of religious views or religious status, or lending its power to one or the other side in controversies over religious authority or dogma. *Ibid.*

**2.      The Use Policy Affects Only Faith Center's Operations**

A law or regulation does not violate the Free Exercise Clause just because it affects a religious organization's operation. *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1279 (9th Cir. 1982). Courts will not find a Free Exercise Clause violation where compliance with the challenged regulation makes the practice of one's religion more difficult or expensive, but the regulation is not inherently inconsistent with the litigant's beliefs. *Christian Gospel Church, Inc. v. City and County of San Francisco*, 896 F.2d 1221, 1224 (9th Cir. 1990) (denial of use permit imposes burden of convenience and expense, but minimal burden on religious practice); *see also Lakewood, Ohio Cong. of Jehovah's Witnesses, Inc. v. City of Lakewood, Ohio*, 699 F.2d 303, 306 (6th Cir), *cert. denied*, 464 U.S. 815 (1983) (holding that inconvenient economic burdens on religious freedom do not rise to a constitutionally impermissible infringement of free exercise). At most, Faith Center was only inconvenienced by the County's enforcement of its library meeting room use policy. Faith Center is free to hold religious services in places other than the Antioch library meeting room.

**3.     The Use Policy's Purposes Are to Prevent the Meeting Room from Becoming a House of Worship and to Preserve Its Availability to the Entire Community**

Faith Center's Free Exercise Clause claim was brought in conjunction with its free speech claim, making its claim a "hybrid claim." *See San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024, 1031 (9th Cir. 2004). In a hybrid claim, a Free Exercise claim is analyzed under the rational basis test after judgment is granted in favor of the defendant on the plaintiff's companion claims. *Id.* at 1032-33.

Under the rational basis test, a law is constitutional if it is rationally related to a legitimate government interest. *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999). In *Faith Center*, the Ninth Circuit found there is a rational basis for excluding religious services from the library meeting room. *Faith Center*, 480 F.3d at 908. The County's enforcement of its policy is and was reasonable in order to prevent the Antioch library meeting room from being transformed into an occasional house of worship, and to preserve the library's purpose of making itself available to the whole community. *Id.* at 911.[6]

The meeting room use policy also survives strict scrutiny. *See Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1123 (9th Cir. 2002). Because the policy affects only Faith Center's operations, it does not impose a substantial burden on a tenant or belief that is central to the Christian faith. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1393 (9th Cir. 1994); *Strout v. Albanese*, 178 F.3d 57, 65 (1st Cir. 1999). As the Ninth Circuit held, the County has a compelling governmental interest in preserving the library meeting room as a limited public forum. *Faith Center*, 480 F.3d at 918-19. Moreover, the County's meeting room policy is narrowly tailored. The policy only excludes religious services from the library meeting room. It does not exclude religious activities from the meeting room. The public is free to use the meeting room to conduct activities in the meeting room that express a religious viewpoint. *Faith Center*, 480 F.3d at 918-19. These activities have occurred several times in the Antioch library meeting room.

The primary case cited by Faith Center at page 22 of its motion, *Church of the Lukumi Babalu*

---

[6] The Ninth Circuit also held the County had a compelling reason for excluding religious services – to preserve the meeting room as a limited public forum. *Faith Center*, 480 F.3d at 918-19.

1  *Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), does not apply.  There is no evidence of any

2  substantial animus on the County's part that motivated the law in question.  *See Church of the Lukumi*

3  *Babalu Aye*, 508 U.S. at 543 (evidence of animus against Santeria worship); *KDM v. Reedsport Sch.*

4  *Dist.*, 196 F.3d 1046, 1051 (9th Cir. 1999); *Strout*, 178 F.3d at 65.  The object of the County's policy is

5  to preserve the room as a limited public forum and to avoid an Establishment Clause violation, which

6  will certainly occur if the County is forced to provide a taxpayer-funded meeting room free of charge

7  to Faith Center for it to use as an occasional house of worship.

