ALLIANCE DEFENSE FUND
BENJAMIN W. BULL
Arizona State Bar No. 009940
GARY S. McCALEB (admitted *pro hac vice*)
Arizona State Bar No. 018848
15100 North 90th Street
Scottsdale, AZ 85260
Phone: (480) 444-0020; Fax: (480) 444-0028

ALLIANCE DEFENSE FUND
TIMOTHY D. CHANDLER
California State Bar No. 234325
101 Parkshore Dr., Suite 100
Folsom, CA  95630
Phone: (916) 932-2850; Fax: (916) 932-2851

LAW OFFICES OF TERRY L. THOMPSON
TERRY L. THOMPSON
California State Bar No. 199870
P.O. Box 1346
Alamo, CA 94507
Phone: (925) 855-1507; Fax: (925) 820-6034
(designated local counsel)

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAITH CENTER CHURCH EVANGELISTIC MINISTRIES, et al., <br><br>      Plaintiffs, <br><br> v. <br><br> FEDERAL D. GLOVER, et al., <br><br>      Defendants. | CASE NO. C-04-3111 JSW <br><br> **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> **Hearing Date: Friday, November 7, 2008** <br> **Hearing Time: 9:00 a.m.** |

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

i

Dockets.Justia.com

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iv

Memorandum of Points and Authorities .................................................................. 1

Introduction ............................................................................................................ 1

Summary of Argument ........................................................................................... 1

Argument ............................................................................................................... 3

I.   The County misapprehends the general rule that preliminary injunction decisions are not the law of the case ............................................................................................................... 3

II.  The County fails to show how its ban on religious services is consistent with the Ninth Circuit's preliminary injunction decision and other controlling free speech law .................. 5

  A.  The County continues to draw its own lines between religious worship and other forms of religious speech, which the Ninth Circuit said it is not competent to do ........ 6

  B.  Contrary to the County's interpretation, the Ninth Circuit decision does not allow the County to bar any meeting that it labels as a "religious worship service" .............. 6

  C.  The record rebuts the County's claim that its ban on Faith Center's meetings is viewpoint neutral ................................................................................................ 8

  D.  The County presents no evidence refuting that the Antioch Library meeting room is a designated public forum ....................................................................... 9

  E.  The County has not articulated a compelling interest that is furthered by its ban on religious services ............................................................................................. 12

    1.  Preserving a limited public forum is not an interest of the highest order .......... 13

    2.  Allowing religious services equal access to a public forum does not violate the Establishment Clause ................................................................................... 13

  F.  The County has failed to show that its ban on religious services is reasonable in light of the purpose of the forum .......................................................................... 14

III. The County applies the wrong standard for free exercise claims ......................... 16

  A.  Faith Center does not have to show a substantial burden on its religious exercise ..... 16

  B.  Faith Center does not have to prove animus to succeed on its free exercise claim ..... 18

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

ii

C.   Imposing religiously-based restrictions on access to a public forum triggers the Free Exercise Clause's protection ....................................................................18

IV.  The County's ban on religious services is impermissibly hostile toward religion under the Establishment Clause ....................................................................19

V.   The County misconstrues Faith Center's equal protection claim ........................................21

VI.  Despite the County's claim for immunity, Faith Center is entitled to all of its requested relief ....................................................................21

A.   Absolute immunity only protects against individual-capacity claims for damages ....21

B.   The County is not entitled to qualified immunity, which also only protects against individual-capacity claims for damages ....................................................................22

VII. The County has no grounds to ask for an injunction against Faith Center ...........................23

Conclusion ....................................................................23

Faith Center v. Glover – Reply Memorandum in Support of Plaintiffs' Motion For Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment – C-04-3111 JSW

iii

# TABLE OF AUTHORITIES

**Cases**

*American Friends Serv. Committee Corp. v. Thornburgh*,
    951 F.2d 957 (9th Cir.1991) ...........................................................17

*Anderson v. Creighton*,
    483 U.S. 635 (1987).......................................................................22

*Axson-Flynn v. Johnson*,
    356 F.2d 1277 (10th Cir. 2004) .....................................................23

*Ball v. Massanari*,
    254 F.3d 817 (9th Cir. 2001) .........................................................21

*Bd. of Educ. of Westside Cmty. Schs. v. Mergens*,
    496 U.S. 226 (1990).......................................................................20

*Boy Scouts of America, South Fla. Council v. Till*,
    136 F. Supp. 2d 1295 (S.D. Fla. 2001) ......................................9-10

*Brandon v. Holt*,
    469 U.S. 464 (1985).......................................................................23

*Bronx Household of Faith v. Bd. of Educ. of the City of New York*,
    331 F.3d 342 (2d. Cir. 2003)..........................................................11

*Bronx Household of Faith v. Bd. of Educ. of the City of New York*,
    492 F.3d 89 (2d Cir. 2007).......................................................11, 16

*Brotherhood of Railroad Carmen v. Chicago & N.W. Ry. Co.*,
    354 F.2d 786 (8th Cir. 1966) .........................................................23

*Brown v. Borough of Mahaffey*,
    35 F.3d 846 (3d Cir. 1994).............................................................17

*Campbell v. St. Tammany Parish Sch. Bd.*,
    231 F.3d 937 (5th Cir. 2000). ........................................................11

*Christian Gospel Church, Inc. v .City and County of San Francisco*,
    896 F.2d 1221 (9th Cir. 1990) .......................................................17

*Church of the Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993).................................................................12, 17

*Church of the Rock v. City of Albuquerque*,
    84 F.3d 1273 (10th Cir. 1996) .......................................................14

*Citizens for Community Values v. Upper Arlington Public Library Bd. of Trustees.*
    2008 WL 3843579 (S.D. Ohio 2008)..........................................8, 11

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

iv

*City Council of Los Angeles v. Taxpayers for Vincent,*
    466 U.S. 789 (1984) ........................................................................................15

*Colorado Christian Univ. v. Weaver,*
    534 F.3d 1245 (10th Cir. 2008) ....................................................................20

*Concerned Women for America, Inc. v. Lafayette County,*
    883 F.2d 32 (5th Cir. 1989) ..........................................................................11

*Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*
    473 U.S. 788 (1985)................................................................................4, 10, 15

*Denardo v. Murphy,*
    781 F.2d 1345 (9th Cir. 1986) ......................................................................23

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.,*
    196 F.3d 958, 965 (9th Cir. 1999) ..................................................................9

*EEOC v. Pacific Press Publishing Ass'n,*
    676 F.2d 1272 (9th Cir. 1982) ......................................................................17

*Elder v. Holloway,*
    510 U.S. 510 (1994) ......................................................................................22

*Employment Div., Dept. of Human Resources of Or. v. Smith,*
    494 U.S. 872, 879 (1990)........................................................................2, 16, 17

*Fairfax Covenant Church v. Fairfax County Sch. Bd.,*
    17 F.3d 703 (4th Cir. 1994) ....................................................................14, 19

*Faith Center Church Evangelistic Ministries v. Glover,*
    2005 WL 1220947 (N.D. Cal. 2005) ......................................................13, 20

*Faith Center Church Evangelistic Ministries v. Glover,*
    480 F.3d 891 (9th Cir. 2006) ................................................................ *passim*

*Flores v. Morgan Hill Unified Sch. Dist.,*
    324 F.3d 1130 (9th Cir. 2003) ......................................................................22

*Fowler v. Rhode Island,*
    345 U.S. 67 (1953)..........................................................................................21