8  **C.**     **The County's Meeting Room Use Policy Does Not Violate the Establishment Clause**

9         **Because It Allows Religious Activities To Occur in the Library Meeting Room and Is Not**

10        **Hostile to Religion**

11        **1.     Establishment Clause Generally**

12        The Establishment Clause of the First Amendment provides that "Congress shall make now

13  law respecting the establishment of religion."  U.S. Const., Amend. I.  The U.S. Supreme Court has

14  articulated the boundaries of the Establishment Clause's coverage:

15        "Neither a state nor the Federal Government can set up a church.  Neither can pass laws

16        which aid one religion, aid all religions, or prefer one religion over another.  Neither

17        can force nor influence a person to go or to remain away from church against his will or

18        force him to profess a belief or disbelief in any religion.  No person can be punished for

19        entertaining or professing religious beliefs or disbeliefs, for church attendance or non-

20        attendance.  No tax in any amount, large or small, can be levied to support any religious

21        activities or institutions, whatever they may be called, or whatever form they may adopt

22        to teach or practice religion."

23  *Everson v. Board of Educ.*, 330 U.S. 1, 15-16 (1947), quoting *Reynolds v. United States*, 98 U.S. 145,

24  164 (1879).  The Establishment Clause means that government may not promote or affiliate itself with

25  any religious doctrine or organization, may not discriminate among persons on the basis of their

26  religious beliefs and practices, may not delegate a governmental power to a religious institution, and

27  may not involve itself too deeply in such an institution's religious affairs.  *County of Allegheny v.*

28  *ACLU*, 492 U.S. 573-590-91 (1989).  The central issue in an Establishment Clause claim is whether a

---

DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND PERMANENT
INJUNCTION  - C 04-3111 JSW                                                           15

1  governmental act impermissibly endorsed or disapproved of religion.  *Vasquez v. Los Angeles County*,

2  487 F.3d 1246, 1254 (9th Cir. 2007).

3        **2.**     **The Meeting Room Is a Limited Public Forum Where Religious Activities Are**

4               **Allowed**

5       Making a limited public forum available to religious groups, where they may speak about

6  topics from a religious viewpoint, does not violate the Establishment Clause.  *Rosenberger v. Rector &*

7  *Visitors of the Univ. of Virginia*, 515 U.S. 819, 842-43 (1995).  The County has allowed the Antioch

8  library meeting room to be used numerous times by religious and other groups for activities and events

9  that express a religious viewpoint, including Bible study.  (Chandler Decl., ¶¶ 24-33.)  The County

10  also allowed Faith Center to use the meeting room in late 2007 for "any activity that does not violate

11  the meeting room use policy, including activities that express a religious viewpoint."  (Cain Decl. II,

12  Exhibit C.)

13        **3.**     **The Meeting Room Use Policy is Not Hostile Toward Religion**

14       The Establishment Clause applies not only to official condonement of a particular religion or

15  religious belief, but also to official disapproval or hostility towards religion.  *Vernon*, 27 F.3d at 1396,

16  citing *Church of the Lukumi Babalu Aye*, 508 U.S. at 532.  The government neutrality required under

17  the Establishment Clause is thus violated as much by government disapproval of religion as it is by

18  government approval of religion.  *Vernon,* 27 F.3d at 1396.

19       In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court established the three-part

20  "*Lemon* test" for analyzing government conduct under the Establishment Clause.  *See Am. Family*

21  *Ass'n*, 277 F.3d at 1121.  Under the *Lemon* test, a government act is consistent with the Establishment

22  Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor

23  disapproves of religion; and (3) does not foster excessive governmental entanglement with religion.