*Fraternal Order of Police Lodge No. 12 v. City of Newark,*
    170 F.3d 359 (3d Cir. 1999) ..........................................................................19

*Fry v. Melaragno,*
    939 F.2d 832 (9th Cir. 1991) ........................................................................21

*Gentala v. City of Tucson,*
    213 F.3d 1055 (9th Cir. 2000) ...................................................................7, 13

*Good News Club v. Milford Central Sch.,*
    533 U.S. 98 (2001)..........................................................2, 5, 7, 11, 14, 20

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

v

*Gregoire v. Centennial Sch. Dist.*,
   907 F.2d 1366 (3d Cir. 1990)................................................12, 14

*Hansen v. Ann Arbor Public Schs.*,
   293 F. Supp. 2d 780 (E.D. Mich. 2003).................................2, 21

*Hartmann v. Stone*,
   68 F.3d 973 (6th Cir. 1995) .............................................17

*Hawley v. City of Cleveland*,
   24 F.3d 814 (6th Cir. 1994) .............................................14

*Hopper v. City of Pasco*,
   241 F.3d 1067 (9th Cir. 2001) ...........................................14

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
   505 U.S. 672 (1992)......................................................5

*KDM v. Reedsport School District*,
   196 F.3d 1046 (9th Cir. 1999) ...........................................18

*Kentucky v. Graham*,
   473 U.S. 159 (1985)......................................................21

*Kreimer v. Bureau of Police of the Town of Morrison*,
   958 F.2d 1242 (3d Cir. 1992)..........................................10-11

*Kreisner v. City of San Diego*,
   1 F.3d 775 (9th Cir. 1993) ...........................................18, 19

*Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood*,
   699 F.3d 303 (6th Cir. 1983) ............................................17

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*,
   508 U.S.384 (1993).......................................................5

*Locke v. Davey*,
   540 U.S. 712 (2004)......................................................20

*Los Angeles Police Protective League v. Gates*,
   995 F.2d 1469 (9th Cir. 1993) ...........................................23

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988)......................................................19

*Milgard Tempering, Inc. v. Selas Corp. of America*,
   902 F.2d 703 (9th Cir. 1990) .............................................4

*Miller v. Reed*,
   176 F.3d 1202 (9th Cir. 1999) ...........................................18

*Neinast v. Bd. of Trustees of Columbus Metro. Library*,
   346 U.S. 585 (6th Cir. 2003) ............................................10

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

vi

*New England Reg'l Council of Carpenters v. Kinton*,
    284 F.3d 9 (1st Cir. 2002) ........................................................................5

*NLRB v. Hanna Boys Center*,
    940 F.2d 1295 (9th Cir. 1991) ..............................................................17

*Orin v. Barclay*,
    272 F.3d 1207 (9th Cir. 2001) ..............................................................22

*Perry Educ. Assn. v. Perry Local Educators Assn.*,
    460 U.S. 37 (1983)..........................................................................5, 14

*Pfeifer v. City of West Allis*,
    91 F. Supp. 2d 1253 (E.D. Wisc. 2000) ...............................................11

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric.*,
    499 F.3d 1108 (9th Cir. 2007) .........................................................1, 3, 4

*Rosenberger v. Rector and Visitors of the Univ. of Va.*,
    515 U.S. 819 (1995)....................................................................2, 13, 20

*San Jose Christian Coll. v. Morgan Hill*,
    360 F.3d 1024, 1031 (9th Cir. 2004) ...............................................16, 18

*Saucier v. Katz*,
    533 U.S. 194 (2001) .............................................................................22

*Sherbert v. Verner*,
    374 U.S. 398 (1963) .............................................................................16

*Shrum v. City of Coweta*,
    449 F.3d 1132 (10th Cir. 2006) ...........................................................18

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
    739 F.2d 1415 (9th Cir. 1984) ...............................................................3

*Standard Oil Co. of Texas v. Lopeno Gas Co.*,
    240 F.2d 504 (5th Cir. 1957) ................................................................23

*Tenafly Eruv Ass'n v. Borough of Tenafly*,
    309 F.3d 144 (3d Cir. 2002)............................................................16, 19

*United States v. Cote*,
    51 F.3d 178 (9th Cir. 1995) ....................................................................4

*United States v. Houser*,
    804 F.2d 565 (9th Cir. 1986) ..................................................................4

*United States v. Kokinda*,
    497 U.S. 720 (1990)..............................................................................15

*Vasquez v. Los Angeles County*,
    487 F.3d 1246 (9th Cir. 2007) ..............................................................20

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

vii

*Vernon v. City of Los Angeles*,
   27 F.3d 1385 (9th Cir. 1994) ...........................................................................17

*Widmar v. Vincent*,
   454 U.S. 263 (1981)..................................................................................6, 14

**<u>Other Authorities</u>**

Fed.R.Civ.P. 65 ...............................................................................................3

18B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure,
   § 4478.5 (2d ed. 2006) ...............................................................................4

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

viii

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## INTRODUCTION

The Defendants ("County") have taken an untenable position in this case. On the one hand, the County argues that the Ninth Circuit's preliminary injunction decision is law of the case and therefore leaves no issues to be decided. Yet, on the other hand, it completely disregards the core holdings of that opinion by deciding on its own that that Plaintiffs' ("Faith Center") meeting should be labeled as a religious worship service and be excluded from the forum.

This approach is unsound and unconstitutional. The evidence reveals that Faith Center's afternoon meeting presented religious perspectives on topics that are allowed in the forum. Prohibiting the meeting is therefore viewpoint discrimination. Moreover, because the policy uniquely disables religious expression and exercise, it can never be enforced in a constitutional manner. As such, summary judgment should be entered for Faith Center, and the County should be permanently enjoined from enforcing its ban on religious services.

## SUMMARY OF ARGUMENT

It is well-settled that decisions at the preliminary injunction stage are generally not law of the case. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007). The only exception is for decisions on pure issues of law. *Id.* But all of the key issues in Faith Center's free speech claim involve fact-intensive inquiries. So the law of the case doctrine does not apply. This Court must still make a final decision on the merits on Faith Center's free speech claim.

The Ninth Circuit's decision can be summarized by two principles. First, banning from a forum any religious speech—whether it is worship, singing, prayer, or some other form of speech—that expresses a view on a topic that is otherwise permitted in the forum is viewpoint discrimination. *Faith Center Church Evangelistic Ministries v. Glover*, 480 F.3d 891, 914-15 (9th Cir. 2007). Second, while the Free Speech Clause allows the government to exclude "pure religious worship"— that is, worship that does not convey a religious view on a secular topic—from a limited public forum, the government is not competent to distinguish between religious worship and other religious

speech. It must rely on the speaker to make this distinction. *Id.* at 918.

The County ignores both, insisting that it can ban Faith Center's meeting because the County labels it as a religious service. *See* Memorandum of Points and Authorities in Support and in Opposition to Plaintiffs' Motion ("Dfs. Memo.") at 10-11. But Faith Center's meeting undoubtedly addressed permissible topics from a religious perspective, making the County's ban viewpoint-discriminatory. *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 111-12 (2001).

Making matters worse, the County continues to defend its policy as being mandated by the Establishment Clause. Dfs. Memo. at 17-18. But this Court has already rejected this argument—just like every other court to consider this argument in a public forum case. *See, e.g., Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 842 (1995). The County's other alleged interest—to maintain a limited public forum—is also insufficient. This is simply not the type of interest that the Supreme Court considers compelling.