24  *Vasquez*, 487 F.3d at 1255, citing *Lemon*, 403 U.S. at 612-613.[7]

25

26

27      [7]  The Supreme Court refined the *Lemon* test in *Agostini v. Felton*, 521 U.S. 203, 222-23, 234
(1997), by folding the "excessive entanglement" inquiry into, and setting out revised criteria for, the

28  "effect" prong.  See *Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1055 (9th Cir. 2007).  But
it does not appear the *Lemon-Agostini* test applies in a hostility case.  *See Vasquez*, 487 F.3d at 1255
(applying the *Lemon* test).

a.   **The County Has Compelling Secular Purposes for Excluding Religious Services from Library Meeting Rooms**

The purpose prong of the *Lemon* test asks whether the government's actual purpose is to endorse or disapprove of religion. *Am. Family Ass'n,* 277 F.3d at 1121.  A practice will stumble on the purpose prong only if it is motivated only by a wholly impermissible purpose. *Ibid.*  The analysis under this prong focuses only on purpose; the reviewing court does not question the propriety of the means to achieve that purpose or whether the defendants were correct or even reasonable in the assumptions underlying their actions. *Ibid.*  Moreover, the reviewing court must be reluctant to attribute unconstitutional motives to government actors in the face of a plausible secular purpose. *Ibid.*

The County has two compelling purposes for excluding religious services from its library meeting rooms.  First, as the Ninth Circuit held, the County has a compelling governmental interest in preserving the meeting room as a limited public forum. *Faith Center*, 480 F.3d at 918-19.

The second compelling reason for excluding religious services from library meeting rooms is to avoid an Establishment Clause violation.  It is well established that governmental actions taken to avoid potential Establishment Clause violations have a valid secular purpose. *Vasquez,* 487 F.3d at 1255.  Without this rule, Establishment Clause jurisprudence would be unworkable.  In *Vasquez*, the County of Los Angeles removed the Christian cross from its county seal.  According to the plaintiff, the removal of the cross from the seal conveyed a message of hostility to the Christian religion, thus violating the Establishment Clause.  The Ninth Circuit disagreed, holding that the plaintiff's Establishment Clause claim was without merit.  "'For this court ... to hold that the removal of ... objects to cure an Establishment Clause violation would itself violate the Establishment Clause would ... result in an inability to cure an Establishment Clause violation and thus totally eviscerate the [E]stablishment [C]lause.'" *Id*. at 1256, n.8, quoting *McGinley v. Houston*, 282 F. Supp.2d 1304, 1307 (M.D.Ala. 2003), aff'd 361 F.3d 1328 (11th Cir. 2004) (ellipsis and alterations in original).

Here, allowing religious services – as distinguished from religious activities or speech from a religious viewpoint – in the library meeting room would violate the Establishment Clause, because the County would be providing a form of governmental financial support for religious services.  The

provision of a meeting room involves governmental expenditure, if only in the form of electricity, heating and cooling, and maintenance costs. *See Rosenberger*, 515 U.S. at 843. "[I]f the State pays a church's bills it is subsidizing it, and we must guard against this abuse." *Id.* at 844; *see also Tilton v. Richardson*, 403 U.S. 672, 683 (1971) (provision that federally subsidized building cannot be used for sectarian or religious worship for 20 years is invalid because nothing prohibits building from being converted into a chapel at the end of the 20-year period); *Roemer v. Bd. of Pub. Works*, 426 U.S. 736, 760-61 (1976) (upholding program of direct state financial aid to private colleges and universities, including religious ones, because there was a statutory prohibition against use of funds for sectarian purposes); *Hunt v. McNair*, 413 U.S. 734, 744-45 (1973) (upholding program of state aid to colleges and universities, including religious ones, to finance construction because funds were not allowed to be used for the construction of religious facilities).

In this case, requiring the County to allow religious services in its library meeting room would itself be a violation of the Establishment Clause, because the County would be forced to provide financial support for Faith Center's religious services. The maintenance of the Antioch library and its meeting room is funded primarily by property taxes. (Cain Decl. II, ¶¶ 8-9.) To hold that the prohibition of religious services from the library meeting room would violate the Establishment Clause would result in an conundrum that would "totally eviscerate" the Establishment Clause. *See Vasquez,* 487 F.3d at 1256, n.8.