The County fails to adequately address any of Faith Center's other constitutional claims. The County relies on the "substantial burden" test in responding to Faith Center's free exercise claim. But that test was abandoned by the Supreme Court abandoned almost twenty years ago. *See Employment Div., Or. Dep't of Human Resources v. Smith*, 494 U.S. 872, 883-85 (1990). The County never addresses the current standard—whether its policy is religiously neutral and generally applicable—which the policy easily fails. *Id.*

The County's responses to Faith Center's Establishment Clause and Equal Protection claims fare no better. It relies entirely on unrelated Establishment Clause cases, failing to address those cases that discuss impermissible government hostility toward religion in granting access to a public forum. *See, e.g., Rosenberger*, 515 U.S. at 845-46. And it does not directly address Faith Center's equal protection claim. Rather, it argues that a law that complies with the Free Exercise Clause automatically complies with the Equal Protection Clause. Dfs. Memo. at 21. Of course, these provisions carry independent weight, and must be evaluated as such. *See, e.g., Hansen v. Ann Arbor Public Schs.*, 293 F. Supp. 2d 780 (E.D. Mich. 2003).

Finally, the County raises certain immunity defenses. But it fails to point out that these defenses only protect against individual-capacity damages claims. So Faith Center is still entitled to

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

2

injunctive and declaratory relief, as well as nominal damages against the Defendants in their official capacities. As such, summary judgment in Faith Center's favor is warranted.

## ARGUMENT

### I. The County misapprehends the general rule that preliminary injunction decisions are not the law of the case.

At the outset, the County asks this Court not to examine the merits of this case any further, but to simply rubber-stamp the Ninth Circuit's preliminary injunction decision. But the Ninth Circuit's decision was just that—preliminary—and this Court must reach a final decision on the merits based on the full record before it. *Ranchers Cattlemen*, 499 F.3d at 1114. This basic legal principle proves fatal to several of the County's arguments.

First, the County suggests that the factual record at the preliminary injunction stage are "binding on remand," citing Fed.R.Civ.P. 65(a)(2) for support. Dfs. Memo. at 8-9. But Rule 65(a)(2) merely allows courts to preserve evidence received at the preliminary injunction stage so that it need not be re-introduced at trial. In no way is this Court limited to the factual record at the preliminary injunction stage. The County's position would eradicate the fundamental purpose of preliminary injunctions. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (purpose of a preliminary injunction is to prevent the "irreparable loss of rights before judgment;" it is "not a preliminary adjudication on the merits") (citations omitted).

The County also casts the Ninth Circuit's decision as the law of the case for <u>all</u> of Faith Center's claims. Dfs. Memo. at 7 ("Under the law of this case, the County is entitled to summary judgment on all claims"). This, too, is easily dismissed. The Ninth Circuit was explicit on this point: it was only considering "Faith Center's First Amendment as applied challenge," and "[u]pon remand, the district court may address [Faith Center's other] claims in the first instance." *Faith Center*, 480 F.3d at 906 n.7.

The County then narrows its focus to Faith Center's as-applied free speech claim, urging that the Ninth Circuit's decision is the law of the case for at least that one claim. Dfs. Memo. at 7. Again, the County is wrong. The Ninth Circuit has repeated said that the "general rule" is that its "decisions at the preliminary injunction phase do not constitute the law of the case."

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

3

*Ranchers Cattlemen*, 499 F.3d at 1114 (citation omitted). This common-sense rule recognizes that decisions on preliminary injunctions "must often be made hastily and on less than a full record." *Id.* (quotation marks and citation omitted); *cf. Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990) (explaining that the "law of the case" doctrine is discretionary and does not apply with the court is faced with "substantially different" evidence) (citation omitted).

Only decisions on "pure issues of law" become the law of the case at the preliminary injunction stage. *Ranchers Cattlemen*, 499 F.3d at 1114 (citations omitted). As Wright and Miller explain:

> Rulings—predictions—as to the likely outcome on the merits made for preliminary injunction purposes do not ordinarily establish the law of the case, whether the ruling is made by a trial court or by an appellate court. . . . A fully considered appellate ruling *on an issue of law* made on a preliminary injunction appeal, however, does become of the law of the case. . . .

18B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2d ed. 2006) (emphasis added).[1]

The Ninth Circuit's decision turned on three issues, none of which are pure issues of law: the nature of the forum (*see Faith Center*, 480 F.3d at 907-10), the reasonableness of the County's policy (*see id.* at 910-12) and whether Faith Center's afternoon session addressed a topic of discussion permitted in the forum (*see id.* at 912-18).

All three involve very fact-specific inquiries. Determining the nature of a forum requires courts to probe the government's intent, its relevant practices and policies, the nature of the property, and other similar factors. *See Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). The reasonableness of a forum restriction "is determined by a fact-intensive balancing test that takes into account such factors as the uses to which the forum

---

[1] The County presents this narrow exception for pure issues of law as if it is the general rule, quoting the second sentence of this passage from Wright and Miller without acknowledging the first. Dfs. Memo. at 7. It also cites *United States v. Cote*, 51 F.3d 178 (9th Cir. 1995) and *United States v. Houser*, 804 F.2d 565 (9th Cir. 1986), but neither case is relevant because they do not involve a ruling on the merits preceded by a preliminary injunction decision.

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

4

typically is put, the particular risks associated with the speech activity at issue, and the proffered rationale for the restriction." *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 20 (1st Cir. 2002) (citing *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 687-93 (1992) (O'Connor, J., concurring)). And determining whether Faith Center's afternoon session addressed a topic that is otherwise permitted in the forum requires the Court to scrutinize the substance of Faith Center's meeting and compare it to other uses the County has permitted in the forum. *See, e.g., Good News Club*, 533 U.S. at 112 n.4 (when evaluating whether the government is engaging in viewpoint discrimination, "what matters is the substance of the [group's] activities").

The fully-developed record in this case is replete with new evidence addressing all three issues.[2] So the "general rule" applies here—the Ninth Circuit decision is not the law of the case. This Court is free to consider the merits of each of Faith Center's claims based on the full record before it.

## II. The County fails to show how its ban on religious services is consistent with the Ninth Circuit's preliminary injunction decision and other controlling free speech law.

Ironically, the County claims the Ninth Circuit decision controls the outcome of this case—yet it refuses to follow the decision itself. It continues to argue that it can exclude any speech that it labels as a religious worship service, and then imposes its own definition of such a service. Both arguments directly contradict the Ninth Circuit decision. As a result, the County's ban on Faith Center's meeting is viewpoint discriminatory, which is unconstitutional regardless of the forum. *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 392-93 (1993). It is also presumptively unconstitutional as a content-based restriction in a designated public forum, triggering strict scrutiny review. *Perry Educ. Assn. v. Perry Local Educators Assn.*, 460 U.S. 37, 46 (1983).

---

[2] *See* Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pls. Memo.") at 10-20; *see also infra*, section II.F.

FAITH CENTER v. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

5

**A.** **The County continues to draw its own lines between religious worship and other forms of religious speech, which the Ninth Circuit said it is not competent to do.**

The Ninth Circuit was adamant that the County must refrain from imposing its own definition of "religious worship services." Yet that is exactly what the County does here.

The Ninth Circuit held that the County is "not competent" to draw a distinction between "pure religious worship" and other forms of religious speech. *Faith Center*, 480 F.3d at 918; *see also Widmar v. Vincent*, 454 U.S. 263, 269 n.6 (1981) ("it is highly doubtful that it would lie within the judicial competence to administer" a distinction between religious speech and religious worship) (citation omitted). So the County must rely entirely on the speaker to distinguish between pure religious worship services and religious speech that addresses a permissible topic. *Faith Center*, 480 F.3d at 918. Faith Center's afternoon meeting falls into the second category, having addressed several topics that are permitted in the forum. *See* Pls. Memo. at 10-12.