**b.    The Primary Effect of the Meeting Room Use Policy Cannot Be Construed As Sending a Message of Disapproval of Religion**

The second prong of the *Lemon* test prohibits government action that has the principal or primary effect of advancing or disapproving religion. *Am. Family Ass'n,* 277 F.3d at 1122. In a hostility case, a court must analyze whether it is objectively reasonable for the government action to be construed as sending primarily a message of disapproval of religion. *Vernon,* 27 F.3d at 1398. The effect prong is analyzed from the point of view of a reasonable observer who is informed and familiar with the history of the government practice at issue. *Vasquez,* 487 F.3d at 1256.

In this case, the primary message sent by the County is not disapproval of Faith Center's religious beliefs. A reasonable observer would not view the County's prohibition of religious services

from the library meeting room as an act of hostility toward religion. Rather, a reasonable observer who is familiar with the purpose of libraries generally and library meeting rooms in particular would view the prohibition as the County's effort to preserve the meeting room as a limited public forum and to preserve "the library's primary function as a venue for reading, writing and quiet contemplation." *Faith Center*, 480 F.3d at 910.

A reasonable observer would also view the County's prohibition of religious services from the library meeting room as an effort to ensure the County's compliance with the Establishment Clause, not as an act hostile to religion. In *Vasquez*, the Ninth Circuit held that a reasonable observer would not view the removal of the cross from the Los Angeles County seal as an act of hostility toward religion. *Vasquez,* 487 F.3d at 1257. Rather, the court in *Vasquez* held that a reasonable observer would view the cross removal as an effort to restore Los Angeles County's neutrality toward religion and ensure its continued compliance with the Establishment Clause. *Ibid.*

c. **Enforcement of the Use Policy Does Not Foster Excessive Entanglement with Religion**

Whether government action excessively entangles government with religion is the final prong of the *Lemon* test. *Vernon,* 27 F.3d at 1389. Routine regulatory interaction that involves no inquiries into religious doctrine, no detailed monitoring, and no close administrative contact between secular and religious bodies does not violate the nonentanglement command. *KDM*, 196 F.3d at 1051. Routine government oversight to ensure that public funding is not used for religious purposes is not excessive entanglement. *Community House*, 490 F.3d at 1056. Entanglement must be excessive before it runs afoul of the Establishment Clause. *Ibid.* Monitoring does not constitute excessive entanglement. *Ibid.* Administrative entanglement typically involves comprehensive, discriminating, and continuing state surveillance of religion. *Vernon,* 27 F.3d at 1389.

The County does not excessively entangle itself with religion. County library personnel do not monitor library meeting rooms while they are being used by applicants who are authorized to use the rooms. (Cain Decl. II, ¶ 11; Loomis Depo.,13:14; Biglow Depo., 27:11.) In this case, as the Ninth Circuit found, the County's enforcement of its policy against Faith Center did not foster an excessive government entanglement with religion because Faith Center itself distinguished between religious

worship and other forms of religious speech. *Faith Center*, 480 F.3d at 917-18.

In general, the instant case is not the type of case where the Supreme Court has found government hostility toward religion. *See Locke v. Davey*, 540 U.S. 712, 720 (2004). This is not a case where the government seeks to impose criminal or civil sanctions on Faith Center's religious services or rites. *Ibid.* Nor is it a case where the government attempts to deny Faith Center officials the right to participate in the political affairs of the community by, for example, prohibiting Faith Center officials from running for office. *Ibid.* Nor is it a case where the government attempts to require Faith Center members to choose between their religious beliefs and receiving a government benefit, such as unemployment compensation. *Ibid.* Rather, as the Ninth Circuit held, the County seeks to preserve the library meeting room as a limited public forum. *Faith Center*, 480 F.3d at 909. Just as the County does not allow schools to use the meeting room for instructional purposes as a regul, the County does not allow religious churches or organizations to use the meeting room for church services. Faith Center is free to use the meeting room for expressive activity where topics are discussed from a religious viewpoint. By allowing this expressive activity to occur, the County is not hostile toward religion.