In response, the County insists that if Faith Center's meeting "was not a religious worship services, then nothing is, and the term 'religious worship service' is meaningless." Dfs. Memo. at 11. But the County should not be trying to define what a "religious worship service" is. This is exactly what the Ninth Circuit and the *Good News Club* Court said it is not competent to do. And doing so excessively entangles the County with religion. *Faith Center*, 480 F.3d at 917-18. This Court should therefore reject the County's argument and analyze the substance of Faith Center's meeting to determine if the County's ban is viewpoint discriminatory.

**B.** **Contrary to the County's interpretation, the Ninth Circuit decision does not allow the County to bar any meeting that it labels as a "religious worship service."**

The Ninth Circuit was also adamant that, to avoid viewpoint discrimination, the County must only prohibit "pure religious worship." *Id.* at 915; *see also* Pls. Memo. at 9. The County ignores this directive too. It flippantly dismisses the Ninth Circuit's discussion of "pure religious worship" in a footnote, claiming it is "not the holding of the case." Dfs. Memo. at 7 n.1. The County instead believes that it is free exclude any meeting it labels as a "religious worship service." Dfs. Memo. at 2.

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

6

The County is wrong. The Ninth Circuit's discussion of "pure religious worship" is critical to its holding. It gives the County a roadmap to avoid discriminating based on viewpoint. By charting its own course, the County has wandered into unconstitutional territory.

Distinguishing between viewpoint discrimination and content discrimination is relatively straightforward. Content discrimination occurs when the government picks which topics to allow in a forum (e.g., political speech, commercial speech, etc.). *Faith Center*, 480 F.3d at 912. Viewpoint discrimination occurs when the government bars a certain perspective on a topic that it otherwise allows in the forum. (e.g., allowing secular views on child-rearing but prohibiting religious views on child-rearing). *Id.*

Using this framework, *Good News Club* makes clear that labeling speech as a "religious worship service"—like the County is doing here—is irrelevant when distinguishing between content and viewpoint discrimination:

> [W]e see no reason to treat the Club's use of religion as something other than a viewpoint merely because of any evangelical message it conveys. According to Justice Souter, the Club's activities constitute "an evangelical service of worship." Regardless of the label Justice Souter wishes to use, what matters is the substance of the Club's activities.

533 U.S. at 112 n.4 (citation omitted). Looking at the substance, the Court concluded that the Good News Club's meetings addressed "moral and character development"—a topic allowed in the forum. *Id.* at 111-12. Excluding the Club was therefore viewpoint discrimination. *Id.*

The Ninth Circuit adopted a similar analysis. It distinguished speech expressing a religious viewpoint on a permissible topic from "pure religious worship," which "is not a secular activity that conveys a religious viewpoint on otherwise permissible subject matter." *Faith Center*, 480 F.3d at 914-15. Banning the former is viewpoint discrimination; banning the latter is not. *Id.*; *see also Gentala v. City of Tucson*, 213 F.3d 1055, 1065 (9th Cir. 2000) (rejecting group's access to forum was viewpoint discriminatory, even though they expressed their views through "acts of worship, singing and prayer").

Looking at the substance of Faith Center's events, the Ninth Circuit concluded that Faith Center's activities like "discussing the Bible and other religious books, . . . teaching, praying,

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

7

singing, sharing testimonies, sharing meals, and discussing social and political issues" all convey a "religious perspective on subjects that are or have been permitted in the Antioch Library meeting room." *Faith Center*, 480 F.3d at 914. Banning those activities, then, would be viewpoint discrimination. But banning a meeting that consists only of religious worship that does not express a view on a permissible topic (i.e. pure religious worship) would be content discrimination.

The County's flawed reading of the Ninth Circuit's decision is confirmed by *Citizens for Community Values v. Upper Arlington Public Library Bd. of Trustees*. 2008 WL 3843579 (S.D. Ohio 2008). There, the court held that a library engaged in viewpoint discrimination when it barred "inherent elements of a religious service"—such as prayer and singing—from its meeting room. *Id.* at *13. Although these elements could be viewed as religious worship, the court explained, they are also "speech conveying a religious viewpoint" on a permissible topic. *Id.* at *12-13. The court discussed *Faith Center* at length in its opinion, specifically noting that the Ninth Circuit "distinguished 'pure religious worship' from speech conveying a religious viewpoint." *Id.* at *12.

Thus, the Ninth Circuit's decision in this case limited the County's policy to restrict only "pure religious worship." Banning speech—even if constitutes religious worship—that also conveys a religious viewpoint on a permissible topic is unconstitutional viewpoint discrimination.

**C.    The record rebuts the County's claim that its ban on Faith Center's meetings is viewpoint neutral.**

In light of *Good News Club* and *Faith Center*, this Court must decide whether Faith Center's afternoon session conveyed a religious perspective on subjects that are allowed in the forum. The answer is "yes."

The County continues to argue that it can ban Faith Center's afternoon meeting because the meeting "was devoted entirely—and only—to praise and worship," while Faith Center's morning meeting was permissible because it was devoted to "instruction on how to pray fervent, effectual prayers that God hears and answers." Dfs. Memo. at 11. Quite to the contrary, the

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

8

record clearly shows that both meetings addressed the same topic—effective communication—using different formats. *See* Hopkins Decl. at ¶¶ 10-17. Pastor Hopkins specifically explained that she designed the afternoon meeting to reinforce the same lessons that the morning meeting taught. *Id.* The afternoon meeting also addressed other topics, like overcoming personal and community struggles, and developing moral character. *Id.* Each is a permitted topic in the Antioch Library meeting room. *See* Chandler Decl. at ¶¶ 30, 32 (overcoming personal struggles); ¶¶ 29, 76-79 (developing moral character). Thus, the County's continued ban on Faith Center's afternoon meeting is viewpoint discrimination.

**D.    The County presents no evidence refuting that the Antioch Library meeting room is a designated public forum.**

The County contends that nothing in the record should alter the Ninth Circuit's preliminary conclusion that the Antioch Library meeting room is a limited public forum. Dfs. Memo. at 9-10. But the County does not dispute that the meeting room is available to every conceivable type of organization for any topic (other than religious services), or that the Library grants permission to use the meeting room as a matter of course. *See* Pls. Memo. at 16-17. Nor does it dispute that Faith Center is the only organization to ever be denied access to the Antioch Library meeting room because of the meeting's content. It also makes no attempt to show that the Library has consistently apply its Religious Use Policy, its restrictions on the length and frequency of meetings, and its requirement that applicants fully complete an application form for each use. *See* Pls. Memo. at 18. These undisputed facts all point to one conclusion: the meeting room is a designated public forum.

Instead, the County raises a number of arguments that are irrelevant to the forum analysis. It first maintains—without citing any authority—that the meeting room is not used frequently enough to make it a designated public forum. But the type of forum is determined by "the nature of the property and its compatibility with expressive activity, as well as the policy and practices of the government." *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 (9th Cir. 1999) (citation omitted). The frequency of use—which is beyond the government's control—is irrelevant. *See, e.g., Boy Scouts of America, South Fla. Council v. Till*,

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

9

136 F. Supp. 2d 1295, 1309 (S.D. Fla. 2001) (finding "no support for the proposition that the number of participants or the frequency of use changes public forum analysis").