### 4. The Use Policy Does Not Distinguish Between Religious Denominations

The library meeting room use policy does not impermissibly distinguish between theistic and non-theistic religions, contrary to Faith Center's assertion at page 25 of its motion. The policy is denominationally neutral. *See Larson v. Valente*, 456 U.S. 228, 246 (1982). The use policy prohibits meeting rooms from being used for "religious services."[8] If a religious group, theistic or non-theistic, wants to use a library meeting room for an activity that expresses a religious viewpoint, it can. If a religious group, theistic or non-theistic, wants to use the meeting room for a religious worship service, it cannot. Even Judge Bybee acknowledged that non-theistic religious groups conduct religious services. *Faith Center*, 480 F.3d at 901 (Bybee, J., dissenting from denial of rehearing en banc).[9]

---

[8] As noted above, the Ninth Circuit did not hold that the County is entitled only to exclude "pure religious worship" from the meeting room.

[9] Judge Bybee's assertion that a Buddhist group would not identify its activities as worship is simply wrong. (*See* http://www.bbc.co.uk/religion/religions/buddhism/customs/worship_1.shtml (last visited Sept. 23, 2008) ("There are as many forms of Buddhist worship as there are schools of Buddhism - and there are many of those")

**D.    The County's Meeting Room Use Policy Does Not Violate the Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike.  *Green v. City of Tucson*, 340 F.3d 891, 896 (9th Cir. 2003).

The Free Exercise Clause provides the primary framework for assessing religious discrimination claims.  *Locke,* 540 U.S. at 720 n. 3.  If a challenged program comports with the Free Exercise Clause, that conclusion ends the religious discrimination analysis, and rational basis scrutiny applies to any further equal protection inquiry.  *Ibid.*; *see also Johnson v. Robison*, 415 U.S. 361, 375 n. 14 (1974) (once a law is found to be valid with respect to the free exercise right, there is "no occasion to apply to the challenged classification a standard of scrutiny stricter than the traditional rational-basis test" in addressing an equal protection claim).  Under rational basis review, a statute will be upheld if it is rationally related to a legitimate governmental purpose.  *Romer v. Evans*, 517 U.S. 620, 631 (1996).

As noted above, the County's decision to prohibit Faith Center from conducting religious worship services in the library meeting room was reasonable, both to avoid transforming the meeting room into an occasional house of worship and to avoid alienating patrons and undermining the library's purpose of making itself available to the whole community.  *Faith Center*, 480 F.3d at 911.

**III.    IF JUDGMENT IS NOT ENTERED FOR DEFENDANTS ON ALL CLAIMS, THEN THE DEFENDANTS ARE ENTITLED TO ABSOLUTE OR QUALIFIED IMMUNITY ON ANY REMAINING CLAIMS**

Absolute immunity applies to a government official's actions in the course of fulfilling his or her legislative, executive, or prosecutorial duties.  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Absolute immunity does not require the official to have acted reasonably or in accordance with clearly established law.  *Ibid*.  Here, defendants Glover, DeSaulnier, Gioia, Greenberg and Uilkema are all entitled to absolute immunity.  As members of the Board of Supervisors, they approved the library use policy in their legislative capacity.[10]

---

[10]  Defendants DeSaulnier and Greenberg are no longer on the Board of Supervisors.

Qualified immunity generally protects government officials in the course of performing the discretionary duties of their offices. *Harlow*, 457 U.S. at 818. Qualified immunity shields officials for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Ibid.* The doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine is an immunity from suit rather than a mere defense to liability. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

In evaluating a qualified immunity claim, a court must first determine if, as a matter of law and taken in the light most favorable to the party asserting the injury, the facts alleged show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). If so, defendants are immune if they can show that the right at issue was not "clearly established." *Ibid*. The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 201. For the law to be clearly established, the "contours of the right" must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 195-95. Officials are not presumed to have "the same kind of legal scholarship normally associated with law professors and academicians." *Walnut Properties, Inc. v. City of Whittier*, 861 F.2d 1102, 1113 (9th Cir. 1988).