The County next argues that "none of Faith Center's evidence casts any doubt . . . that the library portion of the Antioch library is a place dedicated to aid in the acquisition of knowledge through reading, writing, and quiet contemplation," and that "[s]etting aside 8 percent of a library building for community meetings does not transform a library into a facility that is something other than a 'venue for reading, writing and quiet contemplation.'" Dfs. Memo. at 10. This, too, is irrelevant. The meeting room, not the library portion of the building, is the relevant forum. *See Cornelius*, 473 U.S. at 801 (the forum is defined by the "access sought by the speaker;" where limited access is sought, courts take a "more tailored approach to ascertaining the perimeters of a forum"). Faith Center only seeks access to the meeting room, which is governed by separate County policies and practices that do not apply to the rest of the library.[3]

The County briefly argues that the Library has never failed to enforce its policy prohibiting schools from using the meeting room as a regular part of the school's curriculum. Dfs. Memo. at 10. But the County offers no proof that is has ever actually enforced this restriction. And it is undisputed that the meeting room has been used as a classroom (even if the Library did not view the use as being part of the "regular part of [a] school's curriculum"), which undermines the very purpose for the restriction. *See Faith Center*, 480 F.3d at 910 (explaining that this restriction is intended to prevent the meeting room from being "converted into a classroom"). At best, then, this restriction is under-inclusive and does not show intent to create a limited public forum.

In a footnote, the County offers two cases "holding that libraries are limited public forums." Dfs. Memo. at 9 n.3. But the forum in both cases was the main library reading room, not a meeting room. *See Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 589 (6th Cir. 2003); *Kreimer v. Bureau of Police of the Town of Morrison*, 958 F.2d 1242, 1246-

---

[3] For the same reasons, the County's discussion of other Contra Costa County Libraries and their lack of meeting rooms has no bearing on the forum at issue here. *See* Dfs. Memo. at 10; *Faith Center*, 480 F.3d at 909 n.9.

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

10

47 (3d Cir. 1992). Other cases that have dealt specifically with library meeting rooms have found the rooms to be designated public forums. *See, e.g., Concerned Women for America, Inc. v. Lafayette County*, 883 F.2d 32, 34-35 (5th Cir. 1989); *Pfeifer v. City of West Allis*, 91 F. Supp. 2d 1253, 1266 (E.D. Wisc. 2000).[4]

It also cites three cases where, it claims, courts have held that public school facilities are limit public forums. Dfs. Memo. at 9 n.3. But these cases are equally unpersuasive. *Good News Club*, for example, did not hold that the school is a limited public forum. The Court merely assumed so—without engaging in any analysis—for purposes of its decision. 533 U.S. at 106. Likewise, the court in *Bronx Household of Faith v. Board of Education of the City of New York* did not decide what type of forum the school facility was. *See* 331 F.3d 342, 353-55 (2d Cir. 2003) (holding that the church was likely to succeed in proving viewpoint discrimination without deciding the nature of the forum). The County cites a passage in that opinion where the Second Circuit discussed its previous ruling in the same case where it held that the school is a limited public forum. *See id.* at 351. But the Second Circuit's third (and most recent) decision in that case calls into question the viability of that holding. *Compare Bronx Household of Faith v. Bd. of Educ. of the City of New York*, 492 F.3d 89, 97-98 (2d Cir. 2007) (Calabresi, J., concurring) (arguing that the panel should follow its earlier decision on the nature of the forum) *and id.* at 128 (Walker, J., dissenting) (arguing that the panel should re-evaluate the nature of the forum). And unlike this case, the forum in *Bronx Household of Faith* "excluded in their entirety several other classes of speakers and subjects apart from those at issue in the instant case," including political and commercial speech. *Id.* at 98 n.4 (Calabresi, J., concurring). *Campbell v. St. Tammany Parish School Board* also involved a much more restricted forum, prohibiting political speech and for-profit fundraising in additional to its ban on religious services. 231 F.3d 937, 941 (5th Cir. 2000).

---

[4] The court in *Citizens for Community Values* found that a library meeting room was a limited public forum. 2008 WL 3843579 at *8. But the meeting room policy in that case was far more restrictive than the one at issue here. It prohibited the use of the meeting rooms for all "commercial, religious, or political campaign meetings." *Id.* at *1.

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

11

The County's Meeting Room Policy, by contrast, does not exclude in their entirety any other classes of speakers and subjects. In this regard, the Policy is indistinguishable from the policy in *Gregoire v. Centennial School District*, 907 F.2d 1366 (3d Cir. 1990). There, the school district made its facilities broadly available for community use; the only explicit exclusion in the policy was for meetings with "religious purposes." *Id.* at 1372. The school imposed many of the same administrative requirements the County imposes in this case (required application form, limitations on hours of use, rental fee, etc.), but the Third Circuit nonetheless affirmed the district court's conclusion that the school had created a designated public forum:

> The school facilities here, subject only to the limitations of hours, administrative requirements of filing an application and paying the fees and costs, and conforming to the general standards regarding use that would not cause injury or damage to persons or property, though definitionally "limited," are for all intents and purposes a public forum from the vantage point of the protection of First Amendment rights. . . .

*Id.* at 1375 (quotation marks and citation omitted). This reasoning applies with equal force here.

In short, the County has offered nothing to refute the substantial evidence showing that its policies and practices make the Antioch Library meeting room generally open to the entire community for expressive purposes. As such, it is a designated public forum.

**E.      The County has not articulated a compelling interest that is furthered by its ban on religious services.**

Strict scrutiny is just that—strict. It is "not watered down, but really means what it says." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 545 (1993) (quotation marks and citation omitted). As such, it is only satisfied by a regulation that advances "interests of the highest order, and [the regulation] must be narrowly tailored in pursuit of those interests." *Id.* (quotation marks and citation omitted). So it is not surprising that regulations "target[ing] religious conduct for distinctive treatment"—like the Meeting Room Policy—"will survive strict scrutiny only in rare cases." *Id.* This is not one of those rare cases.

//

//

//

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

12

1. ***Preserving a limited public forum is not an interest of the highest order.***

The County presents two interests it believes satisfy this test. It first claims that "the Ninth Circuit held [that] the County has a compelling governmental interest in preserving the library meeting room as a limited public forum." Dfs. Memo. at 14 (citing *Faith Center*, 480 F.3d at 918-19). Three simple points reveal the fatal flaws in this argument.

First, the Ninth Circuit did not actually hold this. In fact, it specifically said it was <u>not</u> deciding the issue of whether the Meeting Room Policy advanced a compelling government interest. *Id.* at 919 n.20. Second, no court has ever that this is an interest "of the highest order." Third, adopting this view would allow the government to impose any restriction it wants—even those that are viewpoint discriminatory—to limit a public forum without facing constitutional scrutiny, because every restriction would survive strict scrutiny. Thus, this "interest" falls well short of compelling.

2. ***Allowing religious services equal access to a government forum does not violate the Establishment Clause.***

The County also resuscitates its Establishment Clause defense. Dfs. Memo. at 2, 15, 17-18. But "[t]he Supreme Court has foreclosed this argument by consistently holding that a policy of equal access does not violate the Establishment Clause." *Faith Center Church Evangelistic Ministries v. Glover*, 2005 WL 1220947 at *6 (N.D. Cal. 2005).