Here, defendants Cain, Chan, O'Donoghue and Sweeten are entitled to qualified immunity.[11] It is reasonable to assume that a librarian would believe that the Constitution says that the separation of church and state requires excluding church services from a government meeting room. Moreover, as the Ninth Circuit has acknowledged, Establishment Clause jurisprudence can be confusing. *Community House, Inc.*, 490 F.3d at 1055 fn. 8.

---

[11] Sweeten is no longer County Administrator and is no longer employed by the County.

**IV.** **THE COUNTY IS ENTITLED TO A PERMANENT INJUNCTION PROHIBITING PLAINTIFFS FROM USING THE LIBRARY MEETING ROOM FOR RELIGIOUS SERVICES**

**A.** **Summary Judgment Can Be Used to Grant a Permanent Injunction**

Summary judgment may be used to grant a permanent injunction when the material facts are undisputed. *DeNardo v. Murphy*, 781 F.2d 1345, 1347 (9th Cir. 1986); *see also Brotherhood of Railroad Carmen v. Chicago & N.W. Ry. Co.*, 354 F.2d 786 (8th Cir. 1966), *Standard Oil Co. of Texas v. Lopeno Gas Co.*, 240 F.2d 504 (5th Cir. 1957). No evidentiary hearing is required for the issuance of a permanent injunction where there are no triable issues of material fact. *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988).

**B.** **Proposed Permanent Injunction**

The County proposes the following permanent injunction:

"Pursuant to the holding of the Ninth Circuit Court of Appeals in *Faith Center Church Evangelistic Ministries, et al. v. Federal D. Glover, et al.*, 480 F.3d 891 (2007), Plaintiffs Faith Center Church Evangelistic Ministries and Hattie Hopkins ("Plaintiffs") are enjoined from using the meeting room in the Antioch Branch of the Contra Costa County Library system for religious worship services in violation of the "Religious Use" provision of the library meeting room use policy adopted pursuant to Contra Costa County Resolution No. 2004/655, entitled "In the Matter of Adopting a Policy for the Use of Meeting Rooms in Libraries" (hereafter "Library Meeting Room Use Policy").

Upon application to and authorization by the Contra Costa County Library, Plaintiffs may use the meeting room in the Antioch Branch of the Contra Costa County Library system for any use not prohibited by the Library Meeting Room Use Policy, including but not limited to activities that express a religious viewpoint. Defendants may require Plaintiffs to certify that the activity or activities that will be conducted by Plaintiffs in the Antioch Branch library meeting room will not constitute a religious worship service under the

tenets, beliefs, and practices of Plaintiffs' church, religious sect, religious
organization, or faith group."

The permanent injunction proposed above complies with the Ninth Circuit's instructions on remand. It allows the County to exclude religious worship services while also allowing Faith Center to conduct activities in the meeting room that express a religious viewpoint. *Faith Center*, 480 F.3d at 918-19. The proposed injunction also avoids the problem of excessive entanglement by authorizing the County to require Faith Center to self-certify that its activity will not constitute a religious worship service. Although the Ninth Circuit expressed no opinion on self-certification by meeting room applicants, *see* 480 F.3d at 919 n. 19, the court found that "[r]eligious worship services can be distinguished from other forms of religious speech by the adherents themselves." *Faith Center*, 480 F.3d at 918.

## CONCLUSION

The County respectfully requests that this Court enter the permanent injunction proposed above. The County also respectfully requests that this Court enter judgment in favor of the County on all of Faith Center's claims.

DATED: September 26, 2008        SILVANO B. MARCHESI, County Counsel

By: /s/ _____
      THOMAS L. GEIGER
      Deputy County Counsel
      Attorneys for Defendants