Most perplexing is the County's reliance on *Rosenberger*. Dfs. Memo. at 18. *Rosenberger* explains precisely why the County's argument fails: "It does not violate the Establishment Clause for a public university to grant access to its facilities on a religion-neutral basis to a wide spectrum of student groups, including groups that use meeting rooms for sectarian activities, accompanied by some devotional exercises." 515 U.S. at 842. This is true even where the government pays for the "upkeep, maintenance, and repair of the facilities." *Id.*; *see also Gentala*, 213 F.3d at 1066 (holding that city funds used to help pay for National Day of Prayer event did not violate the Establishment Clause because funding program was a forum under the First Amendment).

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

13

The Supreme Court has routinely upheld the right of religious groups to engage in worship in public facilities pursuant to equal access policies. Even the dissents in *Widmar* and *Good News Club* acknowledged that the Establishment Clause does not prohibit worship services in public facilities. *Good News Club*, 533 U.S. at 141 (Souter, J., dissenting) ("[T]he Establishment Clause d[oes] not bar a religious student group from using a public university's meeting space for worship . . . ."); *Widmar*, 454 U.S. at 282 (White, J., dissenting) ("A state university may permit its property to be used for purely religious services without violating the First and Fourteenth Amendments.").[5]

Simply put, the Establishment Clause does not provide the Library *any* interest—much less a compelling one—that justifies its discriminatory Meeting Room Policy.

## F. The County has failed to show that its ban on religious services is reasonable in light of the purpose of the forum.

Even if the Meeting Room Policy is not subject to heightened scrutiny, it is still unconstitutional because it is not reasonable in light of the purpose of the forum. *Hopper v. City of Pasco*, 241 F.3d 1067, 1075 (9th Cir. 2001) (providing standard for speech restrictions in a limited public forum).

To be reasonable, a speech restriction must be "wholly consistent with the [government's] legitimate interest in preserving the property for the use to which it is lawfully dedicated." *Perry*, 460 U.S. at 50-51 (quotation marks and citation omitted). This is typically a straightforward inquiry, because the cases where it has been applied involve discrete, single-

---

[5] Many circuit courts have held likewise. In *Fairfax Covenant Church v. Fairfax County School Board*, the Fourth Circuit held that a public school could not charge a church more than other non-profit groups to use its facilities for its Sunday morning church services. 17 F.3d 703, 708-09 (4th Cir. 1994). In *Church on the Rock v. City of Albuquerque*, the Tenth Circuit held that the Establishment Clause was not a "compelling interest that justifies [the city's] policy prohibiting sectarian instruction and religious worship at its Senior Centers." 84 F.3d 1273, 1281 (10th Cir. 1996). In *Hawley v. City of Cleveland*, the Sixth Circuit rejected an Establishment Clause challenge to the Catholic Diocese utilizing an equal access policy to operate a chapel in Cleveland Hopkins International Airport for "formal worship services." 24 F.3d 814, 822 (6th Cir. 1994). And in *Gregoire*, the Third Circuit held that a religious group that was entitled to use a public school's facilities for religious discussion was entitled to engage in religious worship as well. 907 F.2d at 1382.

Faith Center v. Glover – Reply Memorandum in Support of Plaintiffs' Motion For Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment – C-04-3111 JSW

14

purpose forums. *See, .e.g., United States v. Kokinda*, 497 U.S. 720, 727 (1990) (sidewalk dedicated for travel from parking lot to post office); *Cornelius*, 473 U.S. at 801 (charity drive literature); *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 814 (1984) (utility poles).

The County portrays the Antioch Library meeting room as being similarly dedicated to a single purpose: to be a venue for reading, writing, and quiet contemplation. Dfs. Memo. at 10. But the facts tell a different story. The meeting room is used for a variety of events, including political meetings, youth programs and sports events, financial seminars, elections, theater, musical events, and other similar uses. *See* Chandler Decl., ¶¶ 14-118. So the question is not whether the County's ban on religious services is wholly consistent with preserving the venue for reading, writing, and quiet contemplation. It is whether the ban is wholly consistent with the multipurpose environment that the County has deliberately created.

The answer is "no." The County offers no explanation, or evidence, that religious services are inherently less compatible with the meeting room's broad purpose than the other permitted activities. While the Ninth Circuit initially reached a different conclusion, it did not have a full record before it. And this new evidence significantly alters the analysis. The Ninth Circuit first said that the ban is reasonable because it prevents "controversy and distraction" that may "alienate patrons and undermine the library's purpose of making itself available to the whole community." *Faith Center*, 480 F.3d at 910-11. But the Antioch Library has never shied away from allowing events that may be controversial or cause distraction. It approved an application to conduct American Idol tryouts in the meeting room. Chandler Decl. at ¶ 69. It allows a production company to conduct theater tryouts there. *Id.* at ¶ 71. Elections are conducted there. *Id.* at ¶ 85. Groups may play music and show movies. Ex. B to Chandler Decl., at 18-19. The Library has brought clowns in to perform for children, held a hot dog and ice cream social, and conducted presentations involving live animals. *See* Ex. V to Chandler Decl.; Ex. F to Chandler Decl., at 9; Ex. D to Chandler Decl., at 9-11. And the Library freely admits that its meeting room is available to controversial groups, like the Ku Klux Klan and the North American Man-Boy Love Association. Ex. A to Chandler Decl., at 38-39. There is nothing

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

15

uniquely disruptive about religious services that justifies singling them out as the County is doing.

The Ninth Circuit's second reason—to avoid transforming the meeting room into a "house of worship"—fares no better. *Faith Center*, 480 F.3d at 910-11. The Meeting Room Policy only bans "pure religious worship services," not those services that convey a religious viewpoint on a permitted topic. So the County must still allow meetings like the one from *Good News Club*—described as an "evangelical service of worship," 533 U.S. at 112 n.4—and the weekly religious worship services from *Bronx Household of Faith. See* 331 F.3d at 354.

Thus, these interests may have appeared reasonable given the scant record that was before the Ninth Circuit. But the complete record before this Court shows that the County's ban on religious services is not reasonable in light of the County's broad purpose for this forum.

## III. The County applies the wrong standard for free exercise claims.

### A. Faith Center does not have to show a substantial burden on its religious exercise.

Much of the County's free exercise argument is that the Meeting Room Policy does not impose a substantial burden on Faith Center's religious exercise. Dfs. Memo. at 13. But the Supreme Court abandoned this test almost twenty years ago.

*Sherbert v. Verner* set forth the test that was traditionally used for free exercise claims: a law that substantially burdens a religious practice must be narrowly tailored to achieve a compelling state interest. 374 U.S. 398, 403 (1963); *see also Employment Div., Or. Dep't. of Human Resources v. Smith*, 494 U.S. 872, 883 (1990) ("*Smith*"). But in *Smith*, the Supreme Court did away with the substantial burden requirement and adopted a new test: laws are subject to strict scrutiny only if they are not religiously neutral and generally applicable. *Id.* at 883-85; *see also San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1030 (9th Cir. 2004).

Put another way, *Smith* provides that "there is no substantial burden requirement when government discriminates against religious conduct." *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 170 (3d Cir. 2002) (citations omitted). In *Church of the Lukumi*, for example, the Supreme Court struck down a law banning animal sacrifice under the Free Exercise Clause

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

16

without considering whether it imposed a substantial burden on religious exercise. 508 U.S. at 531-47; *see also Hartmann v. Stone*, 68 F.3d 973, 979 n.4 (6th Cir. 1995) (because the challenged law is not neutral or generally applicable, the plaintiffs "need not demonstrate a substantial burden on the practice of their religion.").

Indeed, it would undermine the purpose of the Free Exercise Clause if only those laws which burden religious exercise in a substantial way are proscribed: "Applying such a burden test to non-neutral government actions would make petty harassment of religious institutions and exercise immune from the protection of the First Amendment." *Brown v. Borough of Mahaffey*, 35 F.3d 846, 849-50 (3d Cir. 1994).

Although it cites *Smith*, the County inexplicably overlooks its "neutral and generally applicable" test. Dfs. Memo. at 13. Instead, it raises *Sherbert*-type arguments. It urges that Faith Center is only "inconvenienced" by its policy, not substantially burdened. *Id.* at 13-14. Its supporting case law is similarly out-dated, having been decided prior to *Smith. Id.* at 13 (citing *EEOC v. Pacific Press Publishing Ass'n*, 676 F.2d 1272, 1279 (9th Cir. 1982) ("*Pacific Press*"); *Christian Gospel Church, Inc. v .City and County of San Francisco*, 896 F.2d 1221, 1224 (9th Cir. 1990); and *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood*, 699 F.3d 303, 306 (6th Cir. 1983)).

The County missed a subsequent Ninth Circuit case explaining that the free exercise analysis in *Pacific Press* is not good law after *Smith*:

> Had we reviewed this case immediately after the district court's ruling, we would have applied the balancing test articulated in [*Sherbert*] and [*Pacific Press*]. But after AFCS filed this appeal, the Supreme Court handed down its decision in [*Smith*]. That case dramatically altered the manner in which we must evaluate free exercise complaints . . . .

*American Friends Serv. Committee Corp. v. Thornburgh*, 951 F.2d 957, 960 (9th Cir.1991).[6]

---

[6] The County also relies on *Vernon v. City of Los Angeles*, 27 F.3d 1385 (9th Cir. 1994) to support its "substantial burden" argument. Dfs. Memo. at 14. *Vernon* rejected the *Smith* test in favor of the *Sherbert* test. *Id.* at 1393 n.1. But it is no longer good law on this point. The Ninth Circuit initially construed *Smith* as applying only to neutral, generally applicable *criminal* laws. *See, e.g., NLRB v. Hanna Boys Center*, 940 F.2d 1295, 1305 (9th Cir. 1991). *Vernon* was one such case. But the Ninth Circuit later reversed course, holding that "*Smith* is not limited to

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

17

Having made no attempt to show that the Meeting Room Policy is religiously neutral and generally applicable under *Smith*, the County's arguments fail as a matter of law.

**B.  Faith Center does not have prove animus to succeed on its free exercise claim.**

The County also tries to dismiss Faith Center's free exercise claim because there is "no evidence of any substantial animus on the County's part." Dfs. Memo. at 15. But animus is merely evidence of—not a requirement for—a Free Exercise Clause violation. "[T]he Free Exercise Clause has been applied numerous times when government officials interfered with religious exercise not out of hostility or prejudice, but for secular reasons. . . ." *Shrum v. City of Coweta*, 449 F.3d 1132, 1144-45 (10th Cir. 2006) (listing cases). "Proof of hostility or discriminatory motivation may be sufficient to prove that a challenged governmental action is not neutral, but the Free Exercise Clause is not confined to actions based on animus." *Id.* at 1145 (citations omitted); *accord San Jose Christian College*, 360 F.3d at 1030 (describing *Smith* test without mentioning animus requirement).[7]

Regardless, the County's animus is clearly evident on the face of the Meeting Room Policy. It bans certain religious expression from a forum that is available for virtually any other type of speech. The "exclusion of religious groups from a forum otherwise open to all would demonstrate government hostility to religion," and that is exactly what the County is doing here. *Kreisner v. City of San Diego*, 1 F.3d 775, 785 (9th Cir. 1993).

**C.  Imposing religiously-based restrictions on access to a public forum triggers the Free Exercise Clause's protection.**

The County says that the Free Exercise Clause is not implicated in this case because Faith Center is merely "inconvenienced" by the policy and "Faith Center is free to hold religious services in places other than the Antioch Library meeting room." Dfs. Memo. at 21. But the Free

challenges to criminally prohibited conduct." *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999) (citations omitted).

[7] *KDM v. Reedsport School District*, 196 F.3d 1046 (9th Cir. 1999), which the County also cites, does not hold to the contrary. There, the court mentioned the lack of government animus toward religion to support its conclusion that the plaintiff was "not subjected to official action that target[ed] religious conduct for distinctive treatment." *Id.* at 1050 (quotation marks and citation omitted). But nowhere does it say that animus is required for a successful free exercise claim.

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

18

Exercise Clause is not so limited. It prohibits the "government from discriminating against religiously-motivated conduct in allocating "the rights, benefits, and privileges enjoyed by other citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988). This applies "not only when a coercive law or regulation prohibits religious conduct, but also when government denies religious adherents access to publicly available money or property." *Tenafly*, 309 F.3d at 169 (citations omitted).

Thus, the fact that Faith Center may hold religious services elsewhere is irrelevant. Burdening access to a forum on a religion-specific basis is sufficient to trigger the Free Exercise Clause's protection. *See, e.g., Fairfax Covenant Church*, 17 F.3d at 707 (holding that a school meeting room policy charging a church more than other non-profits to use its facilities "interferes with or burdens the Church's right to speak and practice religion protected by the Free Exercise Clause"); *accord Fraternal Order of Police Lodge No. 12 v. City of Newark*, 170 F.3d 359, 365 (3d Cir. 1999) (Free Exercise Clause prohibits the government from "deciding that secular motivations are more important than religious motivations.").

## IV. The County's ban on religious services is impermissibly hostile toward religion under the Establishment Clause.

The County's attempt to elude the Establishment Clause must also fail. It portrays its ban on religious services as an effort to preserve the meeting room as a venue for reading, writing, and quiet contemplation. Dfs. Memo. at 19. But a reasonable observer would never see this as the County's purpose. As explained earlier, the ban is severely under-inclusive in limiting the forum in this way. *See supra*, section II.F. The County has never shied away from allowing events that have nothing do to with reading, writing, or quiet contemplation. Nor has it explained why religious services are uniquely disruptive to the County's intended purpose for its forum.

The County's second defense is equally unpersuasive. A reasonable observer, it claims, would see the ban as an effort to ensure the County's compliance with the Establishment Clause. Dfs. Memo. at 19. But the reasonable observer is deemed to be familiar with "the general contours of the Free Speech Clause and public forum doctrine." *Kreisner*, 1 F.3d at 784 (citation omitted). And the Supreme Court has "consistently [held] that a policy of equal access does not

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

19

violate the Establishment Clause." *Faith Center*, 2005 WL 1220947 at *6 (listing cases). Thus, the reasonable observer would know that the Establishment Clause does not require this type of religious discrimination.

*Vasquez v. Los Angeles County* is no help to the County. Dfs. Memo. at 19. That case involved the removal of a cross from Los Angeles County's official seal. 487 F.3d 1246, 1257 (9th Cir. 2007).The county removed the cross only after the presence of crosses on other municipal seals had been held to be unconstitutional. *Id.* (listing cases). There is no such history in this case. And unlike *Vasquez*, this case involves private religious speech in a public forum. "[T]here is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 250 (1990) (emphasis in original).

Equally unavailing is the County's reliance on *Locke v. Davey*, 540 U.S. 712, 720 (2004). Dfs. Memo. at 20. *Locke* is a government funding case; it did not involve religious discrimination in granting access to a public forum. This distinction is significant. As the Tenth Circuit recently explained, the government "has greater latitude to discriminate in decisions about the use of tax dollars than in its use of regulatory authority." *Colorado Christian Univ. v. Weaver*, 534 F.3d 1245, 1254 (10th Cir. 2008). Even under *Locke*, "the prohibition on discrimination on the basis of religion continues to apply to funding programs that are forums for speech." *Id.* at 1255 n.3 (citing *Locke*, 540 U.S. at 720 n.3).

So *Locke* does not apply here. More on point are cases involving religious discrimination in a public forum. They have consistently held that excluding religious speech from an otherwise available forum would show impermissible hostility toward religion. *See, e.g., Good News Club*, 533 U.S. at 118 (excluding club from forum created "danger that [students] would perceive a hostility toward the [club's] religious viewpoint"); *Rosenberger*, 515 U.S. at 845-46 (denying religious newspaper access to funding program that is a forum for speech "would risk fostering a pervasive bias or hostility to religion, which could undermine the very neutrality the Establishment Clause requires."). This case is no different.

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

20

## V. The County misconstrues Faith Center's equal protection claim.

The County tries to handcuff Faith Center's free exercise and equal protection claims, arguing that a law that complies with the former automatically complies with the latter. Dfs. Memo. at 21. These claims are certainly related—the Equal Protection Clause imposes strict scrutiny on any classification implicating a fundamental right, like the free exercise of religion. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). But laws that discriminate among religions or religious speech trigger equal protection analysis, independent of the Free Exercise Clause. *See, e.g., Fowler v. Rhode Island*, 345 U.S. 67, 69 (1953) (law discriminating among religions in providing access to a public forum violated Equal Protection Clause); *Hansen v. Ann Arbor Public Schs.*, 293 F. Supp. 2d 780, 807 (E.D. Mich. 2003) (allowing some religious messages while prohibiting others violated Equal Protection Clause, even though it did not violate Free Exercise Clause). So this Court should independently evaluate Faith Center's equal protection claim. *See* Pls. Memo. at 24-25.

## VI. Despite the County's claim for immunity, Faith Center is entitled to all of its requested relief.

### A. Absolute immunity only protects against individual-capacity claims for damages.

The Defendants on the Board of Supervisors try to evade liability by claiming absolute immunity. Dfs. Memo. at 21. While Faith Center agrees that they acted in their legislative capacity when adopting the challenged policy, the County overstates the protection they receive. Absolute immunity "only shields [these Defendants] from liability for damages and does not bar an action for declaratory or prospective injunctive relief." *Fry v. Melaragno*, 939 F.2d 832, 839 (9th Cir. 1991) (citations omitted). Nor does it bar an action for damages against them in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("In an official-capacity action, these defenses [including absolute immunity] are unavailable.") (citations omitted). So Faith Center is still entitled to declaratory and injunctive relief against these Defendants in their official and individual capacities, and nominal damages against them in their official capacities.

//

//

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

21

**B.** **The County is not entitled to qualified immunity, which also only protects against individual-capacity claims for damages.**

The other Defendants try to evade liability by claiming qualified immunity. Dfs. Memo. at 22. Qualified immunity protects government officials from individual liability for damages "as long as their actions could reasonably have been thought consistent with the rights that they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted). This requires a two-step analysis. First, the court must decide if the official violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The next step is to decide if the right was clearly established. *Id.* If so, then qualified immunity is not available.

Faith Center has already shown that the County violated its constitutional rights. To decide if those rights are clearly established, this Court should use its "full knowledge of its own and other relevant precedents." *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (quotation marks and citation omitted). It is not necessary to "find a prior case with identical, or even materially similar, facts." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003) (quotation marks and citation omitted). It is enough that the County had "fair warning" that its Meeting Room Policy is unconstitutional. *Id.* at 1137 (citation omitted).

The County claims that it is entitled to qualified immunity because it believed the "separation of church and state" mandated it to exclude religious services from its meeting room. Dfs. Memo. at 22. But this argument is foreclosed by *Orin v. Barclay*, 272 F.3d 1207 (9th Cir. 2001). In that case, a community college prohibited demonstrators from engaging in religious worship or instruction at the school's main quad. *Id.* at 1212. The college imposed this restriction because it believed it was necessary "to maintain the separation of Church and State." *Id.* at 1215. And, like the County here, it asked for qualified immunity on that basis. *Id.* at 1216. The Ninth Circuit declined. It held that *Widmar* and its progeny clearly establish that allowing religious speakers equal access to a public forum does not violate the Establishment Clause. *Id.* That hold applies here as well.

It is also clearly established that the County may not impose regulations that are specifically targeted at religiously-motivated speech or conduct. In *Axson-Flynn v. Johnson*, for

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

22

example, the Tenth Circuit reversed a district court's grant of qualified immunity because the Supreme Court has clearly established that laws that restrict religious exercise must be neutral and generally applicable. 356 F.3d 1277, 1300 (10th Cir. 2004). Thus, qualified immunity is unwarranted here.

Qualified immunity, like absolute immunity, only protects against damages claims brought against public officials in their individual capacities. *See Brandon v. Holt*, 469 U.S. 464, 472-73 (1985); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993). So even if these Defendants are entitled to qualified immunity, they are still subject to Faith Center's claims for declaratory and injunctive relief, and its claim for nominal damages against them in their official capacities.

## VII.    The County has no grounds to ask for an injunction against Faith Center.

The County asks for an injunction so that it can enforce its Meeting Room Policy against Faith Center. Dfs. Memo. at 1. But it has no legal basis for this request. It is the defendant, and has not filed a cross-claim against Faith Center. It is fully capable of enforcing any constitutional policy on its own without a court-issued injunction.

The County's authorities add no weight to its arguments. It relies on two decades-old cases from other circuits that issued injunctions against the defendants, not the plaintiffs. *See Brotherhood of Railroad Carmen v. Chicago & N.W. Ry. Co.*, 354 F.2d 786 (8th Cir. 1966); *Standard Oil Co. of Texas v. Lopeno Gas Co.*, 240 F.2d 504 (5th Cir. 1957). An injunction was issued against a plaintiff in *Denardo v. Murphy*, 781 F.2d 1345 (9th Cir. 1986), which the County also cites. But the plaintiff there had filed multiple frivolous lawsuits against the defendant, and was enjoined from filing any more. *Id.* at 1348. There is nothing similar here. As such, the County's request is baseless and should be denied.

## CONCLUSION

The Free Speech Clause, the Free Exercise Clause, the Establishment Clause, and the Equal Protection Clause all speak with one voice: our religion ought not have any bearing on our ability to enjoy the rights and privileges we can enjoy. That is all Faith Center is asking for in this case. It is not demanding uninhibited access to public facilities. The government, like any property owner, has

FAITH CENTER V. GLOVER – REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT – C-04-3111 JSW

23

the right to control its own property. Faith Center simply asks is that when the government chooses to open its property for private expression, it receive equal access. The Meeting Room Policy falls far short of this constitutional standard, and must be stricken.

Dated: October 10, 2008                    ALLIANCE DEFENSE FUND


                                    By:    /s/ Timothy D. Chandler
                                           TIMOTHY D. CHANDLER
                                           Attorney for Plaintiffs

Faith Center v. Glover – Reply Memorandum in Support of Plaintiffs' Motion For Summary Judgment and in Opposition to Defendants' Cross-Motion for Summary Judgment – C-04-3111 JSW

